IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JEFFREY B. KING, SCOTT A. AUSTEN, KEVIN J. HARRIS, AND JOHN J. HAYS, | ) | |
| Plaintiffs, | ) | No. 07-589C (Judge Hewitt) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARTIN J. HOCKEY, JR.
Assistant Director

CARRIE A. DUNSMORE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………………..iii

STATEMENT OF THE CASE…………………………………………………………………1

I. Nature of the Case…………………………………………………………………………1

II. Statement of Facts…………………………………………………………………………2

A. Plaintiffs' Allegations.……………………………………………………………….2

B. GSA's Federal Protective Service…………………………………………...…3

C. Homeland Security Act of 2002………………………………………………..…5

D. The FBI Police Force…………………………………………………………...7

E. Non-Implementation of 28 U.S.C. §540C……………………………………..9

ARGUMENT…………………………………………………………………………………...9

I. Plaintiff's Complaint Should Be Dismissed For Lack Of Jurisdiction……………………9

A. The Necessary Money Mandating Provision Does Not Exist To Invoke This Court's Jurisdiction……………………………………………………………………10

B. This Court Lacks Jurisdiction To Make Determinations Of Prohibited Personnel Practices Or Grant Relief Pursuant To The Back Pay Act………………………12

CONCLUSION…………………………………………………………………………………..15

## TABLE OF AUTHORITIES

### CASES

Army & Air Force Exch. Serv. v. Sheehan,
456 U.S. 728 (1982) ........ 11

Berry v. United States,
27 Fed. Cl. 96 (1992) ........ 14

Conteras v. United States,
64 Fed. Cl. 583 (2005) ........ 14

Doe v. United States,
100 F.3d 1576 (Fed. Cir. 1996) ........ 11

Fausto v. United States,
484 U.S. 439 (1988) ........ 13, 14

Hambsch v. United States,
848 F.2d 1228 (Fed. Cir. 1988) ........ 13

Hamlet v. United States,
63 F.3d 1097 (Fed. Cir.1995) ........ 10

James v. Caldera,
159 F.3d 573 (Fed. Cir. 1998) ........ 10

Johnson Controls World Servs., Inc. v. United States,
44 Fed. Cl. 334 (1999) ........ 1

McBryde v. United States,
299 F.3d 1357 (Fed. Cir. 2002) ........ 11

Reynolds v. Army & Air Force Exch. Serv.,
846 F.2d 746 (Fed. Cir. 1988) ........ 1

Roberts v. U.S. Dept. of Justice,
366 F. Supp.2d 13 (D.D.C. 2005) ........ 14, 15

Sacco v. United States,
63 Fed. Cl. 424 (2004) ........ 10

Shelleman v. United States,
9 Cl. Ct. 452, 455 (1986) ........ 12, 13, 14

United States v. Connolly,
716 F.2d 882 (Fed. Cir. 1983) ........ 10, 13

United States v. Mitchell,
463 U.S. 206 (1983) ........ 10

United States v. Testan,
424 U.S. 392 (1976) ........ 9, 10, 12

Walker v. United States
11 Cl. Ct. 77 (1986)……………………………………………………………..............10

**STATUTES**

5 C.F.R. § 842.802 ........................................................................ 7

5 U.S.C. § 2302 ........................................................................ 14

5 U.S.C. § 5305 note ........................................................................ 7, 8

5 U.S.C. § 5541(3)........................................................................ 8

5 U.S.C. § 5596 ........................................................................ passim

5 U.S.C. § 8331(20)........................................................................ 7, 8

5 U.S.C. § 8335(b)(1) ........................................................................ 7

5 U.S.C. § 8336 ........................................................................ 7, 8

5 U.S.C. § 8401(17)........................................................................ 7, 8

5 U.S.C. § 8412 ........................................................................ 8, 9

5 U.S.C. § 8425(b)(1) ........................................................................ 8

6 U.S.C. § 203(3)........................................................................ 5

6 U.S.C. § 552 ........................................................................ 5

28 U.S.C. § 540C........................................................................ passim

28 U.S.C. § 1491 ........................................................................ 2, 9

40 U.S.C. § 121(d)........................................................................ 4

40 U.S.C. § 318 ........................................................................ 3, 4, 5

40 U.S.C. § 1315 ........................................................................ passim

5 U.S.C.A. § 5541(3)........................................................................ 7

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JEFFREY B. KING, SCOTT A. AUSTEN, KEVIN J. HARRIS, AND JOHN J. HAYS, | ) | |
| Plaintiffs, | ) | No. 07-589C (Judge Hewitt) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss plaintiffs' complaint for lack of subject matter jurisdiction. As we establish below, the Court lacks subject matter jurisdiction to consider the claims raised in this matter because the statutes and regulations upon which plaintiffs rely are not money mandating. Further the Court lacks subject matter jurisdiction to consider the Federal Bureau of Investigation's employment-related decisions. In support of our motion, we rely upon plaintiffs' complaint, the following brief, and attachments.[1]

STATEMENT OF THE CASE

I. Nature Of The Case

Plaintiffs Jeffrey B. King, Scott A. Austin, Kevin J. Harris, and John J. Hays bring this action on behalf of themselves and others similarly situated pursuant to the

[1] Given the jurisdictional nature of this motion, the Court may look outside of the pleadings and consider the relevant documents in defendant's attachments. Johnson Controls World Servs., Inc. v. United States, 44 Fed. Cl. 334, 340 (1999) (quoting Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988)).

Tucker Act, 28 U.S.C. §1491, 28 U.S.C. §540(C), and the Back Pay Act, 5 U.S.C. § 5596. Compl. ¶ 1. Plaintiffs claim they are owed compensation under 28 U.S.C. § 540C, which authorizes the Director of the Federal Bureau of Investigation ("FBI") to establish a permanent FBI police force entitled to the same pay and benefits applicable to members of the United States Secret Service Uniformed Division. Id. Accordingly, they seek back pay pursuant to 5 U.S.C. § 5596(b)(1). Id.

II. Statement Of Facts

On November 2, 2002, the President signed 28 U.S.C. § 540C into law. Compl. ¶ 12. The purpose of the law was to authorize a permanent FBI police force. Compl. ¶ 13. Section 540C of title 28 of the United States Code defines the term "FBI Police" as:

> the permanent police force established to perform such duties as the Director may prescribe in connection with the protection of persons and property within FBI building and grounds. The Director, or designated representative duly authorized by the Attorney General, may appoint uniformed representatives of the FBI as FBI Police for duty in connection with the policing of all FBI buildings and grounds.

Compl. ¶ 14 (emphasis added). The statute also provides that "[t]he rates of basic pay, salary schedule, pay provision, and benefits for members of the FBI police shall be equivalent to the rates of basic pay, salary schedule, pay provisions, and benefits applicable to members of the United States Secret Service Uniformed Division." Compl. ¶ 16.

A. Plaintiffs' Allegations

Plaintiffs allege that they are members of the FBI police force as that term is defined in 28 U.S.C. § 540C. Compl. ¶ 15. They also allege that beginning on January 1, 2003, and continuing through the present, the United States has not complied with 28

U.S.C. § 540C, because it has failed to increase plaintiffs' rates of basic pay, salary schedule, pay provisions, and benefits to those afforded to members of the United States Secret Service Uniformed Division. Compl. ¶ 16. They allege that 28 U.S.C. § 540C confers a substantive right for money damages against the United States, Compl. ¶ 22, and that the United States' failure to confer a mandatory upgrade in plaintiffs' salary to which they claim they are entitled to receive by statute constitutes an unjustified or unwarranted personnel action resulting in a reduction of pay, such that they are owed compensation under the Back Pay Act. Compl. ¶ 24. Plaintiffs are not, however, FBI Police as defined by 28 U.S.C. §540C. To understand plaintiffs' employment status it is necessary to explain the history of the FBI police program.

B. GSA's Federal Protective Service

Prior to 2002, the General Services Administration ("GSA") was vested with the authority to provide security at all federal buildings under 40 U.S.C. § 318. See 40 U.S.C. § 318. Pursuant to that authority, in 1971 the GSA established the Federal Protective Service to protect federal buildings. With respect to protection services for certain FBI facilities, GSA delegated its authority to the Department of Justice ("the Department"). See, e.g., Renewal of Authority For Building Operations and Management of Real Property (1994), Section 5.E.(3) (providing "[t]he Attorney General, Department of Justice is authorized to appoint uniformed guards (with arrest authority) under the authority vested in the Administrator of General Services (40 U.S.C. § 318)") & Appendix I, Figure A (J. Edgar Hoover ("JEH") building) (attached to this motion as Exhibit 1); Delegation of Authority from GSA to Attorney General (1993) (relating to the FBI facility housing the Criminal Justice Information Services (CJIS) Division in

Clarksburg, WV) (attached to this motion as Exhibit 2); see also 40 U.S.C. § 121(d) (GSA delegation authority) (previously codified as 40 U.S.C. § 486(d)).

The Department of Justice redelegated the authority to protect certain FBI buildings to the FBI itself. See, e.g., Memorandum for FBI Director Louis Freeh from Assistant Attorney General for Administration Stephen R. Colgate (1995) (regarding redelegation of authority to FBI for JEH building) (attached to this motion as Exhibit 3); Memorandum for FBI CJIS Assistant Director G. Norman Christensen from AAG Colgate (1993) (regarding redelegation of authority to FBI for facility housing CJIS in Clarksburg, WV) (attached to this motion as Exhibit 4). Pursuant to that delegated authority, the FBI established the FBI Police. In 1987 or 1988, under 40 U.S.C. § 318, officers who had been assigned to the JEH building were sworn in as FBI Police Officers under the management of the FBI's Administrative Services Division. See generally Position Evaluation Statement (1988) (redescribing Guard GS 0085 position series as Police Offices GS 0083 position series) (attached to this motion as Exhibit 5).[2] GSA has authorized successive delegations of authority to the Department and, in turn, the FBI, for protection services at certain FBI facilities. See, e.g., Delegations of Authority from GSA to the Department of Justice, dated December 22, 1998, November 28, 2003 (attached to this motion as Exhibits 6 & 7).

[2] The General Schedule system consists of 22 occupational groups, with each group containing separate series representing different occupations in that group. The police series (GS-0083) is contained within the Miscellaneous Occupations group and includes positions the primary duties of which are the performance or supervision of law enforcement work in the preservation of the peace; the prevention, detection, and investigation of crimes; the arrest or apprehension of violators; and the provision of assistance to citizens in emergency situations, including the protection of civil rights. See Office of Personnel Management, Federal Classification and Job Grading Systems, available at http://www.opm.gov/fedclass/html/gsseries.asp.

C. Homeland Security Act of 2002

With the passage of the Homeland Security Act of 2002, Congress transferred various government agencies to the newly created Department of Homeland Security (DHS). One of those agencies was the Federal Protective Service, which is now part of the DHS through 6 U.S.C. § 203(3). Congress also transferred the vested authority of GSA to provide security at federal buildings to DHS. 40 U.S.C. § 1315(a). To reflect that transfer of authority, Congress recodified 40 U.S.C. § 318 as 40 U.S.C. 1315.[3] The savings provision of the Homeland Security Act establishes that the authority GSA had previously delegated to the Department of Justice was not affected by the transfer. See 6 U.S.C. § 552 (providing that "[c]ompleted administrative actions of an agency shall not be affected by the enactment of this chapter or the transfer of such agency to the Department, but shall continue in effect according to their terms until amended, modified, superseded, terminated, set aside, or revoked in accordance with law by an officer of the United States or a court of competent jurisdiction, or by operation of law"); see also Memorandum from the Department to the FBI, dated January 13, 2004 ("The Secretary of DHS has directed that GSA's existing delegations of law enforcement and security

---

[3] Section 1315 now reads "Law enforcement authority of Secretary of Homeland Security for protection of public property," and provides, in pertinent part:

> (a) In general.--To the extent provided for by transfers made pursuant to the Homeland Security Act of 2002, the Secretary of Homeland Security (in this section referred to as the "Secretary") shall protect the buildings, grounds, and property that are owned, occupied, or secured by the Federal Government (including any agency, instrumentality, or wholly owned or mixed-ownership corporation thereof) and the persons on the property.

40 U.S.C. § 1315(a).

services remain in effect until such time as he may revoke or supersede such delegations.") (attached to this motion as Exhibit 8). Thus, by operation of law and the savings provision of the Homeland Security Act, the FBI Police currently derives its authority from 40 U.S.C. § 1315.[4] [5]

---

[4] Actually, the current authority of FBI Police Officers is derived from different sources depending on the location to which officers are assigned. FBI Police Officers at the JEH Building, the Criminal Justice Information Services (CJIS) complex in Clarksburg, West Virginia, and the FBI Washington Field Office operate under authority delegated to the FBI originally from the GSA. FBI Police Officers in the FBI New York Field Office and at the FBI Academy in Quantico, Virginia are deputized by the United States Marshals Service (USMS). There is no authority for the FBI Police to protect other FBI facilities absent deputation by the USMS. Plaintiffs are all FBI Police Officers assigned to the CJIS complex in Clarksburg, West Virginia, and, thus, for purposes of this litigation, we focus on the GSA-derived authority for protection services at FBI facilities.

[5] Under 40 U.S.C. § 1315, FBI Police have limited statutory authority as "officers and agents for duty in connection with the protection of property owned or occupied by the Federal Government and persons on the property, including duty in areas outside the property to the extent necessary to protect the property and persons on the property." Subsection (b)(2) specifically enumerates their powers to perform the following while engaged in the performance of official duties:

> (A) enforce Federal laws and regulations for protection of persons and property;
> (B) carry firearms;
> (C) make arrests without a warrant for any offense against the United States committed in the presence of the officer or agent or for any felony cognizable under the laws of the United States if the officer or agent has reasonable grounds to believe that the person to be arrested has committed or is committing a felony;
> (D) serve warrants and subpoenas issued under the authority of the United States;
> (E) conduct investigations, on and off the property in question, of offenses that may have been committed against property owned or occupied by the Federal Government or persons on the property; and
> (F) carry out such other activities for the promotion of homeland security as the Secretary may prescribe.

40 U.S.C. § 1315(b)(2).

D. The FBI Police Force

As discussed above, in 2002 Congress enacted legislation which authorized the Director of the FBI to "establish" a permanent police force, to be known as the FBI Police. See 21st Century Department of Justice Appropriations Authorization Act, Pub. L.107-273, § 11024(a), 116 Stat 1758, 1830 (2002), codified at, 28 U.S.C. § 540C (entitled "FBI Police"). However, the Director has not established such a permanent police force at this time. See Affidavit of Roland J. Covington (attached to this motion as Exhibit 9, and discussed below).

Although the Director has yet to establish a permanent police force, the legislation provides that should such a force be established, FBI Police Officers would receive pay and benefits equivalent to members of the United States Secret Service Uniformed Division ("SSUD"), and the officers would have been granted authority at all FBI facilities in the United States. Id. More specifically, if the Director were to establish the permanent FBI police force as authorized by the statute, then FBI Police Officers would receive an increase in pay and benefits to make their pay and benefits equivalent to that of the SSUD. See 5 U.S.C. § 5541(3); 5 U.S.C. § 5305 note (special rates for law enforcement officers). Further, the officers would be enrolled in a 20-year law enforcement retirement system under which officers would be eligible to retire after 20 years of service and attaining at least age 50, but would be subject to mandatory retirement at age 57.[6] See 5 U.S.C. § 8336(c) (CSRS immediate retirement); 5 U.S.C. §

[6] The definition of "law enforcement officer" for Civil Service Retirement System (CSRS) purposes is set out in 5 U.S.C. § 8331(20). The Federal Employees Retirement System (FERS) definition of "law enforcement officer" is set out in 5 U.S.C. § 8401(17). Generally, the FERS definition of "law enforcement officer" is more restrictive than the CSRS "law enforcement officer" definition due to a "rigorous" duty standard in 5 U.S.C. § 8401(17)(A)(ii), which provides that "law enforcement officer" positions must be

8335(b)(1) (CSRS mandatory separation); 5 U.S.C. § 8412(d) (immediate retirement); 5 U.S.C. § 8425(b)(1) (mandatory separation). The law also would have expanded the authority of the FBI Police so to protect every FBI facility in the United States. 28 U.S.C. § 540C(a)(2). In addition, the officers would have had the authority to police the property as well as streets and sidewalks up to 500 feet beyond the property line of every FBI facility. Id.

In comparison to the provisions of 28 U.S.C. §540C, unlike the SSUD, FBI Police Officers are currently not considered within the definition of "law enforcement officer" under 5 U.S.C. § 5541(3), used in determining eligibility for certain "law enforcement officer" pay entitlements in the premium pay law as well as other pay provisions which incorporate references to the definitions of "law enforcement officer" at 5 U.S.C. § 8331(20) and § 8401(17). See, e.g., 5 U.S.C. § 5305 note (§ 403 of the Federal Law Enforcement Pay Reform Act of 1990). FBI Officers are enrolled in the same retirement system as other FBI support employees and most other government workers. Under the CSRS, an officer must be at least 55 years old with at least 30 years of service to retire. 5 U.S.C. § 8336(a). FBI Officers covered under the FERS must have 30 years of service,

---

"sufficiently rigorous that employment opportunities should be limited to young and physically vigorous individuals." Cf. 5 C.F.R. § 842.802 (providing the definition of "law enforcement officer" "does not include an employee whose primary duties involve maintaining order, protecting life and property, guarding against or inspecting for violations of law, or investigating persons other than those who are suspected or convicted of offenses against the criminal laws of the United States").

Under the FERS, the definition of "law enforcement officer" extends to members of the U.S. Secret Service Uniformed Division. See 5 U.S.C. § 8401(17)(B) (definition extends to members of the U.S. Secret Service Uniformed Division whose employees who were placed in the D.C. Police Officers and Firefighters Retirement Plan before the creation of FERS).

and the minimum age for retirement varies from 55 to 57 years old depending on the officer's year of birth. 5 U.S.C. § 8412(a).

E. Non-Implementation of 28 U.S.C. §540C

When 28 U.S.C. §540C was enacted, the FBI took steps to prepare to implement its provisions; however, the Office of Personnel Management (OPM) and the Office of Management and Budget (OMB) raised concerns with respect to the implementation of the law. See Affidavit of Roland J. Covington (attached to this motion as Exhibit 9). Id. OPM observed that the law failed to address certain issues relating to the retirement systems. Id. Accordingly the FBI determined that implementation of the law would not be feasible given the potential fiscal impact that the retirement system issues created. Id. As a result, no portion of the law was implemented. Id. Consequently, despite the enactment of 28 U.S.C. §540C, plaintiffs continue to derive their employment status from 40 U.S.C. §1315, not 28 U.S.C. §540C.

## ARGUMENT

I. Plaintiffs' Complaint Should Be Dismissed For Lack Of Jurisdiction

In their complaint, plaintiffs allege that under 28 U.S.C. § 540C, Congress has mandated that the FBI police "shall" receive equivalent pay and benefits as members of the United States Secret Service Uniformed Division, and, thus, the Court's jurisdiction lies under the 28 U.S.C. § 1491 (the "Tucker Act"). Complaint ¶ 8. The Tucker Act is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392 (1976). Accordingly, to establish a Tucker Act claim, a plaintiff must identify a constitutional

provision, statute, regulation, or contract that independently creates a substantive right to money damages. See Testan, 424 U.S. at 400; United States v. Mitchell, 463 U.S. 206, 216-217 (1983); Hamlet v. United States, 63 F.3d 1097, 1101 (Fed. Cir.1995). In other words, the plaintiff "must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States." James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998).

Similarly, like the Tucker Act, the Back Pay Act, 5 U.S.C. § 5596, "does not, itself, provide a statutory basis for invoking this Court's jurisdiction." Sacco v. United States, 63 Fed. Cl. 424, 428 (2004) (citing United States v. Connolly, 716 F.2d 882, 887 (Fed. Cir. 1983)). Rather, "[t]he Back Pay Act is merely derivative in application; it is not itself a jurisdictional statute." Connolly, 716 F.2d at 887. In order for this Court to have jurisdiction over plaintiffs' claim, "some provision of law other than the Back Pay Act must first mandate, or at least be interpreted to mandate, money damages to an employee suffering an unjustified or unwarranted personnel action." Sacco, 63 Fed. Cl. at 428 (quoting Walker v. United States, 11 Cl. Ct. 77, 80 (1986)). Here, plaintiffs allege that section 540C is such a money-mandating provision. They are mistaken.

## A. The Necessary Money Mandating Predicate Does Not Exist To Invoke This Court's Jurisdiction

Plaintiffs' claim entitlement to monetary compensation under 28 U.S.C. § 540C(b)(5).[7] Compl. ¶ 8. This provision, however, cannot be interpreted as mandating

[7] That provision provides:

> (5) Pay and benefits.--
> (A) In general.--The rates of basic pay, salary schedule, pay provisions, and benefits for members of the FBI police shall be equivalent to the rates of

the compensation that plaintiffs' seek. The statute provides that the Director "may establish a permanent police force, to be known as the FBI police." 28 U.S.C. § 540C(b)(1) (emphasis added). Thus, the condition precedent to the purported mandatory pay provision is that the Director establish a permanent FBI police force under the authority of the statute. The statute's use of the word "may" makes clear that the statute is a discretionary statute authorizing the Director to establish a permanent police force with the duties "as the Director may prescribe [as approved by the Attorney General] in connection with the protection of persons and property within FBI buildings and grounds." 28 U.S.C. § 540C(4)(A). A statute is not money-mandating when it gives the government complete discretion over the decision whether or not to pay an individual or group. See Doe v. United States, 100 F.3d 1576, 1582 (Fed. Cir. 1996); see also McBryde v. United States, 299 F.3d 1357, 1362 (Fed. Cir. 2002) ("There is a presumption that the use of the word "may" in a statute creates discretion."); Army & Air Force Exch. Serv. v. Sheehan, 456 U.S. 728, 739 (1982) (rejecting the argument that "the violation of any

---

> basic pay, salary schedule, pay provisions, and benefits applicable to members of the United States Secret Service Uniformed Division.
>
> (B) Application.--Pay and benefits for the FBI police under subparagraph (A)--
> (i) shall be established by regulation;
> (ii) shall apply with respect to pay periods beginning after January 1, 2003; and
> (iii) shall not result in any decrease in the rates of pay or benefits of any individual.

28 U.S.C. § 540C(b)(5).

statute or regulation relating to federal employment automatically creates a cause of action against the United States for money damages") (quoting Testan, 424 U.S. at 401).

Because 28 U.S.C §540C is a discretionary statute, it does not create a substantive right to money damages within the meaning of the Tucker Act. Plaintiffs' complaint fails to allege that the Director has exercised his discretion under the statute or implemented its authority in establishing such an FBI police force, and in fact, as established above, the Director has not implemented this authority. Further, as demonstrated above, the FBI Police derive their current authority under 40 U.S.C. § 1315, not 28 U.S.C. § 540C(b)(1). By its plain terms, section 540C does not mandate pay and benefits to plaintiffs absent the exercise by the Director of the statute's authority

B. This Court Lacks Jurisdiction To Make Determinations Of Prohibited Personnel Practices Or Grant Relief Pursuant To The Back Pay Act

Moreover, even assuming the Director has exercised his discretion to create an FBI police force, plaintiffs' reliance upon the Back Pay Act, 5 U.S.C. § 5596, and the purported mandatory equivalent pay provision for an FBI police force under 28 U.S.C. § 540C(b)(5), as a basis for this Court's Tucker Act jurisdiction is misplaced. Plaintiffs allege that the FBI's failure to "confer a mandatory upgrade in Plaintiffs' salary which they are entitled to receive by statute constitutes an unjustified or unwarranted personnel action resulting in a reduction of pay for which relief is owed under the Back Pay Act." Compl. ¶ 24. However, the underlying remedial statute upon which Tucker Act jurisdiction is based must be facially interpreted as mandating compensation by the Federal Government for damages sustained to an injured party. Shelleman v. United States, 9 Cl. Ct. 452, 455 (1986). Where, as here, operative elements of the Tucker Act

are not satisfied, the Court is without subject matter jurisdiction to review the substantive issues raised. Id.

In order to satisfy the Back Pay Act, an employee of an agency must be "found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee." 5 U.S.C. § 5596(b)(1). Therefore, in determining whether the requirements of the Back Pay Act are met, an "appropriate authority" must look to an "applicable law, rule, regulation, or collective bargaining agreement" as the source of an employee entitlement that an "unjustified or unwarranted personnel action" was denied or impaired. Hambsch v. United States, 848 F.2d 1228, 1231 (Fed. Cir. 1988). It is well-settled that this Court is not an "appropriate authority" to make this determination. Fausto v. United States, 484 U.S. 439, 454 (1988); see also United States v. Connolly, 716 F.2d 882, 887-888 (Fed. Cir. 1983) (No jurisdiction in the Claims Court when plaintiff failed to show his separation violated any relevant statute or regulation covered by the Tucker Act. "The Back Pay Act is merely derivative in application; it is not itself a jurisdictional statute.") Here, plaintiffs have failed to allege any unwarranted personnel action prohibited by statute, regulation, or law which in turn authorizes suit in this Court. Accordingly, this Court lacks jurisdiction to consider plaintiffs' back pay claim.

Furthermore, even assuming plaintiffs' Tucker Act jurisdiction can be based solely upon the Director's alleged violation in failing to establish a permanent FBI police force and providing it equivalent pay and benefits pursuant to 28 U.S.C. § 540C, this

Court would lack subject matter jurisdiction as Congress intended to shield the FBI's employment-related decisions from this Courts review. Fausto, 484 U.S. at 454. Rather, the appropriate authority includes the Federal agency engaged in the alleged prohibited action, or the Merit Systems Protection Board. ("MSPB"). Id.

This Court has repeatedly held that the MSPB possesses exclusive jurisdiction with respect to Federal personnel actions. "The [Civil Service Reform Act] effected a sweeping reorganization of the Civil Service System such that the MSPB became the primary and sole vehicle for adjudicating an employee's allegations of prohibited personnel practice at the first instance. Shelleman, 9 Cl. Ct. at 457-58; see also Berry v. United States, 27 Fed. Cl. 96 (1992); Conteras v. United States, 64 Fed. Cl. 583 (2005). As a general rule, the Civil Service Reform Act ("CSRA") prohibits specified minor personnel actions whose motivation is the violation of "any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301." 5 U.S.C. § 2302(b)(11); Roberts v. U.S. Dept. of Justice, 366 F. Supp.2d 13, 21 (D..D.C. 2005). FBI employees, however, are generally excluded from the CSRA. 5 U.S.C. §§ 2302(a)(2)(C)(ii). "That Congress deliberately excluded FBI employees from the provisions establishing administrative and judicial review for personnel actions involving violations of CSRA implementing regulations suggests that Congress meant to preclude judicial review for such actions." Roberts, 366 F. Supp.2d at 21; see Fausto, 484 U.S. 439 (holding that the CSRA, in failing to provide explicitly for administrative or judicial remedies for certain decisions affecting nonpreference excepted service employees, implicitly bars judicial remedies under 5 U.S.C. § 5596 ("Back Pay Act")). Thus, plaintiffs' claim, as grounded in the personnel decision-making of the agency, does

not meet the subject matter jurisdiction requirements of this Court. See Roberts, 366 F. Supp.2d at 21. Any "class" claims suffer from the same defects and, accordingly, should be dismissed.

**CONCLUSION**

For the foregoing reasons, we respectfully request that the Court dismiss plaintiffs' motion for lack of subject matter jurisdiction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Assistant Director

/s/Carrie A. Dunsmore
CARRIE A. DUNSMORE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tel: (202) 305-7576
Fax: (202) 514-8624

October 31, 2007

Attorneys for Defendant

Certificate of Filing

I hereby certify that on this 31st day of October, 2007, a copy of "Defendant's Motion to Dismiss" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Carrie A. Dunsmore