# EXHIBIT 1

# Renewal of Authority For Building Operations and Management of Real Property

Delegated To: Department of Justice

General Services Administration
Public Buildings Service
Washington, DC 20405

TABLE OF CONTENTS


1. AUTHORITY

2. AUTHORITIES DELEGATED

3. COORDINATION

4. RESOURCES MANAGEMENT

5. PROGRAM RESPONSIBILITIES AND LIMITATIONS

A. CLEANING

B. OPERATION AND MAINTENANCE

C. UTILITIES

D. REPAIRS AND ALTERATIONS

E. PROTECTION

F. CONCESSIONS

G. CONTRACTS

H. ASSIGNMENT AND UTILIZATION OF SPACE

I. LEASE MANAGEMENT

6. DISPUTES

7. TERMINATION

8. EVALUATION

9. TERM OF REDELEGATION

SIGNATURES

ATTACHMENTS

APPENDIX I - FIGURE A, DELEGATED LOCATIONS

APPENDIX I - FIGURE B, TOTAL LEVEL OF FUNDING TO BE TRANSFERRED

APPENDIX II - FIGURE A, DELEGATED BUILDING TOTAL COST ACCOUNTING STATEMENT

APPENDIX II - FIGURE B, INSTRUCTIONS FOR COMPLETING THE DELEGATED BUILDING TOTAL COST ACCOUNTING STATEMENT

APPENDIX III - FIGURE A, INTERAGENCY UTILITIES RESPONSIBILITIES

APPENDIX III - FIGURE B, FORMULA FOR DETERMINING CHILLED WATER COSTS

APPENDIX IV - FIGURE A, EXAMPLES OF AGENCY RECURRING REPAIRS AND ALTERATION RESPONSIBILITIES UNDER THE DELEGATION AND EXAMPLES OF GSA NONRECURRING REPAIRS AND ALTERATION RESPONSIBILITIES UNDER THE DELEGATION

APPENDIX IV - FIGURE B, FORESEEABLE NONRECURRING REPAIRS

APPENDIX V - FIGURE A, CONTRACT GUARD SUITABILITY REQUIREMENTS

APPENDIX V - FIGURE B, OFFENSE/INCIDENT REPORT

APPENDIX V - FIGURE C, SAFETY AND ENVIRONMENTAL MANAGEMENT

1. Authority:

Under Section 205(d) of the Federal Property and Administrative Services Act of 1949, as amended, the Administrator of General Services hereby delegates and authorizes successive redelegations of authority, identified herein within stated limitations, to the Department of Justice (hereinafter referred to as "Agency").

2. Authorities Delegated:

Authorities vested in the Administrator by Reorganization Plan No. 18 of 1950, the Federal Property and Administrative Services Act of 1949, as amended, the Public Buildings Act of 1959, as amended, the Public Buildings Amendments of 1972, the Public Buildings Cooperative Use Act of 1976, and the Public Buildings Amendments of 1988, to perform functions with respect to the operation, maintenance, repair, preservation, alteration, and protection of the building(s) identified in appendix I, are hereby delegated without limitation, except as specified herein or required by law, Executive order, or regulation promulgated pursuant to law. Unless modified, waived or superseded by provisions contained in this delegation, all provisions contained in Public Laws and in the Federal Property Management Regulations (FPMR's), Subchapter D, as amended, applying to the General Services Administration (GSA) pertaining to the operation, maintenance, repairs, alterations, protection, and administration of buildings and grounds under the authority and control of GSA apply to the Agency. Any conflicts or disputes pertaining to the interpretation of this provision and/or application of FPMR requirements will be settled in accordance with paragraph 6 of this delegation.

3. Coordination:

Unless specified otherwise, all data transmittals, approval requests, and required reports are to be submitted to the appropriate Assistant Regional Administrator for Public Buildings Service (hereinafter referred to as "GSA") who is responsible for all operational coordination between the Agency and GSA program offices. The Agency shall designate to each regional GSA official, the Agency official(s) responsible for coordination of all building delegation activities for the respective buildings. GSA will notify this official prior to any inspections.

4. <u>Resources Management</u>:

A. <u>Funding for Building Operations</u>:

(1) The Agency will continue to pay the full Rent. During the first quarter of each fiscal year, GSA, Central Office, will effect a funds transfer to the Agency headquarters to provide for the delegated operational and repair responsibilities. The amount transferred to the Agency for standard level operations will be determined in accordance with the policies and procedures contained in the GSA annual budget call and will approximate the amount that would otherwise have been allowed GSA for accomplishing the delegated functions. This transfer shall be in accordance with GSA guidelines issued for administration and control of Federal Buildings Fund (FBF) funds allocated to other agencies under GSA's Building Delegations Program.

(2) Funds transferred will be determined in accordance with the annual budget call to be issued by GSA, Central Office, at least 18 months prior to the beginning of the fiscal year. GSA, Central Office, will incorporate the appropriate standard level requirements within its annual budget submission to the Office of Management and Budget (OMB).

(3) Should actions be taken by Congress or OMB which increase or decrease the funds available to GSA for building operation and repair, GSA, Central Office, will make a proportionate increase or decrease in the amount available to the Agency, consistent with Congressional/OMB intent in making the increase/decrease.

B. <u>Financial Accounting Requirements</u>:

The Agency shall submit, annually, a total cost accounting statement prepared in the format shown in appendix II, figure A, for standard and above-standard level services. Definitions of the functions are contained in appendix II, figure B. Object class definitions are prescribed in OMB Circular A-11. The total cost accounting statement should be prepared on an accrual basis reflecting the costs of goods and/or services received during the period as provided for in the Budget and Accounting Procedures Act of 1956, as amended, 31 U.S.C. 3501, <u>et seq</u>. An appropriate Agency financial officer shall certify that this statement is complete and accurate.

C. Records:

(1) The Agency may have access to all historical records maintained by GSA which pertain to the operation of the delegated building(s).

(2) The Agency shall maintain program and financial records of all delegation-related activities. The documentation shall be maintained and retired consistent with the regulations prescribed by the National Archives and Records Administration or the Comptroller General, as appropriate.

5. Program Responsibilities and Limitations:

This paragraph contains, by program areas, definitions and agency responsibilities and limitations pertaining to the delegation. In leased buildings, the requirements of paragraphs 5.A through H apply only to the extent that the respective requirements are not the responsibility of the lessor under the terms of the lease agreement. GSA reserves the right to inspect the delegated building(s) and any Agency records pertaining to this delegation at any time during the term of the delegation. To the extent resources are available, GSA will perform, on a reimbursable basis, any service provided prior to delegation.

A. Cleaning:

The Agency is responsible for maintaining an established cleaning and grounds maintenance program to provide a healthful and attractive environment, and to preserve and protect interior finishes and landscaping. This program shall include janitorial services, pest control, trash removal, landscape maintenance, snow removal, and the like.

B. Operation and Maintenance:

(1) All Government-maintained mechanical, electrical, and utility systems in the delegated building(s) shall be operated in accordance with energy conservation guidelines contained in FPMR 101-20.107.

(2) The Agency is responsible for maintaining the established preventive maintenance (PM) program, approved by GSA, for all building operating equipment maintained by the Government. Such a program requires a complete inventory of the equipment to be maintained, with identification of maintenance to be performed and frequencies. Maintenance shall be done in accordance with industry, manufacturers, or GSA standards.

The proposed PM program "changes" must be submitted to GSA for approval within 120 days following the effective date of this delegation and resubmitted for GSA's approval any time the program (standards and procedures) is altered. All PM must be performed in accordance with the approved program. Records of PM accomplishment must be maintained and are to be made available to GSA for inspection.

(3) All operation and maintenance of safety-related alarms, such as fire alarm and sprinkler waterflow alarm(s) now installed in the delegated building(s), will be the responsibility of GSA. Responsibility for all maintenance, recurring repairs, alarm monitoring and testing, and telephone line charges for security systems will be assumed by GSA. For those alarm signals transmitted to the GSA central monitoring station, GSA will monitor alarms and notify designated Agency personnel of emergency situations at no additional charge to the Agency.

(4) All operation and maintenance of safety related alarms, such as fire alarm and sprinkler water flow alarm(s) now installed in the delegated building(s), will be the responsibility of GSA. Responsibility for all maintenance, recurring repairs, alarm monitoring and testing, and telephone line charges for security systems will be assumed by GSA. For those alarm signals transmitted to the GSA central monitoring station, GSA will monitor alarms and notify designated Agency personnel of emergency situations at no additional charge to the Agency.

(5) The Agency is responsible for complying with safety and environmental laws and regulations while operating and maintaining building operating equipment.

C. Utilities:

(1) The Agency must follow an energy management and conservation plan to meet the requirements established in Public Law 102-486, Executive Order 12902, and other applicable laws and regulations.

(2) The Agency is responsible for payment of all utility and fuel bills (including natural gas, coal, steam, chilled water, oil, electricity, and water/sewage). The Agency shall retain copies of all utility bills and make them available to GSA upon request.

(3) In delegated building(s) receiving steam or chilled water from another GSA-operated or delegated facility (see appendix III, figure A), the receiving Agency shall reimburse the supplying agency on a quarterly basis for the cost of producing the utility. The steam rate is shown in appendix III, figure A; the cost of providing chilled water will be determined on the

basis of meter readings from BTU meter(s) in the supply line(s), applied to the formula provided in appendix III, figure B. The supplying agency is responsible for furnishing, installing, calibrating, repairing, and replacing the meter(s). The supplying agency is also responsible for computing the quarterly cost and for billing the receiving Agency.

(4) The receiving Agency in paragraph (3), above, is responsible for reading all utility meters on a monthly basis and forwarding readings to the supplying agency within 10 days following the end of each month.

(5) The supplying agency in paragraph (3), above, is entitled to verify meter readings and make utility billing adjustments, as appropriate.

(6) GSA shall be responsible for maintenance, recurring repairs, replacement, and disposal of all electrical transformers and high tension switchgear. The Agency shall be responsible for replacement and proper disposal of PCB equipment (e.g., capacitors in certain types of light ballasts).

(7) The Agency will be responsible for reporting quarterly utilities usage to the Department of Energy, Office of Federal Energy Management Programs, Washington, DC 20585.

D. <u>Repairs and Alterations</u>:

(1) Repairs and alterations consist of all repair or alteration projects costing $10,000 or more, including material, labor, design, supervision costs, and all cyclic painting regardless of cost. Projects costing less than $10,000 are considered operation and maintenance costs and are included in paragraph 5.B. The Agency is responsible for providing the necessary funding associated with tenant alterations. Funding for initial space alterations is the responsibility of GSA; accomplishment will be in accordance with paragraph 5.H(5).

(2) The Agency is responsible for the accomplishment of all recurring repairs and tenant alterations such as those identified in appendix IV, figure A, regardless of cost. Where the Agency experiences inordinate or extraordinary recurring repair requirements, GSA, Central Office, will consider requests by the Agency for additional recurring repair funds. The accomplishment of all nonrecurring repairs is the responsibility of GSA. Examples of nonrecurring repairs are identified in appendix IV, figure A. In the case of a dispute, GSA will make the determination as to whether a repair is recurring or nonrecurring.

(3) The Agency shall maintain project and financial records of all completed recurring repairs and alterations costing $10,000 or more, in accordance with the provisions of paragraph 4.C.

(4) All recurring repairs and space alterations having an estimated value of $100,000 or more, or which will result in a change in the classification of space, must have prior review and approval of GSA. In addition, existing safety systems such as fire alarms system(s), sprinkler system(s), and exit system(s) components and equipment shall not be changed through repairs, alterations, space modifications, or improvements regardless of cost without prior written approval by GSA.

(a) The request for review and approval of the project will be submitted to GSA as early in the planning process as possible, but in no event less than 60 calendar days prior to the planned issuance of a solicitation or request for proposal to accomplish the proposed work. This request must be made in writing, and shall be accompanied by narratives, plans, drawings, or schematics sufficiently detailed to allow GSA to evaluate the scope of the project and its impact on the building structure or systems.

(b) GSA will respond to the request within 10 working days after receipt. If a technical review is either required by GSA or requested by the Agency, GSA will advise the Agency of the estimated date the technical review will be completed. GSA will keep the Agency informed of the progress of the technical review, and the Agency may not proceed without written GSA approval.

(c) Upon completion of any approved work, the Agency shall submit as-built drawings showing all changes made to the building(s) as a result of the work.

(5) The Agency shall notify GSA of any foreseeable or required nonrecurring repairs, as they are identified by the Agency, using the format provided in appendix IV, figure B. For budgetary purposes, nonrecurring repairs (greater than $10,000 and less than the prospectus level) must also be prioritized and submitted to GSA at least 18 months prior to the fiscal year in which the work is requested, along with any studies, surveys, or other data which verifies the need for the requested repairs. GSA will notify the Agency within 10 working days as to whether the project qualifies, by definition, as a nonrecurring repair; and of GSA's schedule to conduct a technical review and make a final determination relative to the validity of the project and programming, if appropriate. Once approved for programming, GSA will notify the Agency, on a fiscal quarterly basis, of the project status throughout the life of the project.

(6) If at any time during the term of this delegation GSA determines that a prospectus is required, the Agency is responsible for providing GSA with any information GSA deems necessary for the preparation of the prospectus.

(7) For those delegated buildings that are either on, eligible, or potentially eligible for the National Register of Historic Places, the Agency is responsible under the National Historic Preservation Act of 1966, as amended, 16 U.S.C. 470, et seq., and Executive Order 11593, to review all repair, maintenance, alteration, and restoration work that affects the original materials in the building with the appropriate State Historic Preservation Office and with the Advisory Council on Historic Preservation. The procedure for review by the State Historic Preservation Office and the Advisory Council is contained in 36 CFR Part 800. Before contacting these organizations, the project must be approved by GSA's regional Historic Preservation Officer.

(8) Many Government buildings contain artworks created through federally sponsored programs. Conservation of these artworks is the responsibility of GSA. The Agency is responsible for safeguarding and reporting any loss or damage of property to GSA.

(9) All Agency-accomplished repairs and alterations shall conform to public laws, FPMR's, and GSA handbooks. These include, for example, Facilities Standards for the Public Buildings Service and the Uniform Federal Accessibility Standards.

(10) All alterations or repairs which may disturb asbestos containing materials shall be accomplished in accordance with GSA/EPA/OSHA-approved procedures. Any locations containing asbestos which were not previously identified by the Agency or any changes in conditions of asbestos materials identified by the Agency shall immediately be reported, in writing, to GSA.

(11) To the extent resources are available, GSA will provide design, supervision, management, and inspection services upon request by the Agency, on a reimbursable basis, for repairs and alterations which are the responsibility of the Agency under the terms of this delegation.

E. Protection:

Security:

(1) GSA is responsible for mobile patrols, physical security surveys, responses to incidents and requests for assistance, crime prevention assessments, crime prevention awareness presentations, and investigations of criminal activities occurring within the delegated building(s). These investigations will be coordinated with the Agency's Inspector General or other designated security personnel; information may be shared in accordance with applicable Federal statutes.

(2) The Agency is responsible for security clearances and suitability determinations for contract personnel, physical security surveys of the perimeter, child care centers and common areas, crime prevention assessments, and crime prevention awareness presentations. Minimum suitability requirements for contract guards are provided in appendix V, figure A. To the extent resources are available, GSA will provide any of the above- mentioned services to the Agency on a reimbursable basis.

(3) The Attorney General, Department of Justice is authorized to appoint uniformed guards (with arrest authority) under the authority vested in the Administrator of General Services (40U.S.C. 318) provided that the appointments are limited to Department of Justice (DOJ) employees.

(4) In the event of an emergency situation (i.e., bomb threats, riots, and demonstrations), where capability exists, GSA will provide Federal Protective Officers to augment existing contract personnel.

(5) All criminal incidents or other incidents of a serious nature resulting in personal injury occurring within the delegated building(s), or fire incidents resulting in injury or monetary loss of $250 or more must be reported to GSA in accordance with the formats provided in appendix V, figure B. The Agency may use the appropriate Agency accident reporting form instead of the prescribed formats, providing it contains all data elements as the prescribed formats. GSA reserves the right to investigate any fire or accident on the premises.

(6) All building security protection must be accomplished in accordance with applicable FPMR's.

Safety:

(1) All maintenance, recurring repairs, alarm monitoring, and telephone line charges for security systems installed in the delegated building(s) are the responsibility of the Agency.

(2) For those systems remote to a GSA central monitoring station, GSA will monitor alarms and notify designated agency personnel of emergency situations at no additional charge to the Agency, if requested. Costs associated with the alarm systems hardware, i.e., telephone lines, are the responsibility of the Agency.

(3) All reportable incidents resulting in personal injury related to building design, operation and maintenance and occurring within the delegated building(s) must be reported to GSA on the appropriate Agency accident reporting form. All fire incidents within the delegated building(s) must be reported to GSA in the formats provided in appendix V, figure C. GSA shall reserve the right to investigate any fire or accident on the premises.

(4) GSA will conduct periodic fire and facility safety and health inspections, including asbestos assessments, in the delegated building(s). Actions necessary to correct any deficiencies identified by GSA will be undertaken by the appropriate agency in accordance with the provisions of paragraph 5.D(2) of this delegation.

(5) To the extent resources are available, GSA will provide the following reimbursable services when requested by the Agency:

(a) Design, installation, maintenance, and repair of safety systems and equipment, such as fire alarm system(s), sprinkler system(s), and exit system(s) components for security systems;

(b) Testing and firearm certification; and

(c) Onsite monitoring of contract.

F. <u>Concessions</u>: Full concessions responsibilities:

(1) Concessions consist of employee cafeterias, vending facilities operated by the blind under the Randolph-Sheppard Act, minority business concessions operated under section 8(a) of the Small Business Act, and pay telephones. Federal employee health units in multi-occupant buildings are also administered under the concessions program.

(2) Administration of all concessions activities will be the responsibility of the Agency, with the exception of pay telephones. The Agency will develop technical specifications, and negotiate, award, and administer concessions contracts and permits. The Agency is responsible for ensuring compliance with the Randolph-Sheppard Act and will provide services to State Licensing Agency activities as required in related permits. GSA will conduct a continuous program of evaluation to determine

compliance with established policies and procedures, and to ascertain overall effectiveness of program management.

(4) The Agency is accountable for the Government-owned food service equipment. The Agency is responsible for maintenance, repair, and replacement of Government-owned equipment, as required. In addition, the Agency is responsible for the maintenance, repair, and replacement of food service equipment as required in section 5(D), Repairs and Alterations.

(5) GSA will retain responsibility for developing policy, regulations, procedures, and standards governing concessions' activities.

(6) To the extent resources are available, GSA will provide technical supervision, management, and inspection services upon request by the Agency, on a reimbursable basis, for functions which are the responsibility of the Agency under the terms of this delegation.

(7) This agreement will require the Agency to provide sanitation inspection of food service facilities in accordance with GSA guidelines, policies and procedures.

(8) GSA will furnish the Agency with detailed guidelines to assist in performing the aforementioned functions. The Agency shall accomplish delegated concessions functions in accordance with GSA guidelines, policies and procedures.

G. <u>Contracts</u>:

(1) The Agency will have access to GSA district-wide requirements (term) contracts, provided (1) a certified Contracting Officer (CO) is designated as the Contracting Officer's Representative (COR) by the Agency, (2) individual orders citing Agency funds are issued, (3) contractors bill directly to the Agency, and (4) the Agency sends a copy of their procurement order to GSA for informational purposes. The CO's responsibilities for these contracts remain with GSA.

(2) The Agency may request GSA to perform, on a reimbursable basis, any contract procurement or administrative functions which were provided by GSA prior to this delegation. Such requests must be made at least 180 days prior to the start-work date of such a contract. A determination will be made by GSA at the time of any such request as to whether such services can be provided based on available resources, GSA workload, and existing GSA priorities.

(3) All contracting activities shall be accomplished in accordance with Federal Acquisition Regulations (FAR), and, if a

GSA-awarded contract, with General Services Administration Acquisition Regulations (GSAR) and other appropriate GSA directives.

(4) The Agency may procure supplies and materials from any available GSA sources.

H. Assignment and Utilization of Space:

(1) All space assignments in areas occupied by the Agency (including, but not limited to, office space, special space, and parking) within the delegated building(s) are the responsibility of the Agency. The executive branch agencies shall comply with FPMR Temporary Regulation D-76, or its succeeding regulation in all assignment and utilization actions.

(2) (a) Space assignments in the delegated building(s) to tenants other than the Agency remain the responsibility of GSA.

(1) Space assigned to the Agency may be used as a child care center where the delegatee is the sponsoring agency. A licensing agreement must be in effect pursuant to 40 U.S.C. 490b, as amended by Section 528 of Title V, General Provisions of Public Law 102-393, October 6, 1992.

(3) The Agency must notify GSA of any changes within any space in the delegated building(s) that would affect Rent billing. Such notifications (including assignment drawings for projects over $100,000) must be made as soon as an action is completed. Changes that would affect Rent billing include conversion, reclassification of space as a result of alterations (note requirements in paragraph 5.D.(4), above), and increases or decreases in space assignments to organizations that have Rent billing codes.

(4) The Agency is not authorized to enter into leases to sublet or outlease any of its assigned space; however, GSA may award such an outlease in space identified by the Agency as vacant or otherwise surplus to its needs.

(5) Where GSA has entered into an outlease agreement in the delegated building(s) or where another Federal agency or GSA has been assigned space in the delegated building(s), the Agency is responsible for all building services functions for that space. The Agency is also responsible for providing reimbursable tenant alterations and other services when requested by such occupants and for providing initial space alterations on a reimbursable basis when requested by GSA. The terms and conditions of paragraph 5.D.(4) remain applicable to any work accomplished under this paragraph.

Accomplishment of such alterations will be the responsibility of GSA when over $100,000 or when the work cannot be accomplished

under a leased building's Unit Price Agreement (UPA). In such cases, the Agency will review and approve the request and submit it to GSA for accomplishment.

(6) GSA may survey the Agency's space and, if determined to be underutilized in accordance with GSA policy, may recapture and reassign space or take other appropriate action.

I. Lease Management: (Leased Buildings Only)

(1) The Agency is responsible for management of the lease contract(s), including periodic inspections to ensure compliance with lease terms, establishment of a register to record all complaints and their resolutions, and written notification to the lessor(s) to take corrective action on items which are included in the lease(s). These documents are to be maintained in an onsite lease enforcement file. Prior to the effective date of the redelegation, the Agency shall designate, in writing, onsite individuals (and at least one alternate) who will be certified as capable of acting as the COR for the lease(s).

(2) The Agency nominee and all successors must complete a competency test given by GSA which will demonstrate knowledge of the duties and responsibilities under the COR designation. The competency test should be sent to the GSA CO with the request to be designated as the COR. The GSA CO may revoke the COR designation at any time if the Agency COR is not fulfilling his/her obligations under this agreement.

(3) The Agency is responsible for ordering overtime services in accordance with the lease agreement. If an overtime rate is not stated in the lease and there is a frequent and continuing need for overtime services, the GSA CO is responsible for negotiating the overtime rate. The Agency is responsible for negotiating the overtime rate for a one-time or sporadic need for overtime services. The Agency will pay the lessor directly for overtime usage by utilizing GSA Form 300 or other appropriate Agency form.

(4) The Agency may not redelegate lease management of a GSA lease outside the Agency. With prior written approval of the CO, the Agency may redelegate lease management authority to another qualified COR within the Agency.

(5) In the event of a dispute between the Agency and the lessor(s) concerning any provision of the lease(s), GSA will determine the resolution and issue a CO final decision, if appropriate. The Agency will provide any documentation necessary for the CO review of the dispute.

(6) GSA has the sole authority to authorize rental payments, rental deductions, and modifications to the lease agreement(s).

(7) The Agency is not authorized to enter into leases for real property or for expansion space in the building(s) under lease.

(8) Agencies may negotiate for lease alterations with the lessor in accordance with the following:

(a) The requirements of GSAR Subpart 570.6, Special Aspects of Contracting for Lease Alterations, must be met. Agency headquarters personnel are responsible for the distribution of copies of GSAR, its amendments, and standard language to be included in all contracts for space alterations to all COR's.

(b) Where Unit Price Agreements (UPA's) exist, they must be used for accomplishing alterations covered under the UPA, and: (i) individual orders citing Agency funds must be issued, (ii) the Agency must be billed directly by the lessor, and (iii) the Agency must maintain copies of all purchase orders and make them available to GSA upon request.

(c) Where UPA's do not exist, or when existing UPA's expire or do not provide for the work required, the Agency may negotiate a UPA or individual contract with the lessor(s) within limitations or restrictions imposed by Federal or Agency procurement regulations.

(d) Any contract for tenant alterations must include the following:

(1) A clause stating that the lessor is not relieved from any of his responsibilities under the lease.

(2) A clause stating that all terms and conditions of the lease and supplements thereto remain in full force and effect.

(3) An expressed waiver of restoration of the premises from the lessor in jurisdictions where this is necessary in order to protect the Government from claims for restoration.

(e) Notwithstanding the provisions of GSAR 570.602-2(g) with regard to award, alterations for any dollar amount are to be awarded using GSA Form 300, Order for Supplies or Services, or a similar standard Government form.

(9) Alteration work must not affect the amount of square footage under lease.

(10) Alterations are not to be performed outside the leased area with the exception of tying into electrical, mechanical, plumbing or HVAC units necessary for appropriate utilization of the leased space.

(11) Prior approval of GSA is required for the following tenant alterations:

(a) All tenant alterations having an estimated value in excess of $100,000, per project.

(b) All tenant alterations having an estimated value in excess of $25,000 per project, that exceed 10 percent of the existing annual rent, and where the remaining lease term is less than 3 years (all three conditions must exist).

(c) Alterations which will result in a change in the classification of space.

(d) Alterations which will result in a substantial change in the utilities and/or maintenance requirements of the lessor in Government-leased space.

(12) When prior approval of GSA is required under (11)(a)-(d) above, the proposed alterations are subject to the following:

(a) The request for review and approval of the project will be submitted to GSA as early in the planning process as possible, but in no event less than 60 calendar days prior to the planned issuance of a solicitation or request for proposal to accomplish the proposed work. This request must be made in writing, and shall be accompanied by narratives, plans, drawings, or schematics sufficiently detailed to allow GSA to evaluate the scope of the project and its impact on the building structure or systems.

(b) GSA will respond to the request within 10 working days after receipt. If a technical review is either required by GSA or requested by the Agency, GSA will advise the Agency of the estimated date the technical review will be completed. GSA will keep the Agency informed of the progress of the technical review, and the Agency may not proceed without written GSA approval.

(c) Upon completion of any approved work, the Agency shall submit as-built drawings showing all changes made to the building(s) as a result of the work.

(13) The Agency will be responsible for any claims from-the lessor(s) that result from any alteration work directed by the Agency.

(14) Alterations must conform to FPMR 101-20.106 as well as GSA fire and lifesafety criteria and physically handicapped accessibility provisions.

(15) Alteration work must be compatible with, and not adversely affect, building structures, fire and safety systems, mechanical/electrical systems and equipment (such as fire alarm, sprinkler, and exit system(s), or historically preserved building features.

(16) All alterations to areas containing asbestos shall be accomplished in accordance with GSA/EPA/OSHA guidelines. Any locations containing asbestos identified by the Agency or any change in conditions of asbestos materials which were not previously identified by GSA shall immediately be reported, in writing, to GSA.

(17) To the extent resources are available, GSA will perform alterations work in the delegated building(s) on a reimbursable basis.

6. Disputes:

Except as otherwise provided in this delegation, any dispute concerning a question of fact arising under this delegation which is not disposed of by agreement shall be decided by the appropriate GSA Regional Administrator, who shall state his/her decision in writing and provide a copy to the Agency. The decision of the Regional Administrator shall be final unless, within 30 calendar days from the date of receipt of such copy, the Agency provides the Regional Administrator with a written appeal addressed to the Administrator of General Services. The decision of the Administrator on such appeals shall be final. Pending final decision of disputes, the Agency shall proceed diligently with the performance of this delegation.

7. Termination:

Any or all responsibilities delegated may be terminated by the Administrator of General Services or the head of the Agency, upon 120 days notice, if he/she determines such action to be in the best interest of the Government. In the event of a reversion of the delegation, in whole or in part, funding and staffing resources for the functions transferred from GSA will be transferred back to GSA proportionate to the termination of delegated responsibilities.

8. Evaluation:

Effectiveness of the building delegation program will be evaluated on a continuing basis. The evaluation will include review/analysis of cost reports, random onsite inspections, and

meetings with Agency officials. A formal evaluation will be conducted at least biennially, utilizing the Operational Evaluations Guidelines, and any subsequent amendments thereof. The Agency is encouraged to conduct an annual assessment of its buildings operations program and provide a copy to GSA for information.

9. Term of Delegation:

This delegation shall be effective October 1, 1993, and shall remain in effect through September 30 of the fifth full fiscal year from the effective date unless terminated, in whole or in part, under the provisions of paragraph 7.

DELEGATED BY: ______________________ Date 8-8-94

ADMINISTRATOR OF GENERAL SERVICES

DELEGATED TO: Stephen R. Colgate Date 8/22/94

ASSISTANT ATTORNEY GENERAL FOR ADMINISTRATION
DEPARTMENT OF JUSTICE

APPENDIX I
Figure A
(page 1 of 1)

DELEGATED LOCATIONS

| AGENCY/BUREAU | BLDG. NO. | BLDG. NAME | BLDG. ADDRESS |
|---|---|---|---|
| Department of Justice | DC0023ZZ | *Justice | 10th & Constitution Washington, DC |
| | DC0090ZZ | J. Edgar Hoover | 9th & Pennsylvania Washington, DC |

* Designates a facility either on, eligible, or potentially eligible for the National Register of Historic Places and Historic Districts.

APPENDIX I
Figure B
(page 1 of 1)

## TOTAL LEVEL OF FUNDING TO BE TRANSFERRED

| | |
|---|---|
| Building Name: | Justice |
| Building Address: | 10th & Constitution<br>Washington, DC |
| Building Number: | DC0023ZZ |
| Cleaning: | $1,427,120 |
| Utilities: | $1,870,894 |
| Maintenance: | $1,220,499 |
| Administration: | $ 181,023 |
| Total RPO: | $4,699,536 |
| Repairs: | $ 358,057 |
| TOTAL: | $5,057,593 |

| | |
|---|---|
| Building Name: | J. Edgar Hoover |
| Building Address: | 9th & Pennsylvania<br>Washington, DC |
| Building Number: | DC0090ZZ |
| Cleaning: | $3,699,980 |
| Utilities: | $3,692,884 |
| Maintenance: | $1,253,537 |
| Administration: | $ 245,314 |
| Total RPO: | $8,891,715 |
| Repairs: | $ 786,389 |
| TOTAL: | $9,678,104 |

APPENDIX II
FIGURE A
(PAGE 1 OF 3)

# DELEGATED BUILDING TOTAL COST ACCOUNTING STATEMENT

FISCAL YEAR: ______

BUILDING NAME: ______ AGENCY:
BUILDING ADDRESS: ______
______
BUILDING NUMBER: ______

| FUNCTION: | LABOR OC 11, 12, 13 | CONTRACTS OC 25 | SUPPLIES & MATERIALS OC 26 | ALL OTHER OC'S | TOTAL |
|---|---|---|---|---|---|
| A. BUILDINGS MANAGEMENT | | | | | |
| A15 CLEANING | | | | | |
| Standard Level .......... | | | | | |
| Above–standard Level .......... | | | | | |
| TOTAL CLEANING .......... | | | | | |
| A38 UTILITIES | | | | | |
| Standard Level .......... | | | | | |
| Above–standard Level .......... | | | | | |
| TOTAL UTILITIES .......... | | | | | |
| A48 MECHANICAL O&M | | | | | |
| Standard Level .......... | | | | | |
| Above–standard Level .......... | | | | | |
| TOTAL MECHANICAL O&M.......... | | | | | |
| A91 ALL OTHER BLDGS MGMT | | | | | |
| Standard Level .......... | | | | | |
| Above–standard Level .......... | | | | | |
| TOTAL ALL OTHER BDGS MGMT | | | | | |
| SUBTOTAL BUILDINGS MANAGEMENT | **************** | **************** | **************** | **************** | **************** |

APPENDIX II
FIGURE A
(PAGE 2 OF 3)

# DELEGATED BUILDING TOTAL COST ACCOUNTING STATEMENT

| FUNCTION: | LABOR OC 11, 12, 13 | CONTRACTS OC 25 | SUPPLIES & MATERIALS OC 26 | ALL OTHER OC'S | TOTAL |
|---|---|---|---|---|---|
| B. PROTECTION | | | | | |
| K80 SECURITY PROTECTION | | | | | |
| Standard Level .......... | | | | | |
| Above–standard Level .......... | | | | | |
| SUBTOTAL PROTECTION | | | | | |
| | **************** | **************** | **************** | **************** | **************** |
| C. REPAIRS AND ALTERATIONS | | | | | |
| NXO Standard Level | | | | | |
| RECURRING REPAIRS .......... | | | | | |
| CYCLICAL PAINTING .......... | | | | | |
| NON–RECURRING REP.......... | | | | | |
| GSA FUNDED .......... | | | | | |
| DELEGATEE FUNDED .......... | | | | | |
| NXO Above–Standard Level .......... | | | | | |
| SPACE ALTERATIONS .......... | | | | | |
| SUBTOTAL REPAIRS & ALTERATIONS | | | | | |
| | **************** | **************** | **************** | **************** | **************** |
| D. RENT | | | | | |
| C14 PAYMENT TO LESSORS | | | | | |
| Standard Level .......... | | | | | |
| Above–Standard Level .......... | | | | | |
| SUBTOTAL RENT .......... | | | | | |
| | **************** | **************** | **************** | **************** | **************** |

APPENDIX II
FIGURE A
(PAGE 3 OF 3)

## DELEGATED BUILDING TOTAL COST ACCOUNTING STATEMENT

| FUNCTION: | LABOR OC 11, 12, 13 | CONTRACTS OC 25 | SUPPLIES & MATERIALS OC 26 | ALL OTHER OC'S | TOTAL |
|---|---|---|---|---|---|
| E. OTHER | | | | | |
| 000 Standard Level .......... | | | | | |
| 000 Above-standard Level .......... | | | | | |
| SUBTOTAL – OTHER .......... | | | | | |
| | **************** | **************** | **************** | **************** | **************** |
| F. ADMINISTRATION<br>903 ADMINISTRATIVE SUPPORT | | | | | |
| GRAND TOTAL .......... | | | | | |
| | **************** | **************** | **************** | **************** | **************** |
| | **************** | **************** | **************** | **************** | **************** |

I certify that the statement above represents all costs incurred under the Delegation of Authority to operate the subject building, and that the accounting practices are in conformance with the accounting principles established by the Comptroller General, OMB and the Economy Act of 1932, as amended ('Anti–Deficiency Act').

SIGNED: ______________________ DATE: ____________

TITLE: ______________________

REMARKS:

APPENDIX II
FIGURE B
(page 1 of 6)

DELEGATED BUILDING TOTAL COST ACCOUNTING STATEMENT

1. BACKGROUND. The three-page exhibit is designed to collect total costs associated with the General Services Administration (GSA) Building Delegation Program. The submission of a Total Cost Accounting Statement is required in accordance with the (1) Delegation of Authority agreement, (2) the General Accounting Office's (GAO's) recommendation to require all agencies to report total operating costs, General Services Administration - Sustained Attention Required to Improve Performance, GAO/GGD-90-14, and (3) Office of Management and Budget's (OMB's) recommendation to monitor and account for the full cost of delegated functions by each agency.

2. GENERAL. The Total Cost Accounting Statement shall (1) be completed for each delegated building, (2) be submitted to GSA's local servicing regional office by November 30 each year, and (3) contain only the cost of services provided through GSA delegated funding or through the Agency's own funding authorization. Nondelegated costs incurred by GSA in support of the delegated building will be reported in GSA's accounting system. In addition, an appropriate agency financial officer shall certify that the statement is complete and financially accurate.

3. DIRECTIONS.

A. Insert the fiscal year, Agency name, building name, building address, and building number.

B. Functional areas. Fill in actual costs by function and object class as applicable to the Delegation of Authority agreement. The function codes, e.g., A15, K80, NXO, C14, define the cost as a GSA delegated function.

4. DEFINITIONS.

A. Definition of STANDARD LEVEL. The level of service that approximates the services, in frequency and quality, that are currently outlined in Federal Property Management Regulation (FPMR) 101-20. The level is based on a 5-day, 10 hours per day work week (Monday through Friday).

APPENDIX II
FIGURE B
(page 2 of 6)

B. Definition of ABOVE-STANDARD LEVEL. The level of service that exceeds services (in either frequency and/or quality) provided in FPMR 101-20. The level is based on more than 5 days a week and/or more than 10 hours per day.

These services are agency (delegatee) funded and include those services formerly performed by GSA on a reimbursable basis via a Reimbursable Work Authorization (RWA), GSA Form 2957.

5. <u>DESCRIPTION OF FUNCTIONAL AREAS</u>

A. BUILDINGS MANAGEMENT FUNCTIONS.

(1) Enter the actual cost for standard level and above-standard level services for cleaning, utilities, mechanical operations and maintenance (O&M) and maintenance repairs, and all other buildings management. The following provides a description, by function, for standard level and above-standard level service.

(2) A15 CLEANING STANDARD LEVEL. Cost of providing cleaning services on a standard one-shift, 5-day week operation, excluding weekends and legal holidays.

(3) A15 CLEANING ABOVE-STANDARD LEVEL. Cost of providing cleaning services above the standard level. These services are AGENCY (DELEGATEE) FUNDED.

(4) A38 UTILITIES STANDARD LEVEL. Cost of providing utility services for a standard one-shift, 5-day week operation in accordance with prescribed temperature levels in FPMR 101-20.

(5) A38 UTILITIES ABOVE-STANDARD LEVEL. Cost of providing utility services above the standard level. These services are AGENCY (DELEGATEE) FUNDED.

(6) A48 MECHANICAL O&M STANDARD LEVEL. Cost of providing mechanical services in accordance with approved mechanical workload. This includes maintenance repairs less than $10,000 per project and excludes any mechanical function(s) not delegated, e.g., switchgear and fire alarm maintenance in the National Capital Region.

(7) A48 MECHANICAL O&M ABOVE-STANDARD LEVEL. Cost of providing mechanical services above the standard level. These services are defined as AGENCY (DELEGATEE) FUNDED.

(8) A91 ALL OTHER BUILDINGS MANAGEMENT STANDARD LEVEL (EXCLUDING MOVING COSTS AND ADMINISTRATION COSTS). Cost of providing all other buildings management services, excluding moving and administration costs. Examples of such costs would include training, uniform allowances, and safety equipment.

(9) A91 ALL OTHER BUILDINGS MANAGEMENT ABOVE-STANDARD LEVEL (INCLUDING MOVING AND EXCLUDING ADMINISTRATION COSTS). Cost of providing all other Buildings Management services above the standard level including costs associated with moving requirements and excluding administration costs. These services are defined as AGENCY (DELEGATEE) FUNDED.

B. PROTECTION FUNCTIONS.

(1) K80 SECURITY PROTECTION STANDARD LEVEL. For most buildings, these functions are not delegated, however, for those locations with a delegation of authority for the total protection program, the following definitions apply:

(2) Cost of providing security (and where applicable, law enforcement services) which include response to criminal incidents and life threatening events; investigation of crimes and violations of Federal statutes; crime prevention activities and tenant awareness programs; coordination of occupant emergency plans; installation, maintenance and monitoring of perimeter security devices; and guarding as determined through a physical security survey performed by GSA.

(3) K80 SECURITY PROTECTION ABOVE-STANDARD LEVEL. Cost of any security services required by an Agency's mission that are above and beyond those security measures recommended through the GSA security survey process.

C. REPAIRS AND ALTERATIONS.

(1) NXO STANDARD LEVEL.

(a) RECURRING REPAIRS. Cost of recurring repair projects (costing $10,000 or more), excluding cyclical painting.

(2) CYCLICAL PAINTING. Cost of painting walls, etc., in accordance with Federal Property Management Regulation (FPMR) 101-20.102.

(3) NONRECURRING REPAIRS.

(a) GSA FUNDED. Cost of nonrecurring repairs funded on a one-time basis by GSA.

(b) DELEGATEE FUNDED. Cost of nonrecurring repairs funded by the delegatee in lieu of GSA. Only applicable when delegatee (1) has received prior approval from GSA, and (2) desires to accomplish work earlier than GSA's project schedule.

(4) NXO ABOVE-STANDARD LEVEL.

SPACE ALTERATIONS. Cost of space alteration projects performed via agency funding.

D. RENT.

(1) C14 PAYMENT TO LESSORS STANDARD LEVEL. Insert costs of payments made to lessors for leased space occupied by the Agency. NOTE: This requirement is applicable to only those Agencies with Administrative Contracting Officer (ACO) delegations of authority.

Include, if applicable, the cost of services charged to the Rental of Space account on a temporary basis. Example: A new or renegotiated leasing agreement may not include utilities although GSA budgeted for a fully serviced lease. Therefore, until such time as the costs associated with utility services can be budgeted in the buildings management functional area of utilities, the costs are incurred in the Rental of Space account. The transfer process from the Rental of Space account to the Buildings Management account requires approximately 1 1/2 years from the date of the new or renegotiated lease.

(2) C14 PAYMENT TO LESSORS ABOVE-STANDARD LEVEL. Insert costs of payments made to lessors to provide enhanced levels of services, e.g., daytime cleaning, 24-hour utility services, etc., as applicable.

NOTE: Do not confuse the above with "Rent," formerly known as "SLUC", paid by the Agency to GSA

E. OTHER.

(1) 000 OTHER STANDARD LEVEL. Cost of any other standard level service funded by GSA or through delegatee funding, e.g., funding for design and construction services. In addition, for those delegation of authority agreements that include resources in support of regional office staff, costs for those services should be reported under this category. Specifically explain in remarks section.

(2) 000 OTHER ABOVE-STANDARD LEVEL. Cost of any other above-standard level service funded through delegatee funding, e.g., funding for design and construction services. In addition, include costs associated with regional office staff funded by the agency under this category. Specifically explain in remarks section.

F. ADMINISTRATION

(1) 903 ADMINISTRATIVE SUPPORT. Fill in total costs associated with administrative support to the operation of the building. Costs in this function shall only include salaries and benefits, supplies, etc., incurred by the Building Manager and staff who are actually operating the delegated building. Cleaners, mechanics, and Federal Protective Officers salaries and benefits, supplies, etc., are to be included in the appropriate buildings management or protection functional area.

NOTE: Costs associated with other than onsite personnel shall not be included in this report.

6. REMARKS. In this section, please provide a narrative description of the type of service provided for under above-standard costs categories. For example, a delegatee reports that $50,000 was spent for above-standard utilities. The $50,000 could be described as the cost of providing utilities services in a delegated building more than 5 days a week and/or more than 10 hours per day.

APPENDIX II
FIGURE B
(page 6 of 6)

Also, in this section, if the cost for standard-level service exceeds that provided by GSA by 5 percent or more, please indicate the cause. For example, a delegatee may have spent more in the maintenance functional area due to an unusual number of equipment failures.

APPENDIX III
FIGURE A
(page 1 of 1)

## INTERAGENCY UTILITIES RESPONSIBILITIES

1. The following delegated building(s) receives steam from a GSA central plant or another GSA-operated or delegated facility:

Building Name:
Building Address:
Building No.:
Steam Rate (in $) per 1,000 lbs:
[List additional buildings]

2. The following delegated building(s) supplies steam to another GSA-operated or delegated facility:

Building Name:
Building Address:
Building No.:
Steam Rate (in $) per 1,000 lbs:
[list additional buildings]

3. The following delegated building(s) receives chilled water from a GSA central plant or another GSA-operated or delegated facility:

Building Name:
Building Address:
Building No.:
[list additional buildings]

4. The following delegated building(s) supplies chilled water to another GSA-operated or delegated facility:*

Building Name:
Building Address:
Building No.:
[list additional buildings]

* The formula in appendix III, figure B, will be used for determining the chilled water costs.

APPENDIX III
FIGURE B
(page 1 of 1)

FORMULA FOR DETERMINING CHILLED WATER COSTS

TOTAL BTU'S - 12,000 * = TOTAL TONS

TOTAL TONS x 1.2** x COST PER KWH*** = $ ____________

* 12,000 = 1 ton.

** This constant factor converts tons into KWH.

***<u>Important</u>: Cost/KWH, including demand and fuel adjustment charges for each quarter, will be computed by the supplying agency by dividing the total electrical dollar cost during each quarter in question for the previous year by the total KWH (energy total) for the same timeframe, and multiplying by an estimated inflation factor to be determined annually by GSA.

APPENDIX IV
FIGURE A
(page 1 of 2)

EXAMPLES OF AGENCY RECURRING REPAIR RESPONSIBILITIES UNDER THE DELEGATION

1. Scheduled interior and exterior painting.

2. Recurring caulking, cleaning, painting, and repair of exterior architectural building finish systems, including openings.

3. Corrective actions that must be undertaken to repair defective mechanical, plumbing, electrical, fire safety, and elevator/escalator system components and individual pieces of equipment. The replacement of a major piece of equipment such as a chiller, electrical substation, etc. is not considered recurring in nature.

4. Waterproofing, replacement, or repairs to roofing, plazas, parking decks, which do not require structural alterations. The complete replacement of a structural roof or building envelope is not considered recurring in nature.

5. Recurring cleaning, refinishing, repairs, and restorations to architectural metals.

6. Recurring repairs to exterior site work including paving, bridges, approaches, striping, signage, drainage systems, fences, barriers, landscaping, lawn sprinklers, and loading docks.

7. Recurring repairs or replacement of interior architectural finish systems, such as repair of damaged finished walls, repair/ replacement of damaged or deteriorated floor finishes such as carpet, floor tile, etc.

APPENDIX IV
FIGURE A
(page 2 of 2)

EXAMPLES OF GSA NONRECURRING REPAIRS AND ALTERATION RESPONSIBILITIES UNDER THE DELEGATION

Definition: Any improvement to a building structure, its grounds, equipment and/or one or more of its systems which:

(a) Materially prolongs the useful life of the building by replacement, upgrading or installation of a new building system(s) and/or

(b) Significantly extends, enlarges, or enhances the building structure.

Examples:

1. Replacement of major equipment such as chiller, electrical substation.

2. Conversion of elevator from manual to automatic.

3. Air-conditioning (central) a building that previously was not air-conditioned.

4. Constructing an extension to existing building.

5. Replacement of building structural roof or major building envelope repair.

6. Installation, replacement, or upgrading of fire and life safety systems, i.e., sprinklers, alarms, generators, unless it is incidental to accomplishing recurring repairs or agency space alterations.

7. Replacement or retrofill of PCB transformers.

8. Removal of asbestos fireproofing or pipe lagging, unless it is incidental to accomplishing recurring repairs or Agency space alterations.

APPENDIX IV
FIGURE B
(page 1 of 1)

FORESEEABLE NONRECURRING REPAIRS

**None**

1. Building Name and Address:
2. Building No.:
3. Project Title:
4. Description and Location of Work:
5. Total Estimated Cost:

APPENDIX V
FIGURE A
(page 1 of 4)

CONTRACT GUARD SUITABILITY REQUIREMENTS

A. Prerequisites: Applicants for the position of contract guard should meet at a minimum the following requirements:

1. Be a United States citizen.

2. Be 21 years of age (age requirements may be waived for veterans of military service and for active duty military personnel).

3. Pass appropriate written examinations (i.e., national certification and firearms qualification testing).

4. Pass a suitability determination clearance (i.e., background investigation including check of criminal record).

5. Meet required physical standards and pass a physical examination.

6. Possess a high school education or equivalency certificate.

7. Have 2 years of related work experience (any type of military service which may be credited toward meeting the requirements) or 2 years of education at a residence school above high school or any combination of education and experience totaling 2 years.

B. Suitability Criteria for Contract Employees:

1. Generally, a contract employee applicant shall not be denied consideration for employment except for such cause as would promote the efficiency of the Agency in performing its mission and protect the vital interests of the United States Government.

2. The principal factor in determining suitability is whether a person's conduct may reasonably be expected to interfere with the ability of the person to function in the position or if there is some rational connection between a person's conduct and the efficiency of the service.

3. All information of record, both favorable and unfavorable, will be assessed in terms of its relevance, recency, and seriousness, while keeping in mind that the objective is to provide fair, impartial, and equitable treatment of all contract employee applicants.

4. Suitability investigations will cover a minimum of 10 years for contract guard applicants; other contract employees occupying a position of trust and sensitivity; and a minimum of 5 years for other contract applicants.

5. The following suitability factors may be considered a basis for disqualification in making a suitability determination.

a. Delinquency or misconduct in prior employment;

b. Criminal, dishonest, infamous, or notoriously disgraceful conduct;

c. Intentional false statement, deception or fraud on application forms;

d. Habitual use of intoxicating beverages to excess;

e. Abuse of narcotics, drugs, or other controlled substances; and

f. Reasonable doubt as to the loyalty of the person involved to the Government of the United States.

6. Examples of specific conduct which may be considered a basis for disqualification include:

a. Conviction of a crime of arson, forcible or statutory rape, murder, kidnapping, robbery, burglary, larceny, theft, gambling, aggravated assault, buying, receiving or possessing stolen property, embezzlement, forgery, counterfeiting and fraud;

b. In the absence of convictions, when the examination of the circumstances involved a pattern of arrest, or an arrest for a single serious crime, indicates that an applicant is unsuitable for a position;

c. Being found negligent in a firearm mishap causing death or serious injury to another human being;

d. Conviction of a felony with a gun under the United States or any political subdivision of the United States;

e. Conviction under the controlled substance act;

f. Committed voluntarily or involuntarily to a mental hospital or institution, unless the applicant can present medical certification that he has recovered;

g. Having been acquitted of any criminal charge by reason of insanity or been found to be a chronic alcoholic by any court, unless the applicant can present a medical certificate that he has recovered;

h. Being a fugitive from justice;

i. Being an illegal alien in the United States or an alien who is not entitled to accept gainful employment; and

j. Delinquency or misconduct while in the military service which is indicative of conduct unsuitable for the position.

7. If a Presidential or gubernatorial pardon is granted on the basis of an applicant's innocence, a conviction may not be considered a basis for disqualification.

8. In making a determination of suitability, the evaluator shall consider the following additional factors to the extent that these factors are considered pertinent to the individual case;

a. The kind of position for which the person is applying or in which the person is employed;

b. The nature and seriousness of the conduct;

c. The recency of the conduct;

d. The age of applicant or employee at the time of the conduct;

APPENDIX V
FIGURE A
(page 4 of 4)

e. The circumstances surrounding the conduct;

f. Contributing social or environmental conditions; and

g. The absence or presence of rehabilitation or efforts toward rehabilitation.

APPENDIX V
FIGURE B
(page 1 of 3)

Offense/Incident Report

Definitions:

1. Serious Crimes and Incidents: All crimes and incidents contained within Part I and II of the Offense/Incident Code List, PBS P 5930.17A, Appendix 3-A thru C sent separately to delegatee agencies).

2. Flash Reports: Those reports that contain the initial fragmentary information available immediately following an incident. They may be reported in any format by telephone to the GSA Regional Control Center (RCC), 202-708-1111, and must be followed with the official report format (GSA Form 3155).

3. Case Control Numbers: Those numbers intended to place the incident in its appropriate position relative to all other incidents in the country. They may only be obtained from the GSA RCC, 202-708-1111 on an individual basis.

Timeframes for Reporting Incidents:

4. Serious Crimes and Incidents:

a. Within 30 minutes of a serious crime or incident, a Flash Report must be provided to the GSA RCC, Washington, DC, 202-708-1111.

b. A detailed report, utilizing the GSA Form 3155, must be provided to the RCC within 12 hours of the incident. This may be faxed to the GSA RCC, 202-708-1111.

5. Security, Assistance and Other Incidents: These incidents, as listed in PBS P 5930.17A, Part III Incidents, must be reported to the GSA RCC within 24 hours of the incident using the GSA Form 3155. The only exceptions are in cases of certain Part III offense incident codes which are to be reported monthly on the Consolidated Report Log (refer to PBS P 5930.17A and instructions). The GSA Form 3155 and the Consolidated Report Logs for Part III incidents may be submitted by mail.

APPENDIX V
FIGURE B
(page 2 of 3)

The address of the GSA Regional Control Center is:

General Services Administration
Regional Control Center. (room no)
National Capital Region
GSA Regional Office Building
7th and D Streets, SW.
Washington, DC 20407

APPENDIX V
Figure B

# OFFENSE/INCIDENT REPORT

INSTRUCTIONS ARE PRINTED SEPARATELY. IF ADDITIONAL SPACE IS NEEDED, USE REVERSE OF FORM; IDENTIFY ITEMS.

1. TYPE ☐ a. ORIGINAL ☐ b. CONTINUATION ☐ c. SUPPLEMENT OR FOLLOWUP

REPORT CONTROL SYMBOL PB-126-1

2. CODE NO. | 2a. SORT | 3. TYPE OF OFFENSE OR INCIDENT | 4. CASE CONTROL NO.

5. BUILDING NO. | 6. ADDRESS

7. NAME OF AGENCY/BUREAU | 8. AGENCY/BUREAU CODE | 9. SPECIFIC LOCATION | 10. LOCATION

11. DATE/TIME OF OFFENSE/INCIDENT | 12. DAY | 13. DATE/TIME REPORTED | 14. DAY | 15. JURISDICTION (X): 1. EXCLUSIVE 2. CONCURRENT 3. PARTIAL 4. PROPRIETARY

16. NO. DEMONSTRATORS | 17. NO. EVACUATED | a. TIME START | b. TIME END

18. PERSONS INVOLVED

| ID CODE (a) | NAME AND ADDRESS (b) | AGE (c) | SEX (d) | RACE (e) | INJURY CODE (f) | TELEPHONE (g) |
|---|---|---|---|---|---|---|
| | Last Name, First, Middle Initial | | | | | HOME |
| | Number, Street, Apt. No., City and State (ZIP Code) | | | | | BUSINESS |
| | Last Name, First, Middle Initial | | | | | HOME |
| | Number, Street, Apt. No., City and State (ZIP Code) | | | | | BUSINESS |

19. VEHICLE

a. STATUS: ☐ STOLEN ☐ SUSPECT ☐ GOV'T. ☐ PERSONAL ☐ VANDALIZED ☐ RECOVERED | b. YEAR | c. MAKE | d. MODEL | e. COLOR (Top/Bottom) | f. IDENTIFYING CHARACTERISTICS

g. REGISTRATION ▶ YEAR | STATE | TAG NO. | h. VIN | i. VALUE

20. ITEMS TAKEN

a. NAME OF ITEM | b. QUANTITY | c. OWNERSHIP ☐ GOV'T. ☐ PERSONAL | d. BRAND NAME

e. SERIAL NO. | f. COLOR | g. MODEL

h. VALUE | i. UNUSUAL OR UNIQUE FEATURES

j. PROPERTY WAS ☐ SECURED ☐ UNSECURED | k. STATUS OF PROPERTY ☐ RECOVERED ☐ MISSING ☐ PARTIAL RECOVERY | VALUE RECOVERED

l. NAME OF ITEM | m. QUANTITY | n. OWNERSHIP ☐ GOV'T. ☐ PERSONAL | o. BRAND NAME

p. SERIAL NO. | q. COLOR | r. MODEL

s. VALUE | t. UNUSUAL OR UNIQUE FEATURES

u. PROPERTY WAS ☐ SECURED ☐ UNSECURED | v. STATUS OF PROPERTY ☐ RECOVERED ☐ MISSING ☐ PARTIAL RECOVERY | VALUE RECOVERED

21. NARRATIVE (If additional space is needed, use reverse of this form)

22. NOTIFICATION

| NOTIFICATION | TIME NOTIFIED | TIME ARRIVED |
|---|---|---|
| a. OTHER POLICE AGENCY | | |
| b. FIRE DEPARTMENT | | |
| c. AMBULANCE | | |
| d. BUILDING MANAGER | | |
| e. OTHER (Specify) | | |

23. EVIDENCE ☐ YES ☐ NO | TAG NO. | a. TYPE | b. WHERE STORED

24. ATTACHMENTS (Mark "X" where applicable): a. CONTINUATION SHEET | b. GSA FORM 3157 | c. PROPERTY RECEIPT(S) | d. STATEMENT(S) | e. SUPPLEMENTAL | f. OTHER ATTACHMENTS (Specify)

25. SUSPECT STATUS: ☐ a. NOT IDENTIFIED ☐ b. GOV'T EMPLOYEE ☐ c. GOV'T CONTRACT ☐ d. NON-GOV'T EMPLOYEE ☐ e. N/A

26. DISPOSITION OF SUSPECT: ☐ a. ARRESTED ☐ b. NOT ARRESTED ☐ c. CITATION ISSUED NO. ☐ d. RELEASED ☐ e. N/A

NOTE: Complete GSA Form 3157 when there is a Suspect, Att. Burglary, Burglary, Att. Robbery, Robbery, or a Weapon is used.

27. TIME | a. RECEIVED | b. ARRIVED | c. RETURNED TO SERVICE | 28a. REVIEWED BY - NAME (Printed) AND SIGNATURE ☐ FPS ☐ GO | b. DATE

29a. BADGE | b. NAME (Printed) AND SIGNATURE | c. DATE

30. CASE REFERRED TO: a. FPS DETECTIVE | b. LOCAL POLICE | c. STATE POLICE | d. FBI | e. IG | f. N/A | g. OTHER (Specify)

31. CASE ☐ a. OPEN ☐ b. CLOSED ☐ c. UNFOUNDED

32a. APPROVING OFFICIALS NAME (Printed) AND SIGNATURE | b. DATE

33. DETECTIVE STATUS: a. CASE# | b. CLOSED | INACT | ARR. | OM | c. SUSPECT DEVELOPED | d. SUSPECT ARRESTED | e. ENTERED NCIC ☐ YES ☐ NO ☐ N/A | f. PROPERTY RECOVERED | g. VALUE | h. CLEARED NCIC ☐ YES ☐ NO ☐ N/A | i. REFERRED | j. DATE

APPENDIX V
FIGURE C
(page 1 of 3)

Safety and Environmental Management

1. GSA Form 53, Fire Incident Report, must be completed and submitted to Safety and Environmental Management Division (WPX), GSA Regional Office Building, 7th and D Streets, SW., Washington, DC, 20407.

a. Federal monetary loss from a fire is $250 or more.

b. Monetary loss due to an evacuation/relocation of Federal employees from a fire or false alarm is $250 or more.

c. Injury or death occurs in/on federally-owned/-leased space. In this case, a GSA Form 3090 must also be filed.

d. If a fire causes a death, serious injury, or Federal monetary loss of $10,000 or more, Safety and Environmental Division (WPS) must be notified immediately on 202-708-5236.

Additional information regarding the reporting of a fire incident is contained in the procedures for reporting fire incidents which was sent separately to delegatee agencies.

2. The delegatee agency is required to implement the following building protection and safety activity requirements as specified in the Operational Evaluation Guidelines:

a. Federal Hazard Communication Program, including a written program; MSDA on hand; inventory of hazardous materials; labeling of containers; and training of personnel.

b. Method for reporting of unsafe/unhealthful conditions by employees.

c. Complaint log maintained with record of response

d. Accident log

e. Safety program

f. Required Personal Protection Equipment (PPE) for employees exposed and record of training/medical surveillance

g. OSH Committee/Safety Meetings

APPENDIX V
FIGURE C
(page 2 of 3)

h. Underground storage tanks identified and reported

i. Occupant Emergency Plan (OEP) current and on file

j. Local Fire Department invited to tour facility and develop a pre-fire plan

k. Record of preventive maintenance performed on fire protection equipment

l. Record of fire drills

The address of the Safety and Environmental Management Branch is:

General Services Administration
Safety and Environmental Management Branch
National Capital Region
GSA Regional Office Building
7th and D Streets, SW
Washington, DC 20407

Figure C

# GSA FIRE INCIDENT REPORT

REPORTS CONTROL SYMBOL
PB-40

## SECTION I – INCIDENT *(Complete for all incidents)*

A — TYPE OF TRANSACTION *(Check one)*
☐ NEW REPORT ☐ MODIFY REPORT ☐ DELETE REPORT

B — INCIDENT NO. | REGION NO. | MO. | DAY | YR. | DATE OF WEEK | ALARM TIME

C — BUILDING NAME AND ADDRESS *(Street, City, State, ZIP Code)* | BUILDING NO. | FIXED PROPERTY USE *(Office, warehouse, etc.)* | MOBILE PROPERTY TYPE

D — TYPE OF INCIDENT | OCCUPANTS WERE *(Check one)*
☐ A NOT EVACUATED ☐ B EVACUATED ☐ C RELOCATED ☐ D BOTH B AND C

E — DID THE FIRE DEPARTMENT RESPOND? *(Check one)* ☐ YES ☐ NO | FIRE DEPARTMENT CALLED VIA | FIRE DEPARTMENT RESPONDED WITHIN MINUTES OF NOTIFICATION

F — BRIEF HISTORY OF INCIDENT *(Cover all important details - attach additional sheets as needed. Photos and/or sketches may be included.)*

G — ACTION(S) TAKEN AND RECOMMENDATIONS TO PREVENT RECURRENCE

H —

| PERSONNEL | NO. OF INJURIES | NO. OF DEATHS | LIST ACCIDENT INCIDENT NUMBER(S) *(GSA Form 3090 for all injuries and/or deaths)* |
|---|---|---|---|
| GSA | | | |
| OTHER | | | |

I —

| $ LOSSES | GSA | OTHER FEDERAL | NON-FEDERAL |
|---|---|---|---|
| Building | | | |
| Contents | | | |
| Evacuation | | | |
| Other | | | |

## SECTION II – FIRE *(Complete for all fires)*

J — AREA OF FIRE ORIGIN | EQUIPMENT INVOLVED IN IGNITION

K — FORM OF HEAT OF IGNITION | TYPE OF MATERIAL IGNITED | FORM OF MATERIAL IGNITED

L — METHOD OF EXTINGUISHMENT | LEVEL OF FIRE ORIGIN

## SECTION III – STRUCTURE FIRE *(Complete if structure fire)*

M — EXTENT OF FLAME DAMAGE | EXTENT OF SMOKE DAMAGE

N — DETECTOR PERFORMANCE | SPRINKLER PERFORMANCE

O — IF SMOKE SPREAD BEYOND ROOM OF ORIGIN | TYPE OF MATERIAL GENERATING MOST SMOKE | AVENUE OF SMOKE TRAVEL

P — FORM OF MATERIAL GENERATING MOST SMOKE

## SECTION IV – PROPERTY

Q — MOBILE PROPERTY | YR. | MAKE | MODEL | SERIAL NO. | LICENSE NO. *(If an*

R — EQUIPMENT INVOLVED IN IGNITION | YR. | MAKE | MODEL | SERIAL NO. | VOLTAGE *(If any)*

## SECTION V – PREPARER OF THIS REPORT

S — INVESTIGATOR'S SIGNATURE | DATE