# In the United States Court of Federal Claims

No. 07-589 C

(E-Filed: September 26, 2008)

| | |
|---|---|
| JEFFREY B. KING, SCOTT A. AUSTIN, KEVIN J. HARRIS, AND JOHN J. HAYS, on their own behalf and on behalf of a class of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | Motion to Certify Class Action; RCFC 23; Certification Granted. |

Sandra Mazliah, Washington, DC, for plaintiffs.

Carrie A. Dunsmore, with whom were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, and Martin F. Hockey, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

OPINION AND ORDER

Before the court is Plaintiffs' Motion to Certify Class Action (plaintiffs' Motion or Pls.' Mot.), filed on July 23, 2008, under Rule 23 of the Rules of the United States Court of Federal Claims (RCFC). The complaint in this action, filed on August 2, 2007, claims that plaintiffs, FBI police officers working during at least one pay period after January 1, 2003, were denied pay and benefits mandated by 28 U.S.C. § 540C. Complaint (Compl.) 1. Plaintiffs claim that pursuant to the Back Pay Act, 5 U.S.C. § 5596 (2006), they are entitled to compensation, back pay, restitution, and attorneys fees.[1] Compl. 1. Defendant

---

[1] Defendant filed a motion to dismiss on October 31, 2007, claiming that the court did not have jurisdiction to hear this case, that 28 U.S.C. § 540C was not money-mandating as required by the Tucker Act, and that the Civil Service Reform Act (CSRA) precluded the court from

(continued...)

filed a response to plaintiffs' Motion on August 11, 2008, stating that defendant defers to the court as to the question of whether plaintiffs' Motion should be granted.  Defendant's Response to Plaintiff[s'] Motion to Certify (defendant's Response or Def.'s Resp.) 1.

For the following reasons, plaintiffs' Motion is GRANTED and Sandra Mazliah is APPOINTED class counsel.  This order defines the class and the class issues and explains the reasons for appointing Sandra Mazliah as class counsel.  See RCFC 23(c)(1)(A), (B).

I.      Introduction and Factual Background

On November 2, 2002, the 21st Century Department of Justice Appropriations Authorization Act (Act), Pub. L. No. 107-273, 116 Stat. 1758 (2002), became law.  Section 11024 of the Act, 116 Stat. at 1830–31, later codified as 28 U.S.C. § 540C, is entitled "FBI Police."  See 28 U.S.C. § 540C (2006).  This section authorizes the "establish[ment] of a permanent police force, to be known as the FBI police" to provide "protection of persons and property within FBI buildings and grounds."  28 U.S.C. § 540C(b)(1), (2).  Section 540C mandates that the FBI provide the FBI police with the same pay and benefits as members of the Uniformed Division of the United States Secret Service.  28 U.S.C. § 540C(b)(5)(A).  Plaintiffs' Complaint asserts that all plaintiffs are current or former FBI police officers.  Compl. 1–3.

Defendant asserts that plaintiffs are not "FBI police officers" and that the FBI Director has yet to establish the "FBI Police" as contemplated in 28 U.S.C. § 540C.  Defendant's Motion to Dismiss (Motion to Dismiss or Def.'s Motion) 7.  When deciding class certification, however, the court takes all of plaintiffs' allegations as true and does not consider whether plaintiffs have stated a cause of action or will prevail on the merits.  See Filosa v. United States (Filosa), 70 Fed. Cl. 609, 615 (2006) (discussing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177–78 (1974) (interpreting Federal Rule of Civil Procedure (FRCP) 23)).  Accordingly, for the purpose of this decision, the court assumes that all plaintiffs are current or former FBI police officers.

Section 540C(b)(5)(B) mandates that the pay and benefits for FBI police officers (1) be established by regulation, (2) apply to pay periods after January 1, 2003, and (3) not cause any decrease in the rate of pay for any individual.  28 U.S.C. § 540C(b)(5)(B).  Plaintiffs claim that, starting on January 1, 2003 and continuing to the present, defendant

---

[1](...continued)
hearing the case.  King v. United States, 81 Fed. Cl. 766, 767–68, 71 (2008).  This court found that it had jurisdiction, id. at 770, that § 540C was money mandating, id., and that the CSRA did not preclude the court from hearing the case, id. at 771–72.

has not complied with 28 U.S.C. § 540C and that plaintiffs are owed compensation under the Back Pay Act, 5 U.S.C. § 5596. Compl. 5–6.

Under the Back Pay Act, "An employee of an agency who . . . ha[s] been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay . . . of the employee" is entitled to "an amount equal to all or any part of the pay . . . as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period" and, in certain cases, attorneys fees. 5 U.S.C. § 5596(b)(1).

II.     Legal Standards

This court's rule on class actions, RCFC 23, was completely rewritten and reissued in 2002 (and subsequently amended in 2004).[2] RCFC 23, Rules Committee Notes (2004). Prior to 2002 the court followed Quinault Allottee Ass'n v. United States (Quinault), 197 Ct. Cl. 134, 453 F.2d 1272 (Ct. Cl. 1972), which borrowed criteria from Rule 23 of the Federal Rules of Civil Procedure (FRCP).[3]

---

[2]Rule 23 of the Rules of the United States Court of Federal Claims (RCFC) is modeled after Rule 23 of the Federal Rules of Civil Procedure (FRCP). See Curry v. United States (Curry), 81 Fed. Cl. 328, 332 n.10 (2008). Because the language of RCFC 23 and FRCP 23 are practically identical, other federal cases applying FRCP 23 are helpful in interpreting RCFC 23. RCFC 23 differs from the federal rule in two ways: (1) it has been modified to reflect the court's jurisdiction, in particular, the narrow circumstances in which the court will afford declaratory or injunctive relief, and (2) it allows only "opt-in," but not "opt-out," class actions. RCFC 23, Rules Committee Notes (2002).

[3]The multi-factor test set forth in Quinault Allotee Ass'n v United States consisted of: (i) the class must be large, but manageable; (ii) there must be a question of law common to the whole class; (iii) the common question of law must predominate over any separate factual issues affecting individual class members; (iv) the claims of named plaintiffs must be typical of the class; (v) the United States must have acted on grounds generally applicable to the whole class; (vi) the claims of many allottees must be so small that it is doubtful they would otherwise be pursued; (vii) the current plaintiffs must adequately and fairly protect the interests of the class without conflicts of interest; and (viii) the prosecution of individual lawsuits must create a risk of inconsistent or varying adjudications. Quinault Allottee Ass'n v. United States, 197 Ct. Cl. 134, 140–41, 453 F.2d 1272, 1276 (Ct. Cl. 1972). The eighth factor, the risk of inconsistent adjudications, has been largely obviated by the creation of the United States Court of Appeals for the Federal Circuit, which hears all appeals from the district courts and this court in cases involving requests for money damages from the government. See Fisher v. United States, 69

(continued...)

The commentary to RCFC 23 states that "[i]n the main" the rule adopts the criteria as set forth in Quinault.  RCFC 23, Rules Committee Notes (2002).  The current rule provides:

> (a) Prerequisites to a Class Action.  One or more members of a class may sue as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) Class Actions Maintainable.  An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>> (1) the United States has acted or refused to act on grounds generally applicable to the class; and
>> (2) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include:  (A) the interest of members of the class in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by members of the class; and (C) the difficulties likely to be encountered in the management of a class action.

RCFC 23(a), (b).

In shorthand, as stated in Barnes v. United States (Barnes), 68 Fed. Cl. 492, 494 (2005), this rule can be grouped into five requirements:  (i) numerosity, (ii) commonality, (iii) typicality, (iv) adequacy, and (v) superiority.  A failure to satisfy any one of the categories is fatal to class certification.  See Testwuide v. United States, 56 Fed. Cl. 755, 761 (2003) (noting that a court will not certify a class if it fails to satisfy any of the categories); see also Gen. Tel. Co. of the Sw. v. Falcon (Falcon), 457 U.S. 147, 161 (1982) (making same observation as to the FRCP).  Thus, to prevail in their motion to

---

[3](...continued)
Fed. Cl. 193, 197 n.4 (2006) (citing Moore v. United States, 41 Fed. Cl. 394, 400 (1998) and Taylor v. United States, 41 Fed. Cl. 440, 447 (1998)).

certify a class, plaintiffs must establish, by a preponderance of the evidence, that the proposed action satisfies each of the five categories. See Filosa, 70 Fed. Cl. at 615.

III.   Application of Legal Standards to This Case

For the following reasons the court finds that the proposed class fulfills the RCFC 23 requirements for numerosity, commonality, typicality, adequacy, and superiority.

A.   Numerosity

RCFC 23(a)(1) allows for class certification if "the class is so numerous that joinder of all members is impracticable."  RCFC 23(a)(1).  "Impracticable" does not mean "impossible." Barnes, 68 Fed. Cl. at 495 (citing Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993) (discussing FRCP 23)).  The court determines numerosity by a variety of factors that include the number of class members, the location of the members of the proposed class, the size of the individual claims, and the nature of the action.  7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure (Wright, Miller, & Kane) § 1762 at 177, 206–07 (3d ed. 2005).

While not outcome determinative, the number of potential class members is persuasive when determining numerosity:  generally, if there are more than forty potential class members, this prong has been met.  See Stewart v. Abraham (Stewart), 275 F.3d 220, 226–27 (3d Cir. 2001) ("No minimum number of plaintiffs is required to maintain a suit as a class action [under FRCP 23], but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."); 5 James Wm. Moore et al., Moore's Federal Practice § 23.22[1][b] (Matthew Bender 3d ed. 2004).  Plaintiffs need not allege the exact number or identity of the class members, but they need more than mere speculation as to the number of parties.  See Marcial v. Coronet Ins. Co. (Marcial),  880 F.2d 954, 957 (7th Cir. 1989) (noting that under FRCP 23 plaintiffs do not need to know the "exact number" of members, but "cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity").

1.   Number of Class Members

Here, the proposed class description indicates, with some specificity, who is included in the class.  The proposed class includes:

> All employees of [d]efendant who were, are, or will be employed as a member of the FBI police during at least any one pay period beginning after January 1, 2003 and [w]ho did not receive pay and benefits equivalent

> to the pay and benefits applicable to members of the United States Secret
> Service Uniformed Division as required by 28 U.S.C. § 540C.

Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion to Certify Class Action (Pls.' Mem.) 8. Plaintiffs have identified 152 potential class members.[4] Id. Plaintiffs claim that the size of "the potential class is approximately twice the number of those who already consented to be part of the class." Id. at 9. Plaintiffs estimated the number of additional class members using a 2006 Government Accountability Office (GAO) report. Id. at 9, Exhibit (Ex.) 9 (GAO-07-12, Federal Law Enforcement: Survey of Federal Civilian Law Enforcement Function and Authorities, Dec. 2006). This report stated that there were then 239 FBI police officers employed by the FBI. Id. at Ex. 9. Plaintiffs point out that the GAO number includes neither former FBI police officers no longer then working for the FBI, nor FBI police officers appointed after the date reflected in the GAO report. Id. at 9.

Plaintiffs did not use "mere speculation" to come up with the number of additional plaintiffs, they estimated based on a figure reported by GAO, and, importantly, have already identified 152 potential plaintiffs. Id.; see Marcial, 880 F.2d at 957. The actual number of members of the class already identified, 152, is significantly higher than the threshold number of forty, and is likely sufficient to satisfy the numerosity prong by itself. See Stewart, 275 F.3d at 226–27. However, the court analyzes whether other factors considered in determining numerosity also support a finding of numerosity.

      2.      Location of Members of the Proposed Class

Another factor to consider in determining numerosity is the geographical location of the potential class members. See Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1038 (5th Cir. Unit A July 1981). If plaintiffs are dispersed geographically, then a court is more likely to certify a class action. See Filosa 70 Fed. Cl. at 615 (certifying a class action when plaintiffs were dispersed throughout twelve states).

"[P]laintiffs are located in every location where FBI police are regularly stationed, including but not limited to Washington, DC, Virginia, West Virginia, and New York." Pls.' Mem. 8. The court also notes that former FBI police officers, who are potential

---

[4] Attached to plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion to Certify Class Action (Pls.' Mem.), plaintiffs submitted Exhibit (Ex.) 8 that consists of signed consent forms from 152 current or past members of the proposed class all of whom worked at least one pay period after January 1, 2003, and who claim they did not receive pay and benefits equivalent to the pay and benefits applicable to the United States Secret Service Uniformed Division. Pls.' Mem, Ex. 8.

6

class members, could be located anywhere. Owing to the dispersion of plaintiffs over, at a minimum, three states and the District of Columbia, the court finds that the geographical dispersion of plaintiffs is sufficiently broad to support the numerosity requirement.

       3.      Size of Individual Claims

Another factor in determining numerosity is whether the size of each individual plaintiff's claim hinders the ability of a plaintiff to file any action at all. See Wright, Miller, & Kane § 1762 at 206 & n.55. The smaller the size of the claim and the larger the number of persons, the less likely it is that, without the benefit of a class action, any plaintiff will recover. See Barnes, 68 Fed. Cl. at 499–500 ("[T]he small recoveries expected to be received by these individuals - estimated to be individually in the hundreds of dollars - render it less likely that, without the benefit of class representation, they would be willing to incur the financial costs and hardships of separate litigations, the costs of which would certainly exceed their recoveries many-fold.").

While plaintiffs here have not briefed the court on this issue, in other wage and hours contexts, this court has found that the small size of the claims involved supports the numerosity requirement. See Filosa, 70 Fed. Cl. at 622 (noting in a case about calculating compensation for additional time worked, that "there is little benefit to having each proposed class member retain counsel, pay filing fees, and submit duplicative pleadings"); Barnes, 68 Fed. Cl. at 499–500 (noting in an overtime case that "the small recoveries . . . render it less likely" that individual actions would be brought without a class action).

       4.      Conclusion

For the foregoing reasons, the court finds that the proposed class satisfies the numerosity requirement owing to the large number of already identified and reasonably estimated class members, the geographic dispersion of members of the class, and the likely size of the claims in relation to the likely costs of separate litigation.

      B.      Commonality

The commonality requirement addresses three separate issues: (1) whether "there are questions of law or fact common to the class," RCFC 23(a)(2), (2) whether those common questions "predominate over any questions affecting only individual members," RCFC(b)(2), and (3) whether "the United States acted or refused to act on grounds generally applicable to the class," RCFC 23(b)(1). "The threshold of 'commonality' is not high." Jenkins v. Raymark Indus., 782 F.2d 468, 472 (5th Cir. 1986) (interpreting

FRCP 23(a)(2)).  When determining commonality the court must "seek to develop an understanding of the relevant claims, defenses, facts and substantive law."  Barnes, 68 Fed. Cl. at 496 (citing Falcon, 457 U.S. at 160); see also Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978) (noting that class determination under FRCP 23 "involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action'") (citation omitted).  The court's determination of the common issues of law and fact raised here has been addressed, in part, in the court's decision denying defendant's motion to dismiss.  King v. United States, 81 Fed. Cl. 766 (2008).

    1.    Common Questions or Law or Fact

RCFC 23(a)(2) requires there to be "questions of law or fact common to the class."  RCFC 23(a)(2).  The requirement is satisfied if there is at least "one core common legal question that is likely to have one common defense."  Fisher, 69 Fed. Cl. at 199; see Forbush v. J.C. Penny Co., 994 F.2d 1101, 1106 (5th Cir. 1993) ("The interests and claims of the various plaintiffs need not be identical.  Rather, the commonality test [for FRCP 23] is met when there is 'at least one issue whose resolution will affect all or a significant number of the putative class members.'") (citation omitted).

Here, common questions of law and fact apply to the entire class.  The questions are as follows:  (1) whether section 540C requires that FBI police officers be paid as Secret Service Uniformed Division Officers; (2) whether the government has or has not paid FBI police officers as Secret Service Uniformed Division Officers; and (3) whether FBI police officers are entitled to compensation under the Back Pay Act owing to the government's failure to pay them as Secret Service Uniformed Division Officers.  The court agrees with the conclusion that "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."  Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001) (deciding an FRCP 23 commonality issue).

    2.    Common Questions of Law or Fact Predominate Over Individual Questions

RCFC 23(b)(2) requires that, once a class is certified, "questions of law or fact common to the members of the class [must continue to] predominate over any questions affecting only individual members" if the class action is to be maintained.  RCFC 23(b)(2).  "'[F]actual variation among the class grievances' is acceptable as long as 'a common nucleus of operative fact' exists."  Curry v. United States (Curry), 81 Fed. Cl. 328, 334 (2008) (quoting Rosario v. Livaditis, 963 F.2d 1013, 1017–18 (7th Cir. 1992)).  The fact that the eventual award "'will ultimately require individualized fact determinations is insufficient, by itself' to defeat a class action."  Id. (quoting McCarthy v. Kleindienst, 741 F.2d 1406, 1415 (D.C. Cir. 1984)).

If successful, plaintiffs will receive different awards of damages based on factors such as seniority or pay grade. However, it is clear that the outcome-determinative question is whether or not the government failed to pay FBI police officers in violation of 28 U.S.C. § 540C. See Barnes, 68 Fed. Cl. at 498 ("[T]here scarcely would be a case that would qualify for class status in this court [if individual damages were outcome determinative for class certification]."). At a later date, if required, the court can determine a formula for calculating individual damages. See id. at 498–99 (discussing how the court could employ damage estimations).

3. Refusal to Act by the United States on Grounds Generally Applicable to the Class

RCFC 23(b)(1) requires that in order to maintain a class action the United States must have "acted or refused to act on grounds generally applicable to the class." RCFC 23(b)(1). Here, the claim is that the United States has refused to pay FBI police officers in accordance with 28 U.S.C. § 540C. Pls.' Mem. 13. The alleged refusal to act applies to the entire potential class of plaintiffs.

4. Conclusion

For the foregoing reasons, plaintiffs have satisfied each of the three requirements for a finding of commonality.

C. Typicality Requirement

"[T]he claims of the representative parties [must be] typical of the claims of the class." RCFC 23(a)(3). The threshold for typicality, as with the threshold for commonality, is "'not high.'" Curry, 81 Fed. Cl. at 335 (quoting Fisher, 69 Fed. Cl. at 200). The applicable test is "'not unusually restrictive.'" Id. (quoting Fisher 69 Fed. Cl. at 200). Courts "have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." Wright, Miller, & Kane § 1764 at 270–71 (footnotes omitted).

Here, as with the claims for commonality, the claims of all proposed class members are similar and the representative parties have the same claims as the proposed members of the class. The representative parties are all FBI police officers who worked at least one pay period after January 1, 2003. Pls.' Mem. 14. The proposed members of the class are all FBI police officers who have worked at least one pay period after January 1, 2003. Id. at 8. The typicality requirement, therefore, has been met.

     D.    Adequacy Requirement

To determine whether the representative parties adequately represent the class, courts first consider the adequacy of class counsel and, second, ensure that class members do not "have interests that are 'antagonistic' to one another." See Barnes, 68 Fed. Cl. at 499 (quoting In re Drexel Burnham Lambert, 960 F.2d 285, 291 (2d Cir. 1992)). Because the second prong, concerning antagonistic interests, does not appear to be an issue in this case, the court focuses its discussion on the adequacy of class counsel.[5]

Under RCFC 23(g)(1)(B), "An attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class." RCFC 23(g)(1)(B). Class counsel must be "qualified, experienced, and generally able to conduct the litigation." Barnes, 68 Fed. Cl. at 499 (quoting In re Drexel Burnham Lambert, 960 F.2d at 291). To determine whether an attorney will "fairly and adequately" represent the class the court considers:

> [1] the work counsel has done in identifying or investigating potential claims in the action [; 2] counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action[; 3] counsel's knowledge of the applicable law[; and 4] the resources counsel will commit to representing the class.

RCFC 23(g)(1)(C)(i).

The court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." RCFC 23(g)(1)(C)(ii). Moreover, the court may direct potential class counsel to provide the court with information on fees, costs, or any other matter pertinent to the appointment as class counsel. RCFC 23(g)(1)(C)(iii).

Sandra Mazliah, in the context of and with the anticipated support of the law firm of Passman & Kaplan, P.C. (the firm), meets the criteria set up in RCFC 23(g)(1)(C)(i). Ms. Mazliah and the firm have investigated the current case, researched the applicable legal issues, and identified potential class members. Pls.' Mem. 15–16. Before filing the

---

[5]The court finds that class certification and appointment of Sandra Mazliah, presently counsel of record for plaintiffs, as class counsel would be consistent with the second test for adequacy: that none of the interests of the representative parties are antagonistic with those of the other members of the proposed class. All plaintiffs have the same legal claim. The court does not perceive how a resolution of this case in any plaintiff's favor could adversely affect the others in the potential class.

complaint, counsel "performed many hours of legal and factual research to determine if potential claims existed." Id. Ms. Mazliah and the firm "filed FOIA requests to obtain relevant documents." Id. Additionally, over 150 potential class members contacted the firm and provided factual information about the claims. Id. Sandra Mazliah, as counsel of record, also successfully defeated defendant's Motion to Dismiss. Id.

Ms. Mazliah and the firm have experience managing class actions and other complex civil cases, including management of "numerous class complaints and large consolidated complaints regarding promotions, leave, earnings under the Fair Labor Standards Act, and retirement benefit entitlements." Id. Ms. Mazliah points out that the firm has been class counsel in three federal employment cases and two other complex federal employee actions. See id. at 16 (listing the cases in which the firm has been plaintiffs' counsel).

Plaintiffs assert that class counsel will "devote sufficient resources to this case." Pls.' Mem. at 16. The firm's practice "concentrates on employment matters affecting federal civil service employees." Id. Members of the firm have authored a handbook for federal employees and produce a weekly publication on federal employment matters. Id. Members of the firm have experience with experts on economic damages and with discovery of government personnel records. Id. The litigation team for this case consists of a partner, Sandra Mazliah, a senior associate, an associate, and a law clerk/paralegal. Id. "[T]he firm's senior partners, Edward Passman and Joseph Kaplan, are fully briefed on the status and issues in the complaint." Id.

The court concludes that Ms. Mazliah, considered in the context of and with the anticipated support of the law firm of Passman & Kaplan, P.C., will fairly and adequately represent the class.[6] For the foregoing reasons, the court finds that this action meets the adequacy requirement.

    E.    Superiority Requirement

In order for a case to be maintained as a class action, it must be "superior to other available methods for the fair and efficient adjudication of the controversy." RCFC 23(b)(2). In Barnes, the court noted that superiority can be met when "'a class action

---

[6] Because the adequacy of the individual proposed as class counsel has been determined in the context of the support provided to her and to this litigation by the firm, the court may reconsider this decision if Ms. Mazliah should separate from the firm, or if the firm should become materially diminished or lack capacity to provide the support described in plaintiffs' Motion, or if the firm should dissolve during the pendency of this litigation. In any such event counsel shall promptly notify the court by motion to take notice of the event.

would achieve economics of time, effort, and expenses, and promote uniformity . . . without sacrificing procedural fairness or bringing about other undesirable results.'" Barnes, 68 Fed. Cl. at 499 (quoting FRCP 23, Advisory Committee Notes (1966)). The court must balance any problems with the ability to manage or fairness of conducting a class action with any benefit individual members or the system will receive from such an action. Id.

The court finds that the superiority requirement is met. Owing to the common questions of law and fact and uncertainty as to whether individuals will proceed on their own, the court concludes that a class action is superior to other methods of adjudication. Conducting this case as a class action is likely to achieve efficiencies in the use of the resources of both the parties and the court.[7]

    F.    Conclusion

For the foregoing reasons, the court finds that all requirements for class action certification are met, and that plaintiffs have shown by a preponderance of the evidence that this case should be certified as a class action.

IV.    Certification of Class Action

Pursuant to RCFC 23(c)(1)(B), "An order certifying a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under RCFC 23(g)." RCFC 23(c)(1)(B).

    A.    Class

Plaintiffs' proposed class is:

All employees of [d]efendant who were, are, or will be employed as a member of the FBI police during at least any one pay period beginning after January 1, 2003; and [w]ho did not receive pay and benefits equivalent to the pay and benefits applicable to members of the United States Secret Service Uniformed Division as required by 28 U.S.C. § 540C.

---

[7]While the parties have not briefed this court on this issue, the court notes that in wage and hours cases other courts have found that the small size of an individual claim could preclude prudent resolution. See supra Part III.A.3.

Pls.' Mem. 8.  The court adopts the proposed class description with one substantive change (regarding persons who "will be employed") and one change (deletion of the word "any") that the court believes is non-substantive.  As to the substantive change, this court does not have the ability to adjudicate the claims of future employees of the FBI.  See Bowen v. Massachusetts, 487 U.S. 879, 905 (1988) (noting that this court "does not have the general equitable powers of a district court to grant prospective relief").  Only persons currently or previously employed as FBI police officers may be in the class.  Therefore the court revises the phrase "were, are, or will be employed" to read "were or are employed."  Accordingly, the class certified by this court is:

> All employees of the United States who were or are employed as a member of the FBI police during at least one pay period beginning after January 1, 2003, and who did not receive pay and benefits equivalent to the pay and benefits applicable to members of the United States Secret Service Uniformed Division as required by 28 U.S.C. § 540C.

B.   Class Issues

The three main issues that apply to the class are: (1) whether section 540C requires plaintiffs to be paid as United States Secret Service Uniformed Division Officers; (2) whether the government has or has not paid plaintiffs as United States Secret Service Uniformed Division Officers; and (3) whether plaintiffs are entitled to compensation under the Back Pay Act.  These issues are the "class issues."  See RCFC 23(c)(1)(B).

C.   Class Counsel

The RCFC allow for only "one attorney of record" and such attorney "shall be an individual (and not a firm)."  RCFC 83.1(c)(1).  All other attorneys shall be designated "of counsel."  Id.  This court appoints Sandra Mazliah as class counsel for the reasons discussed in Part III.D above.  The law firm of Passman & Kaplan, P.C. shall be designated "of counsel" in the filings.

D.   Attorneys Fees

Pursuant to RCFC 23(g) this court "may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs."  RCFC 23(g)(1)(C)(iii).  On or before Friday, October 10, 2008, plaintiffs' counsel shall file a supplemental exhibit to plaintiffs' Motion, which shall describe plaintiffs' counsel's record-keeping procedures regarding attorneys fees and other expenses in this litigation.  The supplemental exhibit to plaintiffs' Motion shall

also describe the terms of any existing agreements with proposed class representatives regarding the payment of attorneys fees and other expenses of the litigation.

V.      Conclusion

      For the foregoing reasons, this court GRANTS plaintiffs' Motion, CERTIFIES this action as a class action, APPOINTS Sandra Mazliah as class counsel, and ORDERS class counsel to provide the court with the information described in Part IV.D above.  On or before Friday, October 10, 2008, the parties shall file a joint status report suggesting further proceedings and describing a proposed plan for meeting the notice requirements of RCFC 23(c).

      Pursuant to RCFC 10(a), all subsequent pleadings in this case shall use the caption shown above.

      IT IS SO ORDERED.

s/ Emily C. Hewitt<br>
EMILY C. HEWITT<br>
Judge