# In the United States Court of Federal Claims

No. 07-589 C

(E-Filed:  January 19, 2011)

| | |
|---|---|
| JEFFREY B. KING, SCOTT A. AUSTIN, KEVIN J. HARRIS, AND JOHN J. HAYS, on their own behalf and on behalf of a class of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Motion for Supplemental Protective Order to Permit Disclosure to Counsel of Documents Related to Terms of Employment of Members of Class of FBI Police Officers; Touhy Regulations Not Relevant to Dispute; Balancing of Interests of Agency and First Amendment Rights of Plaintiffs; Government Must Disclose All Withheld Documents to Court in Camera |

Joseph V. Kaplan, Washington, DC, for plaintiffs.

Christopher Andrew Bowen, Washington, DC, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Martin F. Hockey, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## ORDER

HEWITT, Chief Judge

        Before the court are Plaintiffs' Motion for a Further Supplemental Protective Order (plaintiffs' Motion or Pls.' Mot.), filed November 1, 2010, Docket Number (Dkt. No.) 86; Defendant's Response to Plaintiff's [sic] Motion for a Further Supplemental Protective Order (defendant's Response or Def.'s Resp.) and Government's Appendix (Def.'s App.), filed November 17, 2010, Dkt. No. 87; and Plaintiffs' Reply to Defendant's Response to Plaintiffs' Motion for a Further Supplemental Protective Order (plaintiffs' Reply or Pls.' Reply), filed December 7, 2010, Dkt. No. 92.

I.       Background

The named plaintiffs in this class action "are employed as [Federal Bureau of Investigation (FBI)] Police Officers providing protective security for FBI personnel and facilities nationwide and performing law enforcement duties at and around FBI facilities." Complaint (Compl.) ¶ 2, Dkt. No. 1.  The class includes "the named [p]laintiffs and all of the FBI Police Officers currently employed or employed during any period from January 1, 2003, to the present, which is estimated to number approximately 400 to 500 individuals."  Compl. ¶ 9.  Plaintiffs allege that defendant has failed to comply with the statutory requirement "to increase [p]laintiffs' rates of basic pay, salary schedule, pay provisions, and benefits," Compl. ¶ 19, and, therefore, plaintiffs are entitled to "[b]ack pay and benefits, with interest, owed from January 1, 2003," Compl. Relief Requested.

Plaintiffs move for a further supplemental protective order "because [d]efendant insists, on pain of potential discipline . . . , that all Class Members first submit all documents to [d]efendant to review before Class Members can provide the documents to Class Counsel" which "strikes at the very heart of the Class Members' privileged communication with their counsel, and also represents a violation of Class Members' First Amendment rights."  Pls.' Mot. 1 (emphasis in original).  As plaintiffs explain:

> The core issue at dispute in this matter is [d]efendant's insistence that the Class Members must first submit any documents that they wish to disclose to their attorneys to [d]efendant's own review unit, called the "Civil Discovery Review Unit" (CDRU).  Under this requirement, [d]efendant's CDRU would then screen all of the documents for what it determines to be "sensitive" information before the information could be shared with Class Counsel.  Defendant could redact information or even disapprove the release [of] documents to Class Counsel.  If any Class Members shared documents with Class Counsel without [d]efendant first reviewing the documents and approving their disbursal to Class Counsel, those Class Members are subject to sanctions such as termination from employment and criminal sanctions.

Pls.' Mot. 3.

In their Motion, plaintiffs propose that the court issue a protective order with the following provisions:  (1) a class member would not be subject to discipline for producing a document to class counsel as long as the class member would have access to the document in the normal course of his or her employment; (2) class counsel would keep all documents confidential until the Department of Justice (DOJ) has the opportunity to

review them for privileged or sensitive information; and (3) if a document received by class counsel is later determined to be privileged, that document may be "clawed back" by defendant.  See Pls.' Mot. 2-3.

II.    Discussion

Plaintiffs and defendant disagree on two issues:  (1) whether the Department of Justice's Touhy regulations, 28 C.F.R. §§ 16.21-16.29 (2010), are applicable to their discovery dispute; and (2) whether plaintiffs' need to produce documents to their attorney outweighs the FBI's need to protect documents from public disclosure.

A.    The Touhy Regulations are Inapposite to this Discovery Dispute

Defendant contends that the so-called Touhy regulations, 28 C.F.R. §§ 16.21-16.29,[1] prevent disclosure of information and documents belonging to the DOJ, "apply to all employees [of the DOJ], including the plaintiffs, and may need to be invoked in this case."  Def.'s Resp. 9.  When the United States is a party to the proceedings, the Touhy regulations serve two purposes:  (1) to control disclosure of agency documents by DOJ attorneys, see 28 C.F.R. § 16.23, and (2) to provide guidance to all DOJ employees on issues to consider "[i]n deciding whether to make disclosures pursuant to a demand," 28 C.F.R. § 16.26(a) (emphasis added); see also 28 C.F.R. § 16.26(b) (listing various "demands in response to which disclosure will not be made by any Department official") (emphasis added).  Because plaintiffs are not DOJ attorneys, but rather are FBI Police Officers, Compl. ¶ 2, and because plaintiffs are not responding to a demand for disclosures, but rather desire to "voluntarily remit documents . . . to their attorneys," Pls.' Reply 2 (emphasis in original), the Touhy regulations are inapposite to this discovery dispute.

B.    Plaintiffs' Need to Produce Documents to their Attorney Must be Balanced with Defendant's Need to Protect Documents from Disclosure

Neither this court nor the United States Court of Appeals for the Federal Circuit has addressed the issue of whether government employees are permitted to disclose government documents to a private attorney in a suit against the government.  In

---

[1]These regulations were codified following the United States Supreme Court's decision in United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951), where the Court held that a Department of Justice (DOJ) employee could not be held in contempt for refusing to comply with a subpoena because that employee was following the instructions of his superior, who was acting pursuant to valid DOJ regulations governing the release of agency documents.

determining the extent to which the government may regulate the speech of its employees, courts must "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the [government], as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968); see also Briggs v. Merit Sys. Prot. Bd., 331 F.3d 1307, 1313 (Fed. Cir. 2003) (quoting same).  The "balancing test to weigh the First Amendment rights of government employees against the government's interests will vary according to the type and context of speech at issue." Jacobs v. Schiffer, 204 F.3d 259, 265 (D.C. Cir. 2000) (citing Martin v. Lauer, 686 F.2d 24, 31 (D.C. Cir. 1982)).  It "has long been clear that the First Amendment does not provide a federal employee seeking legal advice regarding a dispute with the employing agency with carte blanche authority to disclose any and all confidential government information to the employee's attorney, but rather that the scope of the First Amendment right is determined by balancing the employee's interests in communication with the government's interests in preventing communication." Id. at 265-66.  "Relevant to this balancing is whether the attorney is likely to keep this information in confidence, as suggested by willingness to enter into a protective order . . . ." Id. at 266.

1.      Plaintiffs' Arguments

    Plaintiffs contend that defendant's CDRU review process violates plaintiffs' First Amendment right to speak freely with class counsel. Pls.' Mot. 1.  Although plaintiffs rely on Jacobs, 204 F.3d at 267, and Martin, 686 F.2d at 35, in which the United States Court of Appeals for the District of Columbia Circuit held that the plaintiffs' need to disclose information to their attorneys outweighed the government's need to prevent disclosure, there are two key differences between those cases and this discovery dispute. First, in both Jacobs, 204 F.3d at 261, and Martin, 686 F.2d at 27-30, the employees desired to disclose government information and documents to their private attorneys before filing suit against the government.  Here, plaintiffs have already filed suit against the United States, discovery in the case is currently open and, therefore, plaintiffs have all of the discovery tools available to them under the Rules of the United States Court of Federal Claims.  Because plaintiffs have these discovery tools available to them, their need to disclose government documents to their attorneys is lessened.  Second, unlike Jacobs, 204 F.3d at 261, which addressed disclosure of information by attorneys in the Environment and Natural Resources Division of the Department of Justice, and Martin, 686 F.2d at 27, which addressed disclosure of information by senior managers in the Office of Juvenile Justice and Delinquency Protection, this case involves employees of the FBI, an agency responsible for federal law enforcement that produces "extremely sensitive national security documents," Def.'s Resp. 1.  "[T]he [government's] interest is perhaps greatest when government information concerns national secrets." Martin, 686

F.2d at 34; see also Ober v. Miller, No. 1:04-CV-1669, 2008 WL 2857744, at *2 (M.D. Pa. July 21, 2008) (stating that the government had a "significant interest" in preventing a police officer from releasing "confidential information [that] had the potential to compromise criminal and administrative investigations and . . . jeopardize the safety of officers").

2.     Defendant's Arguments

Defendant argues that the CDRU review process is necessary because "[e]very plaintiff has a top secret security clearance, allowing them to access extremely sensitive national security documents," Def.'s Resp. 1, and some plaintiffs may have access to "deliberative documents or internal memoranda regarding FBI-wide policies," see Def.'s Resp. 11.  Defendant also asserts that plaintiffs are bound by the FBI's Manual of Administrative Operations and Procedures, which "limits the ability of employees to make copies of internal correspondence," Def.'s Resp. 2, and the FBI's Employee Manual, which prohibits employees from "remov[ing] records or discuss[ing] . . . with any unauthorized person . . . any information [the employee] obtain[s] by virtue of [his or her] Bureau employment," Def.'s App. 3 (FBI Employee Manual - "Security of Information"); see Def.'s Resp. 3-4.  Defendant further asserts that the FBI's prohibitions on removal of records and discussion of FBI information "even extend to any communications to . . . [an] attorney."  Def.'s App. 3 (FBI Employee Manual - "Security of Information").  "[I]t is clear from the employment agreement that a disclosure of materials by Class Members to their attorney, without prior review and approval by [d]efendant will subject Class Members to potential sanctions, including termination and criminal penalties."  Pls.' Mot. 20.

Defendant recognizes that "courts have traditionally balanced the employer's need to protect documents from disclosure with the need of the employee to show the documents to the attorney."  Def.'s Resp. 10.  However, the cases that defendant cites discuss whether employees' remitting their employer's documents to outside individuals is considered a "protected activity" under various employment law statutes, and they do not address the balancing test between employees' First Amendment right to remit those documents to their attorneys and the employers' need to prevent disclosure.[2]  See

---

[2]Defendant also cites to Jones v. Flagship International, 793 F.2d 714 (5th Cir. 1986). However, defendant's reliance on Jones is inapposite to this discovery dispute because the court found that plaintiff's removal of another employee's personnel file did not violate any "clearly stated company policy," 793 F.2d at 724 n.10 (internal quotation omitted), and the court did not even consider plaintiff's removal of that file when balancing the rights of the employer and the

continue...

Niswander v. Cincinnati Ins. Co., 529 F.3d 714, 716, 719-29 (6th Cir. 2008) (addressing
"the scope of protection that should be afforded to employees who disseminate
confidential documents in violation of their employer's privacy policy in the context of
employer-related litigation"); Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253,
258 (4th Cir. 1998) ("[Plaintiff] asserts that she engaged in a protected activity when she
removed and copied the documents from her boss's desk and mailed them . . . ."); O'Day
v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 763-64 (9th Cir. 1996) (finding that
the employee's act of showing a co-worker documents he took from his supervisor's desk
was not a protected activity); Jefferies v. Harris Cnty. Cmty. Action Ass'n, 615 F.2d
1025, 1036 (5th Cir. 1980) ("[Plaintiff] argues that the copying and dissemination of the
materials was protected activity under [Title VII of the Civil Rights Act of 1964] . . . .");
Abernathy v. Walgreen Co., 836 F. Supp. 817, 820 (M.D. Fla. 1992) ("[Defendant]
contends that the dissemination of the personnel record was not protected activity under
Title VII.").

Furthermore, although defendant argues that the FBI employment agreement is a
valid restriction on plaintiffs' right to communicate with class counsel because "courts
have upheld an employer's right to punish an employee for the unauthorized production
of documents to their attorneys for purposes of obtaining legal representation," Def.'s
Resp. 10, the cited cases mainly address instances in which the employee improperly
removed documents and remitted them to a member of the public, rather than to a
privately-retained attorney.  See Laughlin, 149 F.3d at 256 (finding that plaintiff, without
authorization, removed documents from her boss' desk, copied them and sent them to a
former employee to assist in that employee's Title VII claim); O'Day, 79 F.3d at 758
(finding that plaintiff "rummag[ed] through his supervisor's desk" and, in a "closed
drawer," found "notes and memoranda about sensitive personnel matters [that] was
prominently marked 'personal/sensitive,'" copied the documents and showed them to
another employee); Jefferies, 615 F.2d at 1029, 1036 (finding that the employee copied
and disseminated confidential personnel records to two co-workers); Abernathy, 836 F.
Supp. at 818 (finding that plaintiff sent a copy of an internal personnel record to twelve
people, including six members of the public); see also Niswander, 529 F.3d at 718
(finding that the plaintiff produced confidential documents relating to a potential personal
retaliation claim that were lawfully in her possession to an attorney who was representing
her and other women in a separate sex discrimination class action).

Defendant also relies on two cases from the Merit Systems Protection Board,
Heath v. Department of Transportation, 64 M.S.P.R. 638 (M.S.P.B. 1994), and Smith v.

---

[2]...continue
plaintiff as an employee, see id. at 724-29.

Department of Transportation, 106 M.S.P.R. 59 (M.S.P.B. 2007), for the proposition that the government is allowed to take adverse actions against employees who have "removed agency documents or disclosed protected documents to their attorneys, even for purposes of obtaining representation," Def.'s Resp. 10.  However, in Heath, 64 M.S.P.R. at 642, the employee removed and copied files from the desks of his superiors, including a document from an envelope that contained the inscription "To Be Opened Only by [another employee]."  Similarly, in Smith, 106 M.S.P.R. at 67, the employee gave his attorney government documents that the employee had received through an anonymous letter; the letter contained information that the employee admitted that he was not authorized to access.

III.     Conclusion

    The court has considered the submissions of the parties regarding the entry of a protective order pursuant to Rule 26(c) of the Rules of the United States Court of Federal Claims (RCFC).  Three provisions of RCFC 26 provide guidance relevant to this dispute.

    First, RCFC 26(b)(1) sets out the broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

RCFC 26(b)(1).

    Second, RCFC 26(b)(2)(C) directs the court to monitor discovery and to maintain a reasonable relationship between burdens and benefits:

> [T]he court must limit the frequency or extent of discovery otherwise allowed by these rules if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit . . . .

RCFC 26(b)(2)(C).

    Within the parameters provided by the foregoing, the court has considerable discretion over discovery matters.

> The court may, for good cause, issue an order . . . specifying terms . . . for the disclosure or discovery[,] prescribing a discovery method other than the

7

> one selected by the party seeking discovery[,] forbidding inquiry into
> certain matters, or limiting the scope of disclosure or discovery to certain
> matters . . . .

RCFC 26(c)(1)(B)-(D).

The court finds that neither plaintiffs' proposed supplemental protective order nor defendant's current review process strikes the appropriate balance between the need of the current and former employees to produce government documents to class counsel and the FBI's need to protect its documents from public disclosure.  Plaintiffs' proposed supplemental protective order would not ensure that privileged or sensitive government information not reasonably necessary to plaintiffs' prosecution of their case would not be disclosed.  Defendant's current CDRU review process places too many restrictions on plaintiffs' First Amendment right to speak freely with class counsel and may result in the failure by defendant to disclose documents reasonably necessary to plaintiffs' prosecution of their case.

Defendant has represented numerous times that the review by the CDRU is "conducted by employees who are not actively involved in the litigation."  Def.'s Resp. 1; see also Def.'s Resp. 4 ("production of the documents is permissible after review by employees not involved in the case"); Def.'s Resp. 5 ("The [employment] agreement's requirement of review by employees not primarily responsible for litigating this case permits the employees to obtain the advice of counsel while protecting legitimate national security interests."); Def.'s Resp. 12 ("FBI and DOJ attorneys responsible for the litigation would not see the proposed documents") (emphasis in original).  Defendant has also represented that the "CDRU produce[s] the documents in an expeditious manner (around 30 days)."  Def.'s Resp. 12.  Because the DOJ and FBI attorneys responsible for this litigation never see the documents proposed by plaintiffs that the CDRU reviews, Def.'s Resp. 12, and because the duration of the CDRU review process for each document is only "around 30 days," id., the court finds that defendant's CDRU review process, together with accompanying court supervision, strikes the correct balance between the plaintiffs' need to remit documents to class counsel and defendant's need to protect privileged or sensitive government documents from disclosure.

Accordingly, the following provisions shall govern discovery:

1.      If a class member desires to produce government documents to class
        counsel, the class member shall first remit those documents for screening to
        the FBI's Civil Discovery Review Unit (CDRU), which shall be composed
        of employees who are not actively involved in this litigation.

2.      Defendant's CDRU shall review a class member's request to remit a document to class counsel and either grant or deny that request within thirty (30) days.

3.      If the CDRU denies a class member's request to remit a document, or portion thereof, to class counsel, defendant shall promptly transmit two copies of that document to the court for in camera review with accompanying briefing explaining in detail with respect to each such document or portion thereof, why it is necessary to protect that document, or portion thereof, from disclosure because of privilege or the sensitivity of the subject matter.  If the court determines that any document or portion thereof is privileged or contains sensitive information, then the document will be treated in the same manner as any document found to contain privileged or sensitive information.  If the court determines that any document or portion thereof is relevant to plaintiffs' claim and does not contain privileged or sensitive information, the court will remit that document to class counsel.

4.      As to documents already anonymously produced to class counsel, defendant may review all such documents and may "claw back" any document or portion thereof that it believes contains privileged or sensitive information, assert the relevant privilege with respect to each such document or portion thereof, and request a ruling from the court, supported by briefing explaining in detail why, with respect to each such document or portion thereof, it is necessary to protect that document or portion thereof from disclosure because of privilege or the sensitivity of the subject matter.  If the court determines that any document or portion thereof is privileged or contains sensitive information, then the document will be treated in the same manner as any document found to contain privileged or sensitive information. If the court determines that any document or portion thereof is relevant to plaintiffs' claim and does not contain privileged or sensitive information, the court will remit that document to class counsel.

The court's Protective Order of November 20, 2008, Dkt. No. 41, and the court's Supplemental Protective Order of March 2, 2010, Dkt. No. 76, remain in effect.

The parties may seek a further order modifying the protective orders.  In addition, the provisions of the protective orders may be amended at any time by order of the court.

9

To the extent consistent with this Order, Plaintiffs' Motion for a Further Supplemental Protective Order is GRANTED and is otherwise DENIED.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge