# In the United States Court of Federal Claims

No. 07-589C
(Filed: February 13, 2017)*
**\*Opinion originally filed under seal on February 1, 2017**

|  |  |
|---|---|
| ) | |
| JEFFREY B. KING, SCOTT A. ) | |
| AUSTIN, KEVIN J. HARRIS, and ) | |
| JOHN J. HAYS, on their own behalf ) | |
| and on behalf of a class of others ) | |
| similarly situated, ) | Back Pay Act; 5 U.S.C. § 5596; Class |
| ) | Action; FBI Police; 28 U.S.C. § 540C; |
| Plaintiffs, ) | Cross-Motions for Summary |
| ) | Judgment; RCFC 56 |
| v. ) | |
| ) | |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |
| ) | |

*Joseph V. Kaplan*, Washington, DC, for plaintiffs.

*Alexander O. Canizares*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were *Martin F. Hockey, Jr.*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, for defendant.

## O P I N I O N

**FIRESTONE**, *Senior Judge.*

Pending before the court are cross-motions for summary judgment pursuant to Rule 56 of the Rules of the Court of Federal Claims ("RCFC") filed by named plaintiffs Jeffrey B. King, Scott A. Austin, Kevin J. Harris, and John J. Hays, on behalf of a certified class of current and former police officers employed by the Federal Bureau of Investigation ("FBI") and defendant the United States ("the government"). The plaintiffs

allege that they are owed back pay and other relief under the Tucker Act, 28 U.S.C.

§ 1491(a), and the Back Pay Act, 5 U.S.C. § 5596, on the grounds that the FBI has

established a police force under 28 U.S.C. § 540C ("section 540C") but has failed to pay

police officers in accordance with the terms of section 540C.

Section 540C states that "[s]ubject to the supervision of the Attorney General, the

Director [of the FBI] may establish a permanent police force, to be known as the FBI

police." 28 U.S.C. § 540C(b)(1). The statute authorizes the police force to perform

certain protective duties "[i]n accordance with regulations prescribed by the Director [of

the FBI] and approved by the Attorney General." *Id.* § 540C(b)(2), (4).[1] It then provides

that the FBI Director "may appoint uniformed representatives of the Federal Bureau of

Investigation as FBI police." *Id.* at § 540C(b)(3). With regard to compensation for

members of the permanent FBI police force, the statute states that the rates of pay and

benefits "shall be equivalent to the rates of basic pay, salary schedule, pay provisions,

and benefits applicable to members of the United States Secret Service Uniformed

Division, *id.* § 540C(b)(5)(A), and that "[p]ay and benefits . . . shall be established by

regulation," *id.* at § 540(b)(5)(B)(i).[2]

---

[1] Under the statute, regulations prescribed by the FBI Director and approved by the Attorney General "may" allow the "FBI police [to] police the FBI buildings and grounds . . . make arrests and otherwise enforce the laws of the United States . . . carry firearms as may be required . . . prevent breaches of the peace . . . and hold the same powers of sheriffs and constables policing FBI buildings and grounds." 28 U.S.C. § 540C(b)(4).

[2] The plaintiffs concede that they are unable to demonstrate entitlement to the "law enforcement officer" retirement benefits. Pls.' Mot. for Summ. J. ("Pls.' MSJ") 57. Therefore, the plaintiffs are seeking only entitlement to higher pay applicable to members of the Secret Service Uniformed Division under the above-quoted provision.

The government argues that it is entitled to summary judgment on the grounds that the undisputed evidence shows that no FBI Director has ever issued a formal statement exercising discretion to establish a "permanent police force" under section 540C.  The government also argues that the undisputed evidence shows that section 540C was never implemented through regulations as required by section 540C.  Specifically, the government argues that the FBI never promulgated regulations detailing the powers of an FBI police force or pay regulations for an FBI police force, as required by section 540C. The government contends that the undisputed evidence demonstrates that police officers employed by the FBI both past and present have been authorized to carry out their police duties under delegations from the General Services Administration ("GSA"), the United States Department of Homeland Security ("DHS"), and the United States Marshals Service ("USMS").  Finally, the government argues that the undisputed evidence shows that none of the plaintiffs were ever "appointed" to an FBI police force under section 540C.  Rather, the plaintiffs' personnel records show that they were generally appointed under the legal authority in 28 U.S.C. § 536, which states that "[a]ll positions in the [FBI] are excepted from the competitive service," and their positions were classified under the General Schedule ("GS") pay system occupational series for federal police officers, GS-0083.

The plaintiffs argue in their motion that regardless of whether the FBI Director formally established an FBI police force, promulgated regulations to implement section 540C, or formally appointed police officers working for the FBI to a police force established under section 540C, they are nonetheless entitled to the pay authorized under

section 540C.  Plaintiffs argue that undisputed evidence shows that they have been

performing the functions identified in section 540C and that various FBI manuals and

legal memoranda have referenced section 540C as authority for certain activities

conducted by police officers working for the FBI.  The plaintiffs contend in their motion

for summary judgment that these documents prove that the FBI has established an FBI

police force under section 540C and that the government cannot deny officers the pay

prescribed by statute by failing to implement section 540C through regulations or appoint

them as police officers under section 540C.  The plaintiffs argue that section 540C's pay

provisions are mandatory and self-implementing.

For the reasons that follow, the government's motion for summary judgment is

**GRANTED**.  The plaintiffs' cross-motion for summary judgment is **DENIED**.

## I.  BACKGROUND

### A.  The FBI's employment of police officers

The following facts are undisputed unless expressly noted.  Since the 1980s, the

FBI has employed police officers to provide security at the FBI's J. Edgar Hoover

Building (FBI headquarters), Washington Field Office, and Criminal Justice Information

Services Division ("CJIS") in Clarksburg, West Virginia.  These police officers have also

been stationed at other locations in the Washington, DC area; the FBI Academy at the

U.S. Marine Corps Base in Quantico, Virginia; and the FBI New York Field Office in

New York City.  Police officers working for the FBI have also been assigned to protect

FBI personnel or assets at special events and to provide personal protection for the

Attorney General and the Director of the FBI.  Def.'s Mot. for Summ. J. App'x ("Def.'s

App'x") A380-81 (Decl. of Clifford Holly, Assistant Director, Security Division, FBI (June 18, 2015)) ("Holly Decl.").  The police officers working for the FBI are part of the FBI's "Security Division."  The Unit Chief of these police reports to the Security Operations Section Chief, who reports to the Deputy Assistant Director of the Security Division, who in turn reports to an FBI Assistant Director.  Def.'s App'x A82 (Decl. of Kevin C. Donovan, Former Chief, FBI Police Unit (June 5, 2015)) ("Donovan Decl."), A380 (Holly Decl.).

The police officers working for the FBI are federal employees.  They were generally appointed under the legal authority 28 U.S.C. § 536, which states that "[a]ll positions in the [FBI] are excepted from the competitive service."  Def.'s App'x A1400 (Decl. Valerie Parlave, Executive Assistant Director, Human Resources Branch, FBI (Aug. 19, 2016)) ("Parlave Decl."), A1416-98 (plaintiffs' SF-50s and other personnel documents); ECF No. 182 (Def.'s Suppl. App'x with additional SF-50s and other personnel documents).  During the relevant time period, their positions have been classified consistently in the GS system under occupational series for federal police officers, GS-0083.  *See* Def.'s App'x A1400-02, A1416-98; ECF No. 182; *see also* Def.'s App'x A178 (Decl. of Donald Bryce Baker, Senior Advisor to OPM's Deputy Associate Director for Pay and Leave (June 16, 2015)) ("Baker Decl."), A896-97 (Dep. of Kevin R. Wood, supervisory police officer, FBI (Feb. 25, 2015)) ("Wood Dep."), A1105-06 (Dep. of Scott Giroux, supervisory police officer, FBI (Mar. 11, 2015)) ("Giroux Dep."), A1171-79 (position description for federal "police officer" position under series GS-

0083); Pls.' Mot. for Summ. J. ("Pls.' MSJ") 3.[3]  With regard to compensation, these

police officers generally enter on duty at the GS-5 through GS-8 grade levels.  Def.'s

App'x A768 (FBI careers website for police officer positions), A937 (Dep. of Thomas J.

LaCrosse, supervisory police officer, FBI (Mar. 2, 2015)) ("LaCrosse Dep."), A1416-98

(personnel documents).  There are separate pay systems, such as one for federal law

enforcement officers, which do not apply to the plaintiffs.  *See, e.g.*, *id.* at A682 (Dep. of

Jeffrey B. King (Aug. 6, 2014)) ("King Dep.").  In particular, the pay system applicable

to the Secret Service Uniformed Division, "LE," is not applicable to the police officers

working for the FBI.  *Id.* at A1401-02 (Parlave Decl.).  As discussed below, since 2003

plaintiffs have been paid under a special salary table established for certain federal police

officers.  *Id.* at A642-46 (plaintiffs' responses to interrogatories), A682 (King Dep.),

A734 (Dep. of Scott A. Austin (Aug. 6, 2014)) ("Austin Dep."), A753-54 (Dep. of John

J. Hays (Aug. 5, 2014)) ("Hays Dep."), A774-75 (Dep. of Kevin J. Harris (Aug. 5, 2014))

("Harris Dep.").

    The credentials held by police officers employed by the FBI initially referred to

authority delegated from GSA, under 40 U.S.C. § 318, and then from DHS, under

40 U.S.C. § 1315.  The police officers' credentials do not refer to section 540C.  Def.'s

App'x A646-49 (plaintiffs' responses to interrogatories), A665 (plaintiffs' responses to

---

[3] Each of the named plaintiffs has been covered under the GS system since joining the FBI as a police officer.  Def.'s App'x A642-46 (plaintiffs' responses to interrogatories), A682-84 (Dep. of Jeffrey B. King (Aug. 6, 2014)) ("King Dep."), A733-34 (Dep. of Scott A. Austin (Aug. 6, 2014)) ("Austin Dep."), A753-55 (Dep. of John J. Hays (Aug. 5, 2014)) ("Hays Dep."), A774-75 (Dep. of Kevin J. Harris (Aug. 5, 2014)) ("Harris Dep."), A1423-98 (personnel documents).

document requests), A668 (plaintiffs' responses to requests for admission); Pls.' Reply 12-13.

The delegations granted from GSA to the FBI ended in 2002 after passage of the Homeland Security Act of 2002.  Congress, in the Homeland Security Act, transferred authority to provide security at federal buildings from GSA to DHS.  *See* Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 403, 1706, 116 Stat. 2135 (amending 6 U.S.C. § 203; 40 U.S.C. § 1315); *see also* Pub. L. No. 107-217, 116 Stat. 1062 (2002) (amending 40 U.S.C. §§ 318, 1315, among other parts of title 40).[4]  A savings provision ensured that existing delegation agreements continued in effect.  *See* Homeland Security Act § 1512 (codified at 6 U.S.C. § 552).  DHS extended GSA's existing delegations. Def.'s App'x A534-36 (memorandum from Ronald L. Deacon, Director, Facilities and Administrative Services Staff, Justice Management Division, to Patrick G. Findlay, Section Chief, Facilities Management Section, Administrative Services Division, FBI, stating that "[t]he Secretary of DHS has directed that GSA's existing delegations of law enforcement and security services remain in effect until such time as he may revoke or supersede such delegations" (Jan. 13, 2004)).

---

[4] Under 40 U.S.C. § 1315(b)(1), the Secretary of Homeland Security "may designate employees of [DHS], including employees transferred to [DHS] from the Office of the Federal Protective Service of [GSA] pursuant to the Homeland Security Act of 2002, as officers and agents for duty in connection with the protection of property owned or occupied by the Federal Government and persons on the property, including duty in areas outside the property to the extent necessary to protect the property and persons on the property."  In addition, section 1706(b)(2) of the Homeland Security Act permits DHS to "delegate authority for the protection of specific buildings to another Federal agency where, in the [DHS] Secretary's discretion, the Secretary determines it necessary for the protection of that building."

Some police officers working for the FBI have been deputized by the USMS. The USMS is authorized to deputize individuals to perform federal law enforcement functions, including making arrests and carrying firearms. Def.'s Mot. for Summ. J. ("Def.'s MSJ") 7-8 (citing 28 U.S.C. §§ 566(c), 561(a), 561(f), 509, 510; 28 C.F.R. § 0.111, 0.112, 0.113).[5] From 2001 to 2007, certain police officers working for the FBI received deputations from the USMS or local law enforcement authorities to carry out protective duties at the New York Field Office, Quantico, and special assignments. Def.'s MSJ 8 (citing, *e.g.*, Def.'s App'x A84 (Donovan Decl.)).

As discussed in greater detail below, the USMS in 2007 declined to deputize the police officers working for the FBI. Def.'s App'x A565 (letter from Thomas Nunley, Acting Chief, Special Deputations Unit, USMS, to Richard A. McFeely, Chief, Operational Support Section, FBI (Jan. 18, 2007)). The USMS read section 540C and determined based on that provision that they no longer needed to deputize police officers working for the FBI. *Id.* After further review and discussions with the FBI, the USMS came to understand that section 540C was not applicable and in 2012 the USMS resumed approving the FBI's requests to deputize its police officers. *Id.* at A590 (letter from Karen J. Brown, Chief Inspector, Tactical Operations Division, USMS, to Jennifer S. Love, Assistant Director, Security Division, FBI (Jan. 20, 2012)), A587-89 (memorandum from Judith Gallagher-Howell, Chief, Office of Security Programs,

---

[5] For example, 28 C.F.R. § 0.112 authorizes the Director of the USMS to deputize "[s]elected officers or employees of the Department of Justice."

Tactical Operations Division, USMS, to the Deputy Attorney General regarding the FBI's deputation request (Aug. 8, 2012)) ("Gallagher-Howell Mem. Aug. 8, 2012"), A609-12 (memorandum from Chief Gallagher-Howell to the Deputy Attorney General regarding the FBI's deputation request (Oct. 10, 2012)) ("Gallagher-Howell Mem. Oct. 10, 2012").  It is the FBI's current practice to request deputation by the USMS for its police officers at all locations other than CJIS in Clarksburg, West Virginia.  Def.'s MSJ 5 n.1, 7-8 (citing Def.'s App'x A381 (Holly Decl.), A618-19 (letter from Kristen vonKleinSmid, Section Chief, Security Operations Section, FBI, to Karen Brown, Chief, Special Deputation Unit, USMS, requesting deputations (June 9, 2014)).  The FBI has also entered into agreements with local law enforcement agencies, such as the Washington, DC police, to carry out protective duties.  Def.'s App'x A93-100 (March 2001 agreement), A572-73 (January 2008 addendum).

> ### B.      Enactment of Section 540C and Contemporaneous Actions Regarding the Statute

The 21st Century Department of Justice Appropriations Authorization Act, Pub. L. No. 107-273, 116 Stat. 1758 (2002), was enacted in November 2002.  Section 11024 of the Act created 28 U.S.C. § 540C, titled "FBI Police."  As noted above, section 540C provides that "[s]ubject to the supervision of the Attorney General, the Director [of the FBI] may establish a permanent police force, to be known as the FBI police."  28 U.S.C. § 540C(b)(1).  The statute also authorizes the Director of the FBI "or designated representative duly authorized by the Attorney General" to "appoint" officers to the FBI police.  *Id.* § 540C(b)(3).  The statute further provides that "[i]n accordance with

regulations prescribed by the Director and approved by the Attorney General, the FBI police may . . . police the FBI buildings and grounds for the purposes of protecting persons and property" and conduct other protective duties.  *Id.* § 540C(b)(4)(A).  With regard to pay, section 540C provides that "[t]he rates of basic pay, salary schedule, pay provisions, and benefits for members of the FBI police shall be equivalent to the rates of basic pay, salary schedule, pay provisions, and benefits applicable to members of the United States Secret Service Uniformed Division."  *Id.* § 540C(b)(5)(A).  The statute states that "[p]ay and benefits for the FBI police . . . (i) shall be established by regulation; (ii) shall apply with respect to pay periods beginning after January 1, 2003; and (iii) shall not result in any decrease in the rates of pay or benefits of any individual."  *Id.* § 540C(b)(5)(B).[6]

Following the enactment of section 540C in late 2002 through 2003, officials from the FBI, the Department of Justice ("DOJ"), the Office of Management and Budget ("OMB"), and OPM discussed implementation of the statute.  Def.'s App'x A180-89 (Baker Decl.).  In November 2002, Leah M. Miesel, Deputy Assistant Director-Personnel Officer in the FBI's Administrative Services Division, Personnel Management Branch,

---

[6] Section 540C was included as part of the 21st Century Department of Justice Appropriations Authorization Act by the conference committee.  The conference report stated that section 540C "provides statutory authorization for an already existing FBI police force that protects FBI buildings and adjacent streets."  The conference report also explained that "the FBI police suffers from a high rate of turnover due to lower pay and fewer benefits than the Uniformed Division of Secret Service or Capitol and Supreme Court police" and stated that section 540C "would close this disparity."  H.R. Rep. No. 107-685 at 203 (2002) (Conf. Rep.).  Consistent with the statute, the conference report stated that section 540C "authorizes the FBI Director to establish the FBI police, subject to the Attorney General's supervision."  *Id.*

requested approval from Donald J. Winstead, Acting Director of OPM's Workforce Compensation and Performance Service, to establish a new pay plan code for the FBI's police officers in preparation to implement section 540C.  *Id.* at A360-61.

In December 2002, OMB wrote to DOJ stating that the Administration would seek legislation to repeal section 540C and thus "[t]he FBI should not take any actions to implement the legislation."  *Id.* at A505.  Ms. Miesel's request for a new pay plan code was put on hold.  *Id.* at A365-68.[7]

In a letter dated December 5, 2002, FBI Director Robert S. Mueller, III, asked Attorney General John Ashcroft to appeal OMB's plan to offer legislation to repeal section 540C and requested that OMB "support this provision and support the comparable pay of the FBI police officers to the [Secret Service Uniformed Division] officers."  *Id.* at A512-14.[8]  In his letter, FBI Director Mueller explained the importance of raising compensation for the FBI's police officers, stating that the FBI's police officers

---

[7] A December 13, 2002 e-mail among OPM officials notes that the FBI asked OPM to "suspend action on creating a new CPDF payplan code for FBI police officers" following OMB's statement.  Def.'s App'x A365-66.  A December 12, 2002 e-mail among OPM officials noted that section 540C "could be interpreted as providing a mandatory entitlement for FBI police to receive pay and benefits equivalent to [Secret Service Uniformed Division] officers" but explained that the statute "stat[es] that the FBI Director, subject to the supervision of the Attorney General, 'may' establish a 'permanent police force to be known as the FBI police."  *Id.* at A365.  The letter continued that "[t]here is an existing organization of FBI police, but perhaps it can be argued that they are not part of a permanent FBI police force covered by section 540C until the force is formally established under section 540C(b)(1) and the officers are formally appointed under section (b)(3)."  *Id.*

[8] Because the FBI is part of DOJ, the FBI reports to the Attorney General and the Attorney General may appoint the Director of the FBI and other FBI officials.  *See* 28 U.S.C. §§ 509, 531-534.

were going to agencies that provided a higher salary, such as the Transportation Security

Administration, and that the FBI needed to retain qualified, trained, equipped, and

motivated police officers to adequately protect its employees and facilities.  *Id.* at A514.[9]

DOJ apparently did not act favorably on the appeal and OMB did not alter is position

opposing implementation of section 540C.  *Id.* at A516 (memorandum regarding "police

officer pay system" (Dec. 16, 2002)).  The Administration, however, agreed to raise

certain federal police officers' pay, including pay for police officers working at the FBI.

On December 20, 2002, Mr. Winstead wrote to human resource officers at several

agencies, including DOJ, regarding OPM's approval of higher rates of basic pay for

GS-0083 police officers at grades GS-4 through GS-11, beginning January 1, 2003.  *Id.* at

A374; *see also id.* at A188-89 (Baker Decl.), A349-52 (OPM's December 27, 2002

comments on section 540C), A354-56 (OPM's April 24, 2003 proposal to repeal section

540C).

  On February 10, 2003, the police officers at the FBI's CJIS submitted a complaint

to various FBI and DOJ officials regarding their pay and benefits.  *Id.* at A16-31.  The

CJIS police officers complained that their pay under the 2003 special salary rate table

---

[9] On December 9, 2002, Roger M. Martz, who was Unit Chief for police officers working for the FBI, sent a note to police officers in which he explained that the FBI Director was trying to secure a pay raise for police officers working for the FBI.  Def.'s App'x A515, A908-09 (Wood Dep.).  Mr. Martz stated that "[t]he Director is aware of the situation and, as before, supports the FBI Police pay raise which was passed into law."  Def.'s App'x A515.  According to a police officer working for the FBI, Mr. Martz also informed police officers that section 540C "gave the [D]irector discretion as to whether or not he would implement it at all" and that "there had been objections and the objections had come from the [D]irector's office and DOJ."  *Id.* at A909-11 (Wood Dep.).

developed by OPM was still lower than that of the Secret Service Uniformed Division

and that their retirement benefits had not changed.  *Id.* at A17.[10]

The FBI's Administrative Services Division responded on March 18, 2003.  *Id.* at

A11-14.  The Administrative Services Division explained to the CJIS police officers that

section 540C "provided the [FBI] Director discretion to establish an FBI Police Force."

at A11.  The electronic communication, which was written by John C. Bauer, the Unit

Chief of the Personnel Policy Unit within the Administrative Services Division, further

explained that "[i]f the Director decides to exercise this discretion, but only if he so

decides, then he is required by [section 540C] to establish pay and benefits for the newly

authorized FBI Police similar to the pay and benefits provided to members of the Secret

Service Uniformed Division (SSUD)."  *Id.*  The Administrative Services Division also

described the FBI's recent discussions with OMB and OPM:

> Once notification was received that [section 540C] had been
> approved, the [Administrative Services Division] undertook work necessary
> to begin implementing the new pay and benefits system for the FBI Police
> so we would be prepared if the Director decided to exercise his authority. . .
> .  In the midst of establishing parameters for the new system, both [OMB]
> and the OPM voiced opposition to the pay and benefits portion of
> [section 540C], and the FBI was asked not to begin implementation.

*Id.* at A11-12.  The letter also explained that OMB and OPM had agreed to raise salary

rates for federal police officers, although those rates did not provide the same pay or

---

[10] The CJIS police officers also argued that there was no justification for some of the gaps in pay
between police officers working for the FBI at different locations.  Def.'s App'x A18.

retirement benefits as that received by members of the Secret Service Uniformed Division. *Id.* at A12-13.

The March 18, 2003 electronic communication comports with the understanding of Kenneth H. Senser, who was Assistant Director of the Security Division from 2001 to September 2003. *Id.* at A34 (Decl. of Kenneth H. Senser (May 21, 2015)) ("Senser Decl."). In July 2003, Mr. Senser and other officials briefed FBI Director Mueller on OMB and OPM's objections to the implementation of section 540C and discussed options for pursuing alternative legislation that would expand the jurisdiction of the FBI's police officers and enhance their pay. *Id.* at A35-36. Mr. Senser states that following this meeting, "it was clear . . . that [FBI Director Mueller] was not prepared to authorize implementation of 28 U.S.C. § 540C and instead approved a different approach." *Id.* at A36. Mr. Senser states that "no steps were taken to implement 28 U.S.C § 540C at any time thereafter." *Id.*

In an electronic communication dated July 23, 2003 which refers to the meeting with FBI Director Mueller, then-Acting Unit Chief Kevin Donovan wrote to the FBI's Administrative Services Division and others seeking approval to pursue new legislation to increase the pay and benefits for the FBI's police officers. *Id.* at A45-57. The communication described the enhanced pay and benefits that the FBI's police officers would have received "[i]f the Director had implemented" section 540C and "if the Director were to create the FBI Police." *Id.* at A45-46. The communication specifically stated as "fact" that "the FBI has not implemented this law." *Id.* at A47. The communication also stated that "[t]he current authority of FBI Police Officers is derived

from different sources depending on the location to which officers are assigned,"
including delegations, deputations, and cooperative agreements. *Id.* at A46. The
communication concluded by recommending that the agency pursue new legislation to
increase the FBI's police officers' pay along the lines of section 540C's provisions, and
expand their jurisdiction, but not improve retirement benefits. *Id.* at A50-51.[11]

DOJ's position regarding section 540C was also stated in communications to
Congress. In 2003, two police officers working for the FBI wrote to Senator Paul
Sarbanes to ask for assistance in seeking the implementation of section 540C. *Id.* at
A521, A525-26.[12] On August 7, 2003, Senator Sarbanes asked OPM to review the matter
and provide him with "an appropriate response." *Id.* at A520, A524. On April 27, 2004,
DOJ's Assistant Attorney General for Legislative Affairs responded to Senator Sarbanes
on behalf of the Administration. *Id.* at A537-40. In two nearly identical letters
responding to the issues raised by the two police officers, the Assistant Attorney General
explained that "the Director of the FBI has chosen not to exercise his discretion to
establish the new FBI police force." *Id.* at A537, A539. The Assistant Attorney General

---

[11] The July 23, 2003 communication stated that Director Mueller provided his approval to
proceed as outlined in the communication at a meeting on July 10, 2003. Def.'s App'x A45.
Another communication from then-Deputy Unit Chief Donovan, dated January 24, 2005, dealt
more specifically with the jurisdiction of the police officers working for the FBI. *Id.* at A135-40.

[12] Separately, on December 23, 2003, Chuck Canterbury, National President of the Grand Lodge
of the Fraternal Order of Police, wrote to U.S. Representative Jo Ann Davis, Chair of the
Subcommittee on Civil Service for the House Committee on Government Reform. Def.'s App'x
AR 529-30. The December 23, 2003 letter argued that while section 540C's authorization of
increased pay and benefits might be "incomplete," as OPM had asserted in its legislative
proposal, the proper remedy was to clarify section 540C, not repeal it. *Id.* at 529.

also noted that "the FBI worked closely with OPM to establish a special salary rate table for the current FBI police force, which became effective January 12, 2003." *Id.* at A538, A540.  The letters continued that "[w]hile rates of basic pay, under the special salary rates do not match those of the United States Secret Service Uniformed Division, those new rates have helped increase the pay of most members of the FBI police, in many cases significantly above previous pay levels." *Id.* at A538, A540.[13]

The fact that the FBI Director did not establish an FBI police force under section 540C was again stated in an August 4, 2005 memorandum written by FBI General Counsel Valerie Caproni to Charles S. Phalen, Jr., Assistant Director of the FBI's Security Division.  *Id.* at A1184-85.[14]  The subject of the memorandum was "Statutory Authority for FBI Police."  *Id.* at A1184.[15]  General Counsel Caproni wrote that the police officers' authority derived from 40 U.S.C. § 1315 and not section 540C.  *Id.* at A1184-85.  General Counsel Caproni stated that section 540C authorized the FBI Director to establish a permanent police force that "would be entitled to the same rates of

---

[13] The Assistant Attorney General also noted that the Federal Law Enforcement Pay and Benefits Parity Act of 2003, Pub. L. No. 108-196, § 2(b), 117 Stat. 2896, directed OPM to report on classification, pay, and benefits among federal law enforcement officers.  Def.'s App'x A538, A540.  OPM issued its findings in its July 2004 "Federal Law Enforcement Pay and Benefits, Report to the Congress."  *Id.* at A179 (Baker Decl.), A191-347 (report to Congress).

[14] According to James L. Ramey, former Unit Chief of the FBI's police officers, when asked in 2004 if funding could be included in a budget proposal to support "the financial aspect of 540C," Assistant Director Charles Phalen said "[t]hat's a non-starter."  Def.'s App'x A863 (Dep. of James L. Ramey (Oct. 16, 2014)) ("Ramey Dep.").

[15] As General Counsel Caproni's memorandum shows, police officers employed by the FBI are sometimes referred to as the "FBI police" but FBI police officers are not members of a "permanent police force" under section 540C.

basic pay, salary schedule, pay provisions, and benefits applicable to members of the

United States Secret Service Uniformed Division." *Id.* at 1185.  General Counsel

Caproni then explained that the FBI Director, "however, has not implemented this

authority." *Id.*

A 2006 e-mail to police officers working for the FBI from Acting Unit Chief of

the FBI police unit, A. Artha Wells, provided by D. Joseph Weir, who was Deputy Unit

Chief for police officers working for the FBI from March 2006 to October 2007, also

states that "Congress did authorize the Director to establish a permanent police force

under 28 U.S.C. 540C.  It is my understanding this has not been implemented." *Id.* at

A70-71 (Decl. of D. Joseph Weir (June 3, 2015)) ("Weir Decl."), A80 (e-mail from

Acting Unit Chief Wells).

Background information and remarks prepared for FBI Director Mueller before a

meeting with police officers working for the FBI in December 2006 also state that section

540C was not implemented.  *Id.* at A67-70 (Weir Decl.), A73-75 (background

information), A559-63 (prepared remarks).  Deputy Unit Chief Weir states that leading

up to the December 2006 meeting he helped prepare a document for the Director

regarding topics of interest to police officers working for the FBI.  *Id.* at A68.  The

document states that the police officers might ask Director Mueller about "[p]ay parity

with other Federal Law Enforcement Officer[s]" pursuant to section 540C.  *Id.* at A73.

The response, which Deputy Unit Chief Weir states he reviewed and approved, was that

"the FBI Police Unit does have pay parity with other Police Officer positions under the

General Schedule (GS) in the 0083 series." *Id.*  The response continues that although

section 540C indicates that police officers working for the FBI could receive pay and benefits equivalent to members of the Secret Service Uniformed Division, the statute was not implemented "due to recommendations made by the Department of Justice Finance Division along with OPM." *Id.*

Two versions of the remarks prepared for FBI Director Mueller for the December 2006 meeting with police officers appear in the parties' filings. *Id.* at A559-63. Both versions of the remarks address the issue of "pay parity" and state "I am aware of the pay and retirement issues that are of concern to you." *Id.* at A559, A562. Both versions of the remarks refer to section 540C: the first version states that "[i]n 2002 legislation was passed authorizing the creation of the FBI Police Force. The 2002 legislation allowed for payment and retirement benefits commensurate with the US Secret Service Uniform Division of police." *Id.* at A559. The first version of the remarks then states that "[t]he change in application of that legislation [section 540C] was due to OPM indicating they would not administer the program, and the FBI being unable to administer that program on its own. (*The FBI does not administer any of the payment or retirement programs for any employee*)." *Id.* at A559 (emphasis in original). The second version of the remarks states that "[i]n 2002 legislation was given for the option to create the FBI Police. If enacted, it mandated payment and retirement benefits commensurate with the US Secret Service Uniformed Division." *Id.* at A562. The second version of the remarks then states that "OPM indicated it would not administer the retirement program, and the FBI would be required to administer the program on its own. (*The FBI does not administer any of the retirement programs for any of its employees and doesn't have the resources,*

*databases, and capabilities to do so*).  *Id.* at 563 (emphasis in original).  The second

version of the remarks concludes "[b]ased on this, the FBI did not implement the

legislation."  *Id.*  Both versions of the remarks go on to explain that although new

legislation had been proposed to increase pay and enhance retirement benefits for police

officers working for the FBI, the legislation was unlikely to be enacted and the FBI was

"looking at addressing these issues" itself.  *Id.* at A560, A563.

      **C.**      **Other References to Section 540C in FBI and Other Federal**
                   **Documents**

In addition to statements from officials of the FBI and DOJ regarding the FBI

Director's decision not to establish the police force authorized by section 540C or issue

regulations implementing the statute's pay provisions, the plaintiffs have identified and

the government does not dispute that section 540C has been mentioned in certain FBI and

other federal documents.

First, section 540C is mentioned in a memorandum dated September 24, 2004

regarding a proposed "FBI Police Weapons Off Duty Carry Policy."  Pls.' Mot. for

Summ. J. App'x ("Pls.' App'x") PL324-27.  The September 24, 2004 memorandum,

written by the Investigative Law Unit of the FBI's Office of the General Counsel and

addressed to "Security," stated that "[t]he statutory authority for FBI police, 28 U.S.C.

§ 540C makes it clear that FBI police fall within the ambit of [the Law Enforcement

Officers Safety Act, 18 U.S.C. §§ 926B, 926C ]."  Pls.' App'x PL324.  The memorandum

continued: "[s]ection 540C also makes clear, however, the Director's authority to limit,

or impose conditions on the exercise of, the law enforcement powers of the FBI police,

including the authority to restrict the ability of its law enforcement officers to carry

weapons in certain circumstances." *Id.*

When the FBI established a formal policy for authorizing police officers working

for the FBI to carry FBI-issued firearms while off duty, on November 8, 2004, the policy

communication, which was approved by FBI General Counsel Caproni, did not refer to

section 540C or the Investigative Law Unit's September 24, 2004 memorandum.  Def.'s

App'x A128-33.  The November 8, 2004 policy communication stated that the Law

Enforcement Officers Safety Act, which permits "qualified law enforcement officers" as

defined by the Act to carry concealed firearms,[16] "includes the FBI Police by definition."

*Id.* at A129.[17]

---

[16] The Law Enforcement Officers Safety Act provides that:

> [T]he term 'qualified law enforcement officer' means an employee of a
> governmental agency who—(1) is authorized by law to engage in or supervise the
> prevention, detection, investigation, or prosecution of, or the incarceration of any
> person for, any violation of law, and has statutory powers of arrest or
> apprehension under section 807(b) of title 10, United States Code (article 7(b) of
> the Uniform Code of Military Justice); (2) is authorized by the agency to carry a
> firearm; (3) is not the subject of any disciplinary action by the agency which
> could result in suspension or loss of police powers; (4) meets standards, if any,
> established by the agency which require the employee to regularly qualify in the
> use of a firearm; (5) is not under the influence of alcohol or another intoxicating
> or hallucinatory drug or substance; and (6) is not prohibited by Federal law from
> receiving a firearm.

18 U.S.C. § 926B(c).

[17] An earlier electronic communication, dated September 11, 2003, outlined the FBI's policy for
allowing police officers employed by the FBI, as "emergency reaction personnel," to take home
FBI-issued firearms.  Def.'s App'x A121-26.  The take-home firearms policy did not refer to
section 540C and expressly did not authorize "off duty carriage" or grant broader law
enforcement authority.  *Id.*

Second, in 2007, section 540C was mentioned by the Acting Chief of the USMS'

Special Deputations Unit in correspondence denying the FBI's request to renew and

initiate new special deputation authority for police officers employed by the FBI in New

York and Quantico. Def.'s App'x A565; Pls.' App'x PL335.[18]  In a letter dated January

18, 2007, Acting Chief Thomas Nunley explained that the USMS was denying the FBI's

request based on section 540C.  "The basis for this denial is that there is existing

authority in Title 28 USC, Section 540C for FBI Police Officers to perform the functions

outlined in [the FBI's deputation request]."  Def.'s App'x A565; Pls.' App'x PL335.  The

letter continued that "[t]his particular statute negates the need to convey additional

authority to these individuals, therefore, deputizing them is not necessary."  Def.'s App'x

A565; Pls.' App'x PL335.[19]  The letter invited the FBI to provide any additional

information that would change the outcome of this decision.  Def.'s App'x A565; Pls.'

App'x PL335.[20]

---

[18] Previously, on October 17, 2006, the USMS had declined to deputize FBI police officers "to
assist FBI special agents in the performance of their duties."  Def.'s App'x A549-50 (letter from
Arthur D. Roderick, Jr., Assistant Director for Investigations, Investigative Services Division,
USMS, to Charles J. Rooney, Chief, Operational Support Section, FBI (Oct. 17, 2006)).  The
USMS explained that it had previously deputized police officers working for the FBI "to expand
their jurisdictional authority (which is otherwise limited to protecting FBI personnel and property
pursuant to 28 U.S.C., subsection 540C) to provide uniformed protection at the Attorney
General's residence."  *Id.* at A549.

[19] An attachment to the FBI's deputation request, dated December 13, 2006, stated that the police
officers had been "making arrests, conducting investigations, conducting physical surveillance,
operating electronic surveillance, and all other duties that are performed by Federal Law
Enforcement Officers."  Def.'s App'x A568.

[20] The plaintiffs also provide an affidavit, dated January 28, 2008, from Scott Giles, who worked
for the FBI as a police officer in Quantico, Virginia, stating that FBI Assistant General Counsel
Jung-Won Choi informed police officers in a 2007 legal training session that deputations by the

On November 1, 2011, FBI officials met with USMS officials to ask them to

resume deputizing FBI police officers.  Def.'s App'x A60 (Decl. of Colleen M.

Conyngham, Former Section Chief, Security Operations Section, Security Division, FBI

(May 27, 2015)) ("Conyngham Decl."), A588 (Gallagher-Howell Mem. Aug. 8, 2012),

A610 (Gallagher-Howell Mem. Oct. 10, 2012).  On December 12, 2011, the FBI

submitted a written request advising the USMS that section 540C was never

implemented.  *Id.* at A63-65, A591-92.  The December 12, 2011 letter, which was signed

by Jennifer S. Love, Assistant Director of the FBI's Security Division, stated that:

> Although Title 28 U.S.C. § 540C provides the FBI Director the
> authority to establish a police force to protect all FBI facilities, the statute is
> discretionary in nature.  *Section 540C was never implemented by the FBI,*
> *because among other reasons, it would have required the FBI to create its*
> *own pension system, which it has never done.*  Accordingly, the authority
> for the creation and implementation of FBI police officers is currently, and
> has always been, premised upon the authority delegated by the [GSA] to
> the FBI under 40 U.S.C. § 318--which was subsequently recodified as 40
> U.S.C. § 1315 . . . .  That authority currently extends to FBI Headquarters

USMS were not necessary as the officers were covered under section 540C.  Pls.' App'x PL340.
The government argues that police officers working for the FBI were consistently trained that
their authority arose from 40 U.S.C. § 1315 and that section 540C had not been implemented.
Def.'s MSJ 25; Def.'s Resp. 24-25.  In support of its argument, the government provides the
slides from FBI Assistant General Counsel Choi's annual legal training session for FBI police in
2007 which state that section 540C "[g]ives the Director the authority to implement the statute"
and "[the] Director has not implemented as of date."  Def.'s App'x A963, A1009-10; *see also*
A1065-73 (Dep. of Jung-Won Choi (Mar. 10, 2015)) ("Choi Dep. Mar. 10, 2015"), A1163-64
(Dep. of Jung-Won Choi (Apr. 14, 2015)) ("Choi Dep. Apr. 14, 2015").  In depositions
conducted in 2014 and 2015, several plaintiffs stated that they do not remember this training.
*See* Pls.' Reply App'x 6 (Hays Dep.), 10-11 (King Dep.), 15-17 (Austin Dep.), 21-24 (Dep. of
Neil C. Thompson (Mar. 11, 2015)) ("Thompson Dep."), 28-30 (Dep. of Roger L. Paul (Mar. 3,
2015)) ("Paul Dep.") (ECF No. 166-1).  According to other police officers, police officers
working for the FBI were instructed in training sessions that section 540C had not been
implemented and that 40 U.S.C. § 1315 was the source of their statutory authority.  Def.'s App'x
A922-25 (Wood Dep.), A943 (LaCrosse Dep.), A956-57 (same), A1154-57 (Dep. of Eric Hothan
(Mar. 16, 2015)) ("Hothan Dep.").

and [CJIS].  It does not extend to the FBI New York office or the Quantico, Virginia facility.

*Id.* at A63, A591 (emphasis added).

On January 20, 2012, the USMS agreed to recommend to the Deputy Attorney General deputation of FBI police officers.  *Id.* at A590.[21]  The FBI's request was approved in early 2013.  *Id.* at A589 (deputations approved Jan. 17, 2013), A612 (deputations approved Mar. 11, 2013).

Third, the "History and Jurisdiction" section of the March 2011 version of the FBI's Manual of Police Operations referred to section 540C.  Pls.' App'x PL300.  The March 2011 manual stated that "[t]he FBI Police originally derived their legal authority from the United States Attorney General, who has the power to appoint uniformed Officers (with arrest power) under the authority vested in the Administrator of General Services (Title 40 § 1315)."  *Id.*  The manual then stated that "[a]dditional authority specific to the FBI Police is contained in Title 28 § 540C."  *Id.*  The primary author of the March 2011 manual was Major Scott Giroux, a police officer working for the FBI.  Def.'s App'x A1219.  The reference to section 540C in the manual has since been removed.  *Id.* at A1343-50 (Giroux Dep.).

Fourth, section 540C is listed as an "authority" along with two other statutes in FBI Policy Directive 0482D, which was issued on March 23, 2012.  *Id.* at A147, A168;

---

[21] The USMS stated that they were not aware of any authority to deputize retroactively, as the FBI had requested.  Def.'s App'x A590.

Pls.' App'x PL316.[22]  The policy directive, titled "Firearms in FBI-Controlled Facilities

and FBI Vehicles/Aircraft," permits police officers employed by the FBI to carry

firearms in FBI facilities, vehicles, and aircraft "as part of their statutory law enforcement

powers, if currently authorized to carry a firearm in connection with their duties."  Def.'s

App'x A147, A168; Pls.' App'x PL316.  The policy directive also specifies the security

screening responsibilities of police officers working for the FBI and contract security

guards.  Def.'s App'x A148, A169; Pls.' App'x PL317.  The policy directive further

discusses which other FBI employees and non-FBI employees may carry firearms in FBI

facilities and in FBI vehicles or aircraft.  Def.'s App'x A147-49, A168-70; Pls.' App'x

PL316-18.  The "sponsoring executive approval" was from the Security Division's

Assistant Director Love and the "final approval" was from T.J. Harrington, Associate

Deputy Director.  Def.'s App'x A149, A170; Pls.' App'x PL318.[23]

---

[22] Policy Directive 0482D also cites as authority 18 U.S.C. § 930 and 18 U.S.C. § 3052.  Def.'s App'x A147, A168; Pls.' App'x PL316.  Section 930 of Title 18 prohibits carrying a firearm in a federal facility but does not apply to "the lawful performance of official duties by an officer, agent, or employee of the United States, a State, or a political subdivision thereof, who is authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of any violation of law."  Section 3052 of Title 18 provides that:

> The Director, Associate Director, Assistant to the Director, Assistant Directors, inspectors, and agents of the Federal Bureau of Investigation of the Department of Justice may carry firearms, serve warrants and subpoenas issued under the authority of the United States and make arrests without warrant for any offense against the United States committed in their presence, or for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony.

[23] Policy Directive 0708D, titled "Entry and Exit Inspection Program" and issued August 8, 2014, describes the FBI police officers' inspection responsibilities and refers to Policy Directive 0482D in its description of when non-FBI personnel will and will not be screened for weapons.

Fifth, section 540C was mentioned in two Privacy Act notices on the FBI's website. The notice for visitors to FBI Headquarters stated that the FBI is authorized to collect information for security checks such as social security numbers, effective November 2013, "pursuant to one or more of the following provisions: Title 28, United States Code, sections 533 and 540C; Title 40, United States Code, section 1315(c); Title 28, Code of Federal Regulations, sections 0.75(p) and 0.79; and Title 41, Code of Federal Regulations, section 102-74, Subpart C, and sections 102-81-5, 102-81.10, and 102-81.15." Pls.' App'x PL336 ("Planning a Visit to FBI Headquarters"). The notice for visitors to the FBI Education Center, which the website says opened to the public in August 2014, stated that the FBI is authorized to collect information for security checks "pursuant to one or more of the following provisions: Title 28, United States Code, sections 533 and 540C; Title 28, Code of Federal Regulations, sections 0.75(p) and 0.79, Title 28 Code of Federal Regulations, section 102-81, and Department of Justice (DOJ) Order 2600.2D, Security Programs and Responsibilities (June 16, 2011)." *Id.* at PL338-39. According to Timothy W. McCants, who was the Unit Chief of the FBI's "Corporate Policy Office" until 2011, these notices would have been prepared by the FBI's Office of the General Counsel. *Id.* at PL172-73, PL217. The government states that these references to section 540C on the FBI's website have been removed. Def.'s Resp. 22 n.13.

---

Def.'s App'x A151-55; Pls.' App'x PL319-23. Policy Directive 0708D does not itself cite section 540C as an authority. Def.'s App'x A151-55; Pls.' App'x PL319-23.

### D.      Deposition Testimony and Declarations

After this litigation was initiated, the parties conducted over 20 depositions and

collected over 10 declarations and 1 affidavit.[24]  Everyone who would have had personal

knowledge regarding establishment of an FBI police force under section 540C states

under oath that the FBI Director did not take any action to implement the statute after

OMB and OPM raised objections in 2002.

In a declaration dated August 19, 2016, Valerie Parlave, Executive Assistant

Director of the FBI's Human Resources Branch, stated that "the FBI has never

implemented [section 540C], which authorizes the establishment of a 'permanent police

force.'"  Def.'s App'x A1396.  Since August 2014 Executive Assistant Director Parlave

has been the head of the FBI's Human Resources Branch, which oversees the FBI's

---

[24] *See* Def.'s App'x A1 (Decl. of Ronald J. Corvington (Oct. 31, 2007)), A5 (Decl. of John C. Bauer (May 21, 2015)), A32 (Senser Decl.), A58 (Conyngham Decl.), A66 (Weir Decl.), A81 (Decl. of Kevin C. Donovan (June 5, 2015)), A141 (Decl. of April D. Brooks (June 8, 2015)), A156 (Decl. of Timothy W. McCants (June 8, 2015)), A171 (Baker Decl.), A379 (Holly Decl.), A1394 (Parlave Decl.), A678 (King Dep.), A729 (Austin Dep.), A746 (Hays Dep.), A770 (Harris Dep.), A787 (Dep. of Kevin Donovan (Sept. 9, 2014)) ("Donovan Dep."), A1239 (same), A824 (Dep. of Erik Russel Neperud (Oct. 1, 2014)), A836 (Dep. of Patrick Gibbons (Oct. 10, 2014)) ("Gibbons Dep."), A1275 (same), A855 (Ramey Dep.), A875 (Wood Dep.), A933 (LaCrosse Dep.), A1030 (Paul Dep.), A1047 (Dep. of Scott J. Holtz (Mar. 4, 2015)) ("Holtz Dep."), A1381 (same), A1061 (Choi Dep. Mar. 10, 2015), A1292 (same), A1159 (Choi Dep. Apr. 14, 2015), A1075 (Giroux Dep.), A1300 (same), A1114 (Dep. of Timothy W. McCants (Mar. 12, 2015)) ("McCants Dep."), A1354 (same), A1128 (Hothan Dep.), A1369 (same), A1248 (Dep. of M. Drew Crislip (Sept. 12, 2014)) ("Crislip Dep."), A1284 (Dep. of Thomas Nunley (Oct. 15, 2014)) ("Nunley Dep."); Pls.' App'x PL1 (Austin Dep.), PL14 (Dep. of Jeffrey J. Berkin (Mar. 13, 2015)), PL50 (Crislip Dep.), PL55 (Donovan Dep.), PL62 (Gibbons Dep.), PL81 (Giroux Dep.), PL99 (Harris Dep.), PL108 (Hays Dep.), PL115 (Holtz Dep.), PL131 (Hothan Dep.), PL135 (King Dep.), PL140 (LaCrosse Dep.), PL167 (McCants Dep.), PL221 (Nunley Dep.), PL243 (Paul Dep.), PL253 (Ramey Dep.), PL260 (Thompson Dep.), PL272 (Dep. of Robert Tomasik (Mar. 9, 2015)), PL286 (Wood Dep.), PL340 (Aff. of Scott Giles (Jan. 28, 2008)); Pls.' Reply App'x 1 (Hays Dep.), 7 (King Dep.), 12 (Austin Dep.), 18 (Thompson Dep.), 25 (Paul Dep.) (ECF No. 166-1).

Security Division, Human Resources Division, and Training Division. *Id.* at A1394-95.
Executive Assistant Director Parlave further stated that the FBI's Human Resources
Division handles the appointments of all new FBI employees and to her knowledge, "no
current or former Director of the FBI ever has appointed any employee (including any
FBI police officer) to a position under section 540C." *Id.* at A1395-96.  With regard to
the legal authority for plaintiffs' appointments, Executive Assistant Director Parlave
stated that as shown in plaintiffs' SF-50 personnel forms, the FBI generally includes a
reference to 28 U.S.C. § 536, which states that all positions in the FBI are excepted from
the competitive service. *Id.* at A1400.  Executive Assistant Director Parlave also noted
that police officers working for the FBI are paid pursuant to the GS pay system and not
the "LE" pay plan applicable to the Secret Service Uniformed Division. *Id.* at A1400-01.
Executive Assistant Director Parlave further noted that "[t]he FBI has not promulgated
any regulations pursuant to section 540C." *Id.* at A1403.

In declarations submitted by the heads of the FBI's Security Division, which
oversees police officers working for the FBI, each stated that the FBI Director never
established the FBI police as authorized under section 540C or made any other effort to
implement the statute.  From 2001 to September 2003, the FBI's Security Division was
led by Assistant Director Kenneth Senser. *Id.* at A32.  In a declaration dated May 21,
2015, Assistant Director Senser stated that, to his knowledge, "the Director of the FBI did
not establish the police force under Section 540C and did not take any other steps to
implement the statute during [Mr. Senser's] tenure." *Id.* at A34.  Assistant Director
Senser was succeeded as Assistant Director by Charles Phalen, *id.* at A83, and then

Roland Corvington, *id.* at A2.  In a declaration dated October 31, 2007, Assistant Director Corvington stated that "no portion of [section 540C] was implemented" due to concerns raised by OMB and OPM.  *Id.* at A4 (Decl. of Ronald J. Corvington (Oct. 31, 2007)) ("Corvington Decl.").  Assistant Director Corvington was followed as Assistant Director for the FBI's Security Division by Jennifer Love, who signed the December 12, 2011 letter to the USMS stating that "[a]lthough [section] 540C provides the FBI Director the authority to establish a police force to protect all FBI facilities, the statute is discretionary in nature" and that "[s]ection 540C was never implemented by the FBI." *Id.* at A63, A591.  In 2014, April D. Brooks served as Acting Assistant Director.  *Id.* at A141.  In a declaration dated June 8, 2015, Acting Assistant Director Brooks stated that her understanding was that section 540C "provides that the Director of the FBI, under the supervision of the Attorney General, may establish a police force with certain pay and benefits to be provided by regulation" and that police officers working for the FBI do not derive their authority from section 540C "because no portion of the statute has been implemented."  *Id.* at A142 (Decl. of April D. Brooks (June 8, 2015)) ("Brooks Decl."). In a declaration dated June 18, 2015, Clifford Holly, Assistant Director for the FBI's Security Division in 2015, stated that he also understood that "the Director of the FBI has not exercised his discretion to establish the police force authorized by [section 540C]." *Id.* at A381.  Assistant Director Holly also noted that "[t]he FBI has not promulgated any regulations to implement [section 540C's] provisions" and "[b]ecause [section 540C] was not implemented, the Security Division does not regard the statute as having any bearing on the existing FBI Police."  *Id.*

From October 2009 to November 2012 Colleen Conyngham was Section Chief of the Security Division's Security Operations Section, which directly oversees the police officers working for the FBI. *Id.* at A58. In a declaration dated May 27, 2015, Section Chief Conyngham also stated that a permanent FBI police force under section 540C was never established or implemented. *Id.* at A59. Section Chief Conyngham stated that based on conversations in 2010 with the FBI's Human Resources Division and the Assistant Director of the Security Division at the time, Michael J. Folmar, Section Chief Conyngham understood that "the FBI did not, and has not, implemented [section] 540C." *Id.*

Heads of the FBI Police Unit also provided declarations to the same effect. The Unit Chief in 2002 was Roger Martz, who was succeeded by Kevin Donovan, James Ramey, A. Artha Wells, Patrick M. Gibbons, Derek Fuller, and Peter Orchard. *Id.* at A67, A142, A598, A859, A931-32. In a declaration dated June 5, 2015, Acting Unit Chief Donovan stated that he "understood, primarily based on [information provided by the FBI's Administrative Services Division] that no portion of 28 U.S.C. § 540C had been implemented, and that it was unlikely to be implemented in the future. I do not recall anyone suggesting . . . that 28 U.S.C. § 540C would be implemented." *Id.* at A86. Acting Unit Chief Donovan expressed the same view in a deposition which took place on September 9, 2014. *Id.* at A797. In a deposition conducted on October 16, 2014, Unit Chief Ramey, who was head of the police officers unit from August 2003 to May 2006, stated that the question "is the FBI going to do anything with this law" had been "asked and answered" and the answer was "[n]o." *Id.* at A859-61. In a deposition conducted on

October 10, 2014, Unit Chief Gibbons, who was head of the FBI police unit from

November 2005 to February 2010, Pls.' App'x PL65, also stated his understanding that

40 U.S.C. § 1315 provides the authority for police officers working for the FBI to protect

certain FBI-controlled spaces and that it was "fairly well known by the command

structure and management that that's the . . . portion of the law that permits the FBI

Police to do its job and to effect the laws and protection." Def.'s App'x A844, A848-

49.[25]  In a declaration dated June 3, 2015, D. Joseph Weir, who served as Deputy Unit

Chief from March 2006 to October 2007, stated that his "understanding was, and is, the

FBI did not implement 28 U.S.C. § 540C." Id. at A67.

The FBI's supervisory police officers have similar recollections.  In a deposition

conducted March 2, 2015, Major Thomas J. LaCrosse, a plaintiff in this litigation who

was a police officer with the FBI from April 2005 to December 2007, recalled the

December 2006 meeting with FBI Director Mueller and understood from the FBI

Director's comments at that meeting that the FBI Director had not made a determination

to establish a police force under section 540C.  Pls.' App'x PL158.  Major LaCrosse

stated that he had never been told that the FBI Director decided to implement section

540C or seen any documents indicating that the Director had made any determination as

to the implementation of section 540C.  Id. at PL159-60, PL164.  The only

communications Major LaCrosse "ever received that indicated that 540C had been

---

[25] Unit Chief Gibbons also noted that there was a period of time when police officers working for
the FBI conducted protective duties at other locations without deputations by USMS based on
the USMS's "legal analysis." Pls.' App'x PL66, PL71.

implemented" were the September 24, 2004 memorandum written by the Investigative

Law Unit of the FBI's Office of the General Counsel and the March 23, 2012 Policy

Directive 0482D regarding "Firearms in FBI-Controlled Facilities and FBI

Vehicles/Aircraft." *Id.* at PL159-60.  In a deposition conducted March 11, 2015, Major

Scott Giroux, who has been a supervisory police officer responsible for administrative

matters since May 2006 and is also a plaintiff in this case, stated that he was never told

that the FBI Director had made a determination to implement section 540C.  Def.'s

App'x A1108.  The only document Major Giroux was aware of that referenced section

540C was FBI Policy Directive 0482D regarding "Firearms in FBI-Controlled Facilities

and FBI Vehicles/Aircraft." *Id.* at A1109.  Major Giroux was not aware of any police

officers appointed as "FBI Police" pursuant to section 540C.  *Id.*  In a deposition

conducted February 25, 2015, Captain Kevin R. Wood, a plaintiff who has worked at the

FBI for over 27 years and who has also been responsible for administrative matters as a

supervisory police officer, stated that he was not aware of any documents stating that the

FBI Director had made a decision to implement section 540C or that FBI had

implemented section 540C.  *Id.* at A917.  In a deposition conducted March 3, 2015,

Captain Roger L. Paul, a plaintiff who supervised police officers working for the FBI at

Quantico from January 2006 to September 2012, also did not recall ever being told that

the Director of the FBI had decided to implement section 540C, was not aware of any

document stating that the FBI Director had implemented section 540C, and was not

aware of any appointments made pursuant to section 540C.  *Id.* at A1041-42.  Captain

Eric Hothan, a plaintiff in this case who has supervised police officers at the FBI's New

York field office since May 2005, stated the same in his deposition conducted March 16, 2015.  *Id.* at A1142-43, A1373.  Scott J. Holtz, a Supervisory Special Agent who served as Assistant Unit Chief for police officers at FBI headquarters from March 2010 to September 2011, stated the same in his deposition conducted March 4, 2015.  *Id.* at A1053, A1390-91.[26]

In a declaration dated May 21, 2015, John C. Bauer, former Unit Chief for the FBI's Administrative Services Division's Personnel Policy Unit, stated that in light of the objections by OMB and OPM, "implementing [section 540C] was not pursued."  *Id.* at A8 (Decl. of John C. Bauer (May 21, 2015)) ("Bauer Decl.").  Former Unit Chief Bauer also stated in his declaration that in June 2003 he became Chief of the Position Management Unit, which was responsible for "position classification and position

---

[26] In responses to interrogatories and requests for admissions and documents, most of the named plaintiffs themselves acknowledge that the FBI Director never formally established an FBI police force pursuant to section 540C.  Def.'s App'x A674, A1235-37 (denied by plaintiff Kevin J. Harris on the grounds that he has "seen FBI documents that indicate our authority comes from 540C"); *see also id.* at A714 (King Dep.), A780-81 (Harris Dep.); Pls.' App'x PL106 (Harris Dep.).  The plaintiffs are unaware of any instance in which the FBI Director indicated, to the plaintiffs or anyone else, that section 540C had been implemented or will be implemented. Def.'s App'x A1236; *see also id.* at A740-41 (Austin Dep.); Pls.' App'x PL11 (Austin Dep.). The plaintiffs also acknowledge that the FBI has not promulgated regulations pursuant to section 540C regarding duties or pay and benefits for "FBI Police."  Def.'s App'x A668, A1234-37 (denied by plaintiff Kevin J. Harris on the grounds that he has "seen FBI documents that indicate our authority comes from 540C").  Finally, the plaintiffs recognize that they have not been appointed as FBI police under section 540C.  *Id.* at A1234, A1236 (denied by plaintiff Kevin J. Harris on the grounds that "I feel that the Director and his representatives, through their actions, have appointed uniformed representatives of the FBI as FBI police under 540C . . . such as detail assignments where FBI Police officers . . . have been sent without deputation.  Absent 540C we had no legal authority during these details.").

management mat[t]ers within the FBI" and "had no further involvement with any issues related to FBI police pay."  *Id.*

Jeffrey J. Berkin, who was a Deputy Assistant Director of the Security Division, was designated as a representative for the FBI pursuant to RCFC 30(b)(6).  *Id.* at A82-83; Pls.' App'x PL18-19.  In preparation his deposition, which was conducted March 13, 2015, Mr. Berkin spoke with several former FBI officials, including former FBI Director Robert Mueller and former Assistant Director Charles Phalen.  Pls.' App'x PL20. According to Mr. Berkin, former FBI Director Mueller did not recall establishing a permanent police force pursuant to section 540C.  *Id.* at PL41.  Former FBI Director Mueller stated that the "totality of his recollections" was that "there was some obstacle or obstacles, which he could not recollect, to the actual implementation" of section 540C. *Id.*  Former FBI Director Mueller "thought he might have met with [police officers working for the FBI] in West Virginia at some point in time."  *Id.*  However, "[h]e had no recollection of discussing [section 540C] with anybody apart from . . . an awareness that some roadblocks had occurred, which he could not recall those specifics of."  *Id.* at PL47. Former FBI Director Mueller "couldn't recall anything particular about it, including any meetings he may have had or anything else."  *Id.*  Also according to Mr. Berkin, Assistant Director Phalen stated that he "knew that efforts had been undertaken . . . prior to his arrival at the FBI . . . to either implement [section 540C] or institute legislation which would achieve some of [section 540C's] objectives, particularly in the area of jurisdiction."  *Id.* at PL38.  Mr. Berkin stated that "to that end," Assistant Director Phalen

recalled meeting with a DOJ official who "advised Mr. Phalen that [DOJ] would not support [section 540C]." *Id.*

### E.     Procedural History

The plaintiffs filed their complaint in this court on August 2, 2007. The plaintiffs based their claim for back pay on section 540C. On May 18, 2008, the court denied the government's motion to dismiss for lack of jurisdiction on the grounds that section 540C had not been implemented. *See King v. United States*, 81 Fed. Cl. 766, 770 (2008). The court explained that that "[t]he question of implementation of 28 U.S.C. § 540C appears to the court to implicate the merits issue of whether plaintiffs are persons in fact entitled to pay under that statute." *Id.* at 770 n.1.

The court granted the plaintiffs' motion for class certification on September 26, 2008. *See King v. United States*, 84 Fed. Cl. 120 (2008). In accordance with precedent, the court explained that in granting class certification the court had to "assume" that plaintiffs were in fact police officers under section 540C. *Id.* at 122. The court did not rule on whether the plaintiffs were in fact police officers under section 540C. The class was thus defined as:

> All employees of the United States who were or are employed as a member of the FBI police during at least one pay period beginning after January 1, 2003, and who did not receive pay and benefits equivalent to the pay and benefits applicable to members of the United States Secret Service Uniformed Division as required by 28 U.S.C. § 540C.

*King*, 84 Fed. Cl. at 128-29.

The parties engaged in extensive discovery. After briefing on the parties' cross-motions for summary judgment (ECF Nos. 145, 154) and supplemental briefing (ECF

Nos. 170, 171), the court heard oral argument on June 21, 2016.  Following oral

argument the court ordered additional briefing, which was completed November 14, 2016

(ECF Nos. 178, 185).

## II.    LEGAL STANDARDS

Under RCFC 56, this court grants summary judgment "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." *Balestra v. United States*, 803 F.3d 1363, 1368 (Fed. Cir. 2015)

(quoting RCFC 56(a)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48

(1986).  A dispute is "genuine" if a reasonable trier of fact could find for the nonmoving

party.  *Anderson*, 477 U.S. at 248-50.  A fact is material if it could "affect the outcome of

the suit under the governing law."  *Id.* at 248.[27]  In this connection, a bald assertion of

fact is not sufficient to create a genuine issue of material fact.  Mere denials or

conclusory statements without evidentiary support are not sufficient to create a genuine

issue of material fact.  *See Mingus Constructors, Inc. v. United States*, 812 F.2d 1387,

1390-91 (Fed. Cir. 1987) (citing *Barmag Barmer Maschinenfabrik AG v. Murata

Machinery, Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984)).

This court has jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), to hear

"any claim against the United States founded either upon the Constitution, or any Act of

---

[27] In order to show that that a fact cannot be or is genuinely disputed, a party must cite "particular parts of materials in the record," such as depositions or declarations, or show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  RCFC 56(c)(1).  Under RCFC 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."

Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  The Supreme Court and the Federal Circuit have explained that "[t]he Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages" or is "money mandating."  *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part) (citations omitted).  The Federal Circuit has found that the Back Pay Act, 5 U.S.C. § 5596, is a money-mandating source of law "when based on violations of statutes or regulations covered by the Tucker Act."  *Hall v. United States*, 617 F.3d 1313, 1318 (Fed. Cir. 2010) (quoting *Worthington v. United States*, 168 F.3d 24, 26 (Fed. Cir. 1999)).[28]  This court previously found that section 540C if implemented is money-mandating and therefore a back pay claim based on a violation of section 540C would fall within the court's jurisdiction.  *See King*, 81 Fed. Cl. at 770-71.  However, if section 540C has not been implemented, the plaintiffs' claim for back pay must fail.

## III.   DISCUSSION

At the outset, this case must be decided on the fundamental principle that clear and unambiguous statutes speak for themselves and unambiguous words in statutes should be

---

[28] Under the Back Pay Act, "[a]n employee of an agency who . . . is found by appropriate authority under applicable law . . . to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee" is entitled to receive the pay he or she would have received if the personnel action had not occurred.  5 U.S.C. § 5596(b)(1).

given their plain and commonly understood meaning. "If the statutory language is unambiguous and 'the statutory scheme is coherent and consistent'—as is the case here— '[t]he inquiry ceases.'" *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)). Here, the court finds that the language of section 540C is clear and unambiguous and that under section 540C in order to prevail on their pay claim the plaintiffs needed to establish that the three pre-conditions for pay set in section 540C were met. First, the plaintiffs needed to prove that FBI Director exercised the discretion provided in section 540C(b)(1) and established a permanent FBI police force. Second, the plaintiffs needed to prove that the FBI implemented the FBI Director's decision by promulgating the regulations required under section 540C(b)(4) and (b)(5) with regard to the duties and responsibilities of the FBI police force officers and pay and benefits. Third, the plaintiffs needed to establish that the FBI Director, or a designated representative authorized by the Attorney General, had in fact "appointed" each plaintiff to the permanent FBI police force as required by section 540C(b)(3). The lengthy recitation of facts demonstrates that the plaintiffs have failed to provide evidence to show that each of the three pre-conditions for payment were met and thus the plaintiffs' motion for summary judgment must be denied. Moreover, the government has succeeded in presenting undisputed evidence showing that the pre-conditions for payment under section 540C were not met. Thus, the government's motion for summary judgment is granted.

A.      **The FBI Director Never Established a Permanent FBI Police Force
Under Section 540C.**

To begin, the court finds that section 540C required the FBI Director to take

express action to establish a permanent FBI police force under section 540C.  By its

terms, section 540C gives the Director of the FBI and the FBI Director alone the

discretion to establish a permanent police force.  The statute states that "[s]ubject to the

supervision of the Attorney General, the Director [of the FBI] may establish a permanent

police force, to be known as the FBI police."  28 U.S.C. § 540C(b)(1).  Because the

statute uses the word "may," the decision to establish a permanent police force is left to

the discretion of the FBI Director.  *See, e.g.*, *Kingdomware*, 136 S. Ct. at 1977 ("Unlike

the word 'may,' which implies discretion, the word 'shall' usually connotes a

requirement." (citations omitted)).  Therefore, the plaintiffs' suggestion that a permanent

FBI police force under section 540C could be established without express action by the

FBI Director fails.  Section 540C required the Director of the FBI to exercise his

discretion to establish a permanent FBI police force.

The undisputed evidence shows that the FBI Director never exercised his

discretion to establish a permanent FBI police force under section 540C.  In December

2002, soon after section 540C was enacted, FBI staff went to OMB and OPM for the

authorities and funding needed for the FBI Director to establish an FBI police but did not

receive the necessary approvals.  Def.'s App'x A505.  The undisputed evidence shows

that FBI Director Robert Mueller then asked Attorney General John Ashcroft to appeal

OMB's refusal to allow the FBI to implement section 540C, but that DOJ apparently did

not challenge OMB's decision. *Id.* at A512-14, A516.  Following these actions, the

undisputed evidence shows that in March 2003, in response to a complaint submitted by

the police officers at the FBI's CJIS regarding their pay and benefits, *id.* at A16-31, the

FBI's Administrative Services Division explained that section 540C "provided the [FBI]

Director discretion to establish an FBI Police Force" and indicated that the FBI Director

had not done so based on opposition from OMB and OPM.  *Id.* at A11-12.  The FBI

Director's failure to establish an FBI police force pursuant to section 540C is then

repeated in every formal communication about the subject by the FBI and DOJ internally

and to persons outside the FBI.  For example, in a July 2003 internal FBI communication,

Acting Unit Chief for police officers Kevin Donovan stated as "fact" that "the FBI has

not implemented" section 540C.  *Id.* at A47.  In April 2004, DOJ's Assistant Attorney

General for Legislative Affairs explained in a letter to Senator Paul Sarbanes, who had

received letters from police officers working for the FBI, that "the Director of the FBI has

chosen not to exercise his discretion to establish the new FBI police force" pursuant to

section 540C.  *Id.* at A537, A539.  In August 2005, FBI General Counsel Valerie Caproni

wrote in a memorandum to the Assistant Director of the FBI's Security Division, which

oversees police officers working for the FBI, that while section 540C authorized the FBI

Director to establish a permanent police force with pay and benefits applicable to

members of the Secret Service Uniformed Division, the FBI Director "however, has not

implemented this authority." *Id.* at A1185.  In December 2006, FBI Director Mueller met

with police officers working for the FBI.  *Id.* at A67-70, A73-75, A559-63.  Background

information for the December 2006 meeting and FBI Director Mueller's prepared

remarks regarding section 540C state that "the FBI did not implement the legislation," in part due to opposition from DOJ and OPM.  *Id.* at A563 (prepared remarks); *see also id.* at A73 (background information).  In declarations and depositions taken during this litigation, the heads of the FBI's Human Resources Branch, Security Division, Security Operations Section, and police unit, and the plaintiffs themselves, agree that there is no evidence that the FBI Director took any action to establish a permanent police force under section 540C.  *Id.* at A4 (Corvington Decl.), A8 (Bauer Decl.), A34 (Senser Decl.), A59 (Conyngham Decl.), A67 (Weir Decl.), A86 (Donovan Decl.), A142 (Brooks Decl.), A381 (Holly Decl.), A797 (Donovan Dep.), A859-61 (Ramey Dep.), A844-49 (Gibbons Dep.), A917 (Wood Dep.), A1041-42 (Paul Dep.), A1053 (Holtz Dep.), A1108-09 (Giroux Dep.), A1142-43 (Hothan Dep.), A1390-91 (Holtz Dep.), A1396 (Parlave Decl.); Pls.' App'x PL158-64 (LaCrosse Dep.); *see also* Def.'s App'x A674 (plaintiffs' admission that the FBI Director never formally established an FBI police force pursuant to section 540C), A1235-37 (denial by plaintiff Kevin J. Harris on the grounds that he has "seen FBI documents that indicate our authority comes from 540C"), A714 (King Dep.), A780-81 (Harris Dep.); Pls.' App'x PL106 (Harris Dep.); *cf.* Def.'s App'x A1236 (plaintiffs' admission that they are unaware of any instance in which the FBI Director indicated, to the plaintiffs or anyone else, that section 540C had been implemented or will be implemented), A740-41 (Austin Dep.); Pls.' App'x PL11 (Austin Dep.).  Finally, the RCFC 30(b)(6) deposition of former Deputy Assistant Director of the FBI's Security Division Jeffrey Berkin confirms that former FBI Director Mueller himself does not recall establishing a permanent police force under section 540C.  Pls.' App'x PL41,

PL47.[29]   There is simply no evidence to show the FBI Director exercised his discretion to establish an FBI police force.

The plaintiffs claim that the FBI Director must have approved the establishment of a permanent FBI police force based on several references to section 540C in FBI memoranda and on the FBI website and the fact that police officers working for the FBI were carrying out certain duties identified in section 540C.  This assertion is not legally supported.  Because the plain language of section 540C requires the FBI Director to exercise discretion, the court cannot infer from references to section 540C in various documents written by the FBI's Security Division and lower-level staff in the General Counsel's Office that the FBI Director approved the creation of a permanent FBI police force.[30]   First, there is no evidence that the FBI Director was aware of these statements.  More importantly, the plaintiffs' argument runs counter to the FBI Director's statements

_____

[29] Plaintiffs' reliance on the statements in the RCFC 30(b)(6) deposition of Jeffrey Berkin that FBI Director Mueller recalled  "some . . . obstacles" to the implementation of section 540C to suggest that Director Mueller might have established an FBI police force under section 540C but failed to tell anyone or recollect doing so, is unavailing.  The plaintiffs provide no support for their contention that because FBI Director Mueller did not say that he did *not* establish a permanent police force under section 540C, he must have done so.  Rather, FBI Director Mueller's recollection of "obstacles" is consistent with the evidence which shows that because of obstacles to creating an FBI police force under section 540C, it was not established.

[30] As discussed above, these references to section 540C deal primarily with the scope of police officers' authority to conduct protective activities and carry weapons on-duty and off-duty.  Pls.' App'x PL316 (FBI Policy Directive 0482, regarding "Firearms in FBI-Controlled Facilities and FBI Vehicles/Aircraft" (Mar. 23, 2015)), PL324-27 (memorandum from the Investigative Law Unit of the FBI's Office of the General Counsel to "Security" regarding a proposed "FBI Police Weapons Off Duty Carry Policy" (Sept. 24, 2004)).  The references to section 540C in Privacy Act notices on the FBI's website, regarding the FBI's authority to collect information from visitors, *id.* at PL336, PL338-39, and in the FBI's "Manual of Police Operations," regarding "[a]dditional authority specific to the FBI Police," *id.* at PL300, have been removed.  Def.'s Resp. 22 n.13; Def.'s App'x A1343-50 (Giroux Dep.).

and the statements of individuals who would have had personal knowledge about the

establishment of a permanent police force under section 540C as outlined above.

Statements by persons who were not authorized cannot bind the FBI Director.  *See Office*

*of Personnel Management v. Richmond*, 496 U.S. 414, 420 (1990) (citing *Federal Crop*

*Insurance Corp. v. Merrill*, 332 U.S. 380 (1947)).[31]

  For the same reason, the plaintiffs' contention that the FBI Director must have

authorized a permanent police force when the FBI allowed police officers to carry out

duties identified in section 540C after the USMS decided not to deputize FBI police

officers in January 2007 fails.  The plaintiffs argue that the FBI's failure to respond

earlier to the USMS' January 2007 letter "cannot be attributed to mere administrative

oversight" and "only makes sense in the context of the FBI having established a Police

Force under 28 USC § 540C."  Pls.' MSJ 46.  In support the plaintiffs cite Rule 801(d)(2)

of the Federal Rules of Evidence, which excludes from the definition of "hearsay" a

statement that is offered against an opposing party and "is one the party manifested that it

adopted or believed to be true."  *See also Westfed Holdings, Inc. v. United States*, 55 Fed.

Cl. 544, 565 (2003) (applying Rule 801(d)(2)), *aff'd in part, rev'd in part*, 407 F.3d 1352

---

[31] The court also finds that even if FBI Assistant General Counsel Jung-Won Choi stated in annual legal training for FBI police officers that deputations were not necessary as the officers were covered under section 540C, it would not show that the FBI had actually implemented the statute.  Mr. Choi was not authorized to establish an FBI police force under section 540C.  Thus, whether police officers working for the FBI saw or did not see Mr. Choi's PowerPoint slide, or heard or did not hear his explanation that section 540C had not been implemented, is irrelevant to the critical question in this case of whether the FBI Director established a permanent police force under section 540C, issued regulations, or appointed "FBI police."  Therefore, this issue of fact, while disputed, is not material because its resolution will not affect the outcome of the suit. *See Anderson*, 477 U.S. at 248.

(Fed. Cir. 2005).  Plaintiffs' argument is without merit given the FBI's later

correspondence with the USMS which plainly states that the FBI Director had not

established a police force under section 540C.  The December 12, 2011 letter by

Assistant Director Jennifer Love explained that section 540C "is discretionary in nature"

and stated that "[s]ection 540C was never implemented by the FBI, because among other

reasons, it would have required the FBI to create its own pension system, which it has

never done."  Def.'s App'x A63, A591.  As such, the statements by persons within the

USMS who were not authorized to act on behalf of the FBI Director cannot bind the FBI.

*See Richmond*, 496 U.S. at 420; *Merrill*, 332 U.S. at 384; *Schism*, 316 F.3d at 1286.[32]

Without evidence that the FBI Director affirmatively exercised his discretion to

create an FBI police force, the plaintiffs cannot prevail on their claim for pay under

section 540C.  In addition, the plaintiffs' denials and conclusory statements to suggest

that the FBI Director by implication must have established a permanent police force

under section 540C are not sufficient to create a genuine issue of material fact.  *See*

*Mingus Constructors*, 812 F.2d at 1390-91 (citing *Barmag Barmer*, 731 F.2d at 836).  To

the contrary, the undisputed evidence demonstrates that the FBI's efforts to implement

section 540C were thwarted by DOJ, OMB, and OPM.  The undisputed evidence shows

that the FBI was not able to convince DOJ to appeal OMB's decision to stop the FBI

---

[32] To the extent the plaintiffs are arguing that the FBI Director must have established a permanent police force pursuant to section 540C because otherwise certain police officers working for the FBI might have acted without authority, it does not mean such a police force was established.  The court agrees with the government that it would only mean police officers working for the FBI might have taken actions without authority.  *See* Def.'s Resp. 19.

from implementing section 540C and to possibly seek repeal of the legislation.  Indeed, the undisputed evidence shows that for years, the FBI acknowledged these obstacles to establishing a police force and at various times considered administrative and legislative alternatives for expanding the jurisdiction of police officers working for the FBI and improving their pay and benefits.  Thus, the court agrees with the government that the plaintiffs have failed to prove that the FBI Director established an FBI police force under section 540C.

**B.    The Undisputed Evidence Shows that Regulations Implementing the Duties and Pay Provisions of Section 540C were Never Promulgated.**

As discussed above, section 540C mandated that the FBI promulgate regulations to implement the statute's provisions regarding duties and pay for the permanent FBI police force.  The plaintiffs' failure to offer any evidence to show that the FBI ever promulgated regulations to implement section 540C is also fatal to their back pay claim. The undisputed facts demonstrate that the FBI never issued regulations implementing either the duties or pay provisions of section 540C.

Section 540C states the following with regard to implementing regulations:  First, "[i]n accordance with regulations prescribed by the Director and approved by the Attorney General, the FBI police may" conduct certain protective duties.  28 U.S.C. § 540C(b)(4)(A).  As noted above, under the statute the regulations prescribed by the FBI Director and approved by the Attorney General "may" allow the "FBI police [to] police the FBI buildings and grounds . . .  make arrests and otherwise enforce the laws of the United States . . .  carry firearms as may be required . . . prevent breaches of the peace . . .

and hold the same powers of sheriffs and constables policing FBI buildings and grounds." *Id.* at § 540C(b)(4).  Second, the statute states that "[p]ay and benefits for the FBI police . . . shall be established by regulation."  *Id.* § 540C(b)(5)(B)(i).

The plaintiffs do not dispute that regulations authorizing them to perform various police duties or establishing pay and benefits were never promulgated.  Def.'s App'x A668 (plaintiffs' admission that the FBI has not promulgated regulations pursuant to section 540C regarding duties or pay and benefits for "FBI Police"), A1234-37 (denial by plaintiff Kevin J. Harris on the grounds that he has "seen FBI documents that indicate our authority comes from 540C").  The plaintiffs instead argue that they are entitled to the pay authorized by section 540C without implementing regulations on the grounds that they have been performing some of the duties described in section 540C.  They argue that section 540C must be self-implementing and that under the principles discussed by the Supreme Court in *Massachusetts v. EPA*, 549 U.S. 497 (2007), an agency cannot escape its legal obligations by deciding not to issue regulations.  *See* Pls.' Reply 3.

The plaintiffs' reliance on *Massachusetts v. EPA* is misplaced.  In that case, the Supreme Court found that the EPA did not have discretion not to act under certain provisions of the Clean Air Act.  *See Massachusetts*, 549 U.S. at 533-35.  Here, in contrast, section 540C expressly gives the Director of the FBI the unfettered discretion to establish or not establish a "permanent police force."  In such circumstance, *Massachusetts v. EPA* has no relevance to this case.  Any obligation to promulgate regulations would come into effect only if an FBI police force was established by the FBI

45

Director.  Here, as discussed above, the FBI Director did not elect to establish the FBI

police force authorized under section 540C.

To the extent that plaintiffs contend that the FBI memoranda they rely on are the

equivalent of FBI regulations for the purposes of section 540C, their argument also fails.

The Federal Circuit has recently held that where pay regulations are required, the

government cannot be liable for additional pay until the regulations are promulgated.  *See*

*Acevedo v. United States*, 824 F.3d 1365, 1368-70 (Fed. Cir. 2016) (citing *Roberts v.*

*United States*, 745 F.3d 1158, 1162 (Fed. Cir. 2014)).  In *Acevedo*, 824 F.3d at 1367,

employees of United States Customs and Border Protection claimed that they were

entitled to "danger pay" for work performed in posts of duty that the United States

Department of State has designated as eligible for such allowances.  The Federal Circuit

found that the "danger pay statute," 5 U.S.C. § 5928, standing alone, is not money-

mandating because it states that "[a]n employee serving in a foreign area *may be granted*

a danger pay allowance."  *Id.* at 1369 (emphasis in original).  In addition, the Federal

Circuit found that the Department of State Standardized Regulations ("DSSR") is not

money-mandating, at least with respect to danger pay, because the DSSR contemplates

further regulations issued by agency heads.  *Id.* (citing DSSR § 013, which provides in

relevant part that "the head of an agency may issue such further implementing regulations

as he/she may deem necessary").  The plaintiffs argued that the agency had an unwritten

policy of paying danger pay as expressed in "letters and emails from various officials."

*Id.* at 1370.  The Federal Circuit concluded that the plaintiffs "failed to establish the

existence of agency regulations or a formal agency policy" that would have implemented

the statute, mandated the payment of compensation, and made the plaintiffs in that case eligible for higher pay. *Id.* at 1368-70. Because no such regulations had been issued, the court lacked jurisdiction to hear the plaintiffs' danger pay claim. *Id.* at 1370.

In this connection, the fact that section 540C uses the word "shall" with regard to promulgation of pay regulations is of critical importance. Section 540C required pay regulations to be promulgated before higher pay would be authorized. Because pay regulations under section 540C were never promulgated, even if the plaintiffs had shown that the Director of the FBI had established a permanent FBI police force, the plaintiffs would not be able to demonstrate a right to pay at the rates paid to members of the Secret Service Uniformed Division.

**C.    The Plaintiffs Have Not Shown that Any Police Officer was "Appointed" to a Permanent FBI Police Force Under Section 540C.**

Finally, the court notes that the undisputed evidence shows that no plaintiff was ever "appointed" to the FBI police under the authority identified in section 540C. To the contrary, the plaintiffs recognize that they were appointed under the legal authority established in 28 U.S.C. § 536, which states that "[a]ll positions in the [FBI] are excepted from the competitive service." Def.'s App'x A1234 (plaintiffs' admission they have not been appointed as FBI police under section 540C), A1236 (denied by plaintiff Kevin J. Harris on the grounds that "I feel that the Director and his representatives, through their actions, have appointed uniformed representatives of the FBI as FBI police under 540C . . . such as detail assignments where FBI Police officers . . . have been sent without deputation. Absent 540C we had no legal authority during these details."); *see also id.* at

A1394-1403 (Parlave Decl.), A1416-80 (SF-50s); Def.'s Suppl. App'x (additional SF-50s).  The plaintiffs' positions have been classified under the GS pay system occupational series for federal police officers, GS-0083.  *See* Def.'s App'x A1394-1403, A1416-80; Def.'s Suppl. App'x.  They have been paid under the special salary table established in 2003 for certain federal police officers.  Def.'s App'x A642-46 (plaintiffs' responses to interrogatories), A682 (King Dep.), A734 (Austin Dep.), A753-54 (Hays Dep.), A774-75 (Harris Dep.).

In such circumstances, the plaintiffs' argument boils down to a claim for higher pay based on their allegation that a person performing some or all of the police duties identified in section 540C is entitled to the rate of pay provided to members of the Secret Service Uniformed Division under section 540C.  The government argues that because section 540C was never implemented, plaintiffs' argument must be rejected.  The government argues that until the FBI Director establishes a police force under section 540C, the statute is implemented through regulations, and individuals are expressly appointed to the FBI police force, no one is eligible for the pay set in section 540C.  According to the government, under the Supreme Court's decision in *United States v. Testan*, 424 U.S. 392 (1976), a federal employee is only entitled to be paid for the position he or she was appointed to serve.  Here, because none of the pre-conditions for pay at the same rates as the Secret Service Uniformed Division have been met, the government argues that the plaintiffs have no claim to pay at those rates.

The court agrees with the government.  Because a permanent FBI police force was never established by the FBI Director, and section 540C was never implemented through

regulations, the plaintiffs could not have been "appointed" to the police force under section 540C(b)(3) and have no claim to payment under section 540C based solely on the ground that they are performing duties identified in section 540C.

A federal employee is entitled only to the salary and benefits associated with the position to which he or she has been appointed.  In *Testan*, 424 U.S. at 402, the Supreme Court made clear that regardless of whether a federal employee is doing work at a higher or different grade than the one assigned, the employee does not have a right to more pay unless and until the employee is appointed to a position at the correct grade.  The *Testan* Court found that a "federal employee is entitled to receive only the salary of the position to which he was appointed, even though he may have performed the duties of another position or claims that he should have been placed in a higher grade."  *Id.* at 406.

In this case, after lengthy discovery, the plaintiffs have not identified any evidence to show that any police officers working for the FBI ever received an appointment under section 540C.  The Federal Circuit has expressly rejected efforts by federal employees, like the police officers here, to claim, in effect, "de facto" appointments.  Following *Testan*, the Federal Circuit has made it plain that federal employees are entitled only to the pay and benefits established in their appointment.  Where a federal employee believes that he or she has been misclassified, he or she must first resolve the classification or promotion issues before the employee can be entitled to back pay, to the extent their classification is made retroactive.  For example, in *Spagnola v. Stockman*, 732 F.2d 908, 908-09 (Fed. Cir. 1984), the Federal Circuit found that a federal employee who was detailed without additional compensation to perform the duties of a higher level position

beyond the lawful period for the detail could not recover the pay of the higher level position.  Nothing in the statute governing details, 5 U.S.C. § 3341, or the Back Pay Act itself required higher pay.  *Id.* at 911-12.  Therefore, the Federal Circuit applied "the settled rule that higher pay cannot be given to an employee (not actually promoted) whose appointment to that level is not demanded by law."  *Id.*  The employee was not "deemed to have been temporarily promoted" because "[t]o find an 'appointment' in the mere fact that he performed the work of the higher job would be to eradicate the existence of the controlling statute and the administrative provisions on employee details."  *Id.* at 910-12.

The plaintiffs argue that because their claim is based on a money-mandating statute, "the general rule 'that one is not entitled to the benefit of a position until he has been duly appointed to it,' is inapplicable."  *See generally* Pls.' Mem. 9-10 (ECF No. 170) (arguing that *Testan* is not applicable in this case); Pls.' Suppl. Br. 6-10 (ECF No. 185) (same).  The plaintiffs argue that the Federal Circuit has recognized that a federal employee may be eligible to recover pay in cases where the employee has been improperly denied a promotion, citing *Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004).  Plaintiffs also rely on *Bevevino v. United States*, 87 Fed. Cl. 397, 408-09 (2009), in which this court, citing *Dysart*, denied the government's motion to dismiss claims arising under the Prevailing Rate System Act.  The *Bevevino* court found that "[t]he principle . . . forbidding the judicial reclassification of federal employees" was not applicable where the plaintiffs' claims were based on a money-mandating statute.  *Id.* at 409.

The plaintiffs' arguments regarding *Testan* are unsupported.  The problem with the plaintiffs' argument is that the undisputed facts show that the FBI Director never established a permanent FBI police force under section 540C and that regulations implementing the statute's pay provisions were never promulgated.  Moreover, appointment to a permanent FBI police force is not automatic under the statute.  Under section 540C(b)(3), the FBI Director or designated representative "may appoint" individuals to a permanent FBI police force.  The plaintiffs therefore cannot assume that they would all be appointed to the permanent FBI police force under section 540C(b)(3).[33]  For these reasons, the plaintiffs are in the same position as the plaintiffs in *Testan*.

---

[33] The court recognizes that the Federal Circuit has found that the "presumption that the use of the word 'may' in a statute creates discretion . . . may be rebutted by 'the intent of Congress and other inferences that [the court] may rationally draw from the structure and purpose of the statute at hand.'"  *Doe v. United States*, 463 F.3d 1314, 1324 (Fed. Cir. 2006) (quoting *McBryde v. United States*, 299 F.3d 1357, 1362 (Fed. Cir. 2002)).  The Federal Circuit has found that a statute which uses the word "may" might not be wholly discretionary "if the statute (1) provides clear standards for paying an award, (2) states a precise amount to be paid, and (3) compels payment once certain conditions precedent are met."  *Roberts*, 745 F.3d at 1163 (Fed. Cir. 2014) (citing *Perri v. United States*, 340 F.3d 1337, 1343 (Fed. Cir. 2003)).  Plaintiffs do not argue that any of these elements applies to the FBI Director's discretion to establish or not establish a permanent police force under section 540C(b)(1) and appoint or not appoint individuals to be members of such a police force under section 540C(b)(3).  Moreover, as discussed above, it is undisputed that section 540C sets three preconditions for pay at the rate received by members of the Secret Service Uniformed Division: the FBI Director must exercise his discretion under section 540C(b)(1) and establish a permanent FBI police force, the FBI Director must promulgate regulations under section 540C(b)(5), and the FBI Director or a designated representative authorized by the Attorney General must "appoint" members of the permanent FBI police force under section 540C(b)(3).  Because these preconditions have not been met, the plaintiffs are not entitled to compensation under section 540C.  Only if the three pre-conditions had been met could plaintiffs claim a right to pay at the rate specified in section 540C.

**IV.     CONCLUSION**

For the reasons above, the government's motion for summary judgment is

**GRANTED**.  The plaintiffs' cross-motion for summary judgment is **DENIED**.  The clerk

is directed to enter judgment accordingly.

**IT IS SO ORDERED.**


s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge